**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

| | |
|---|---|
| WINN-DIXIE STORES, INC. and<br>BI-LO HOLDINGS, LLC,<br><br>           Plaintiffs,<br><br>v.<br><br>SOUTHEAST MILK, INC., *et al.*,<br><br>           Defendants. | Case No. 3:15-cv-01143-J-39-BJD-PDB |

**DEFENDANTS' MOTION TO DISMISS UNDER RULE 12(b)(6)**
**WITH INCORPORATED MEMORANDUM OF LAW**

Defendants Southeast Milk, Inc., National Milk Producers Federation, Dairy Farmers of America, Inc., Land O'Lakes, Inc. and Agri-Mark, Inc. (collectively, "Defendants"), by and through undersigned counsel, hereby move pursuant to F.R.C.P. 12(b)(6) to dismiss the Complaint (Doc. 1) filed by Plaintiffs Winn-Dixie Stores, Inc. and Bi-Lo Holdings, LLC (collectively, "Plaintiffs"). Plaintiffs' claims fail as a matter of law because they are barred by the "filed-rate" doctrine. Additionally, Plaintiffs' allegations of fraudulent concealment fail as a matter of law because they are pled without the particularity required under Rule (9)(b). In support of this Motion, Defendants state as follows:

**INTRODUCTION**

This is a federal antitrust case brought by two grocery store chains that at various times purchased raw milk and processed fresh dairy products from Defendant Southeast Milk, Inc. Southeast Milk, like its co-Defendants Land O'Lakes, Inc. ("LOL"), Agri-Mark, Inc., and Dairy Farmers of America, Inc. ("DFA"), is an agricultural cooperative of dairy farmers. Each of these dairy cooperative Defendants were members of National Milk Producers Federation ("NMPF,"

also a Defendant) and were at various times involved in an NMPF-sponsored farmer welfare program called "Cooperatives Working Together," or "CWT" for short. One of the CWT program's initiatives was the Herd Retirement Program, which provided funds to farmers who agreed to retire their dairy cows from milk production by selling them into the beef market. The Plaintiff grocery store chains allege that a decrease in raw milk production resulting from the Herd Retirement Program caused them to pay more for raw milk and certain processed dairy products (specifically, "processed or fluid milk, and other fresh milk products," such as cream, half & half, yogurt, cottage cheese, cream cheese, and sour cream) that they purchased from Southeast Milk. Plaintiffs claim that Defendants' conduct violated Section 1 of the Sherman Act and is not immune from antitrust liability under the Capper-Volstead Act, and they assert claims for damages under Section 4 of the Clayton Act.

Plaintiffs' Complaint acknowledges that raw milk prices are regulated by the federal government, which sets minimum order prices that processors must pay for raw milk. *See* Doc. 1, ¶¶ 98 & 99. And while the Complaint also includes a number of ambiguous allegations regarding the Herd Retirement Program's supposed effect on "unregulated" "over-order prices," Doc. 1, ¶ 100, Plaintiffs nonetheless appear to seek damages based on the overall increase in prices of raw milk, processed fluid milk and other fresh milk products allegedly caused by the program. Doc. 1, at 49, Prayer for Relief ¶ B (seeking damages for Plaintiffs' "purchases of raw milk, processed or fluid milk, and/or other milk products at inflated prices"). As such, Plaintiffs' damages claims are barred by the "filed-rate" doctrine because they necessarily implicate government-regulated minimum milk prices.

The filed-rate doctrine precludes damages claims that attempt to challenge the reasonableness of a price set by a regulatory agency or that depend on the court calculating the

difference between the actual regulated rate and a hypothetical "but for" rate that the agency would have set absent a defendant's allegedly unlawful conduct. Raw milk sold to processors is subject to a minimum "order" price, and Plaintiffs' theory of damages for purchases of processed fluid milk and other fresh milk products necessarily depends on allegations that Defendants' conduct inflated government-set order prices, which caused prices of such products to increase. Thus, these claims are barred.

## STANDARD OF REVIEW

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a complaint must contain allegations that "state a claim for relief that is plausible on its face." *Jacobs v. Tempur-Pedic Int'l, Inc.*, 626 F.3d 1327, 1345 (11th Cir. 2010) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A court reviewing the sufficiency of a complaint should assume that "well pleaded factual allegations are true, and then determine whether they plausibly give rise to an entitlement to relief." *Randall v. Scott*, 610 F.3d 701, 710 (11th Cir. 2010).

Complaints that implicate the filed-rate doctrine are subject to dismissal as a matter of law for failure to allege a legally cognizable harm. *See Taffet v. S. Co.*, 967 F.2d 1483, 1495 (11th Cir. 1992) (affirming dismissal of complaint for failure to state a claim because "paying the filed rate" does not lead to an "injury to business or property").

## ARGUMENT

For the reasons described in greater detail below, Plaintiffs' Complaint should be dismissed for failure to state a claim upon which relief can be granted, pursuant to Federal Rule of Civil Procedure 12(b)(6). Plaintiffs fail to state a claim because the damages they seek are barred by the filed-rate doctrine. Additionally, Plaintiffs' allegations of fraudulent concealment are also pled without the particularity required under Rule 9(b) and should also be dismissed.

## I.     Plaintiffs' Claims Are Barred by the Filed-Rate Doctrine

Plaintiffs' entire case is premised on allegations that a reduction in the supply of raw milk increased the price of raw milk and thereby caused purchasers of raw milk and products made from that raw milk to pay higher prices. The federal government sets the price of such raw milk, however, barring Plaintiffs' claims under the "filed-rate" or "*Keogh*" doctrine. *See Keogh v. Chicago & N.W. Ry. Co.*, 260 U.S. 156 (1922). The filed-rate doctrine precludes damages claims based on rates filed with, or set or approved by, a regulatory agency. *See Taffet*, 967 F.2d at 1488 ("[F]ederal courts have applied the filed rate doctrine in a variety of contexts to bar recovery by those who claim injury by virtue of having paid a filed rate."); *see also In re Olympia Holding Corp.,* 88 F.3d 952, 956 (11th Cir. 1996) ("The Supreme Court has applied the filed rate doctrine quite strictly, often with harsh results."). The filed-rate doctrine applies to any claim that "necessarily implicates" a rate that has been set or approved by a regulatory agency. *Goldwasser v. Ameritech Corp.*, 222 F.3d 390, 402 (7th Cir. 2000). Courts have held that the filed-rate doctrine applies to claims based on government-regulated order prices for raw milk. *See Carlin v. DairyAmerica, Inc.*, 705 F.3d 856, 870 (9th Cir. 2013); *Servais v. Kraft Foods, Inc.*, 631 N.W.2d 629, 634 (Wis. Ct. App. 2001) (filed-rate doctrine barred recovery of damages the plaintiff "claim[ed] to have sustained from sales to co-ops whose pay prices were not controlled by milk orders but were affected by them"), *aff'd*, 643 N.W.2d 92 (Wis. 2002); *Edwards v. Nat'l Milk Producers Federation,* No. 3:11-cv-04766-JSW (N.D. Cal. Oct. 30, 2012), ECF No. 123 (applying filed-rate doctrine to highly similar allegations and same underlying conduct at issue in this case), attached as Exhibit A.

Plaintiffs' claims necessarily implicate government-regulated order prices. As Plaintiffs allege, "[t]he minimum pricing of nearly all of the farm milk produced in the United States is

regulated by milk marketing orders." Doc. 1, ¶ 98; *see also id.* ¶ 99 ("'Each month, federal orders set the minimum prices for milk used in cheese, and milk used in butter and dry milk. . . .'"). The Complaint describes an agreement among the Defendants and other dairy farmer cooperatives to pay certain dairy farmers to sell their dairy cows for beef, thereby reducing the number of cows producing raw farm milk. *See* Doc. 1, ¶¶ 5-10, 114(c). The Complaint repeatedly and specifically alleges that the Herd Retirement Program was directed at reducing raw milk supplies and thereby increasing raw milk prices. *See, e.g.*, *id.* ¶ 4 (alleging that CWT's purpose was "to 'strengthen and stabilize' raw farm milk prices'"); *id.* ¶ 13 (alleging that the program's "purpose and effect" was to "reduce the supply of raw farm milk in order to increase its price"); *id.* ¶ 86 (alleging effect on "All Milk Price"); *id.* ¶ 94 (alleging that, "as of 2010, CWT's restraints on milk production in the form of premature herd retirements had increased cumulative farm milk price revenues by over $9 billion"). In addition, the many charts in Plaintiffs' Complaint referring to increased prices and revenues show the total prices and all revenues received by farmers for the raw milk they sell. *See, e.g.*, *id.* ¶¶ 76, 86, 90, 93.

*The Raw Milk Claims*—There can be no doubt that Plaintiffs' claims with regard to raw milk are barred because they are premised on changes to the regulated price of milk. Calculating damages for such claims will require "the trial judge, or a jury, [to] determine what rate should have been set" for raw milk by government marketing orders. *Taffet*, 967 F.2d at 1491. Requiring the fact finder "to guess what lower rate the agency should have chosen" in the absence of Defendants' conduct, *Goldwasser*, 222 F.3d at 402, is precisely what the filed-rate doctrine bars.

Plaintiffs fail to plead what is required to overcome the complete legal bar to claims seeking monetary damages for payment of filed-rates. *See Hill v. BellSouth*

*Telecommunications, Inc.*, 364 F.3d 1308, 1317 (11th Cir. 2004) (claims seeking monetary damages for regulated prices implicate the filed-rate doctrine).  In order to plead around this bar, Plaintiffs must allege facts sufficient to show that Defendants' conduct separately and independently impacted prices paid by Plaintiffs above the filed rate.  *See In re Dairy Farmers of Am. Cheese Antitrust Litig.*, 767 F. Supp. 2d 880, 895 (N.D. Ill. 2011) *("DFA Cheese I")*.

Plaintiffs have failed this pleading requirement.  Although Plaintiffs could, theoretically, attempt to state a claim for only the portion of the price that is in excess of the government regulated minimum for raw milk, they have failed to do so here.  The Complaint plainly mixes requests for recovery of total raw milk prices—defined in large part by filed rates—with recovery of over-order premium charges on raw milk that processors sometimes pay in addition to filed rates.

*The Fluid Milk and Fresh Milk Products Claims*—Plaintiffs' fluid milk and fresh milk products claims are also barred for the same reason.  Plaintiffs allege that the causal mechanism by which they were injured in their purchases of fluid milk and fresh milk products was CWT's effect on raw milk supply and raw milk prices.  *See, e.g.*, Doc. 1, ¶¶ 13, 41, 50-51, 96.  Plaintiffs also acknowledge, as they must, that raw milk sold for processing into fluid milk and fresh milk products is subject to regulated minimum prices.  *Id.* ¶ 99; *id.* ¶ 102 (alleging that Herd Retirement Program raised price of "key input into a broad range of dairy products").

Moreover, the prices at which processed dairy products like fluid milk and fresh milk products that the Plaintiffs seek damages on are so inextricably intertwined with the regulated rates that calculating damages on those products without implicating the filed-rate is practically impossible.  Plaintiffs do not allege that Defendants illegally fixed the prices of fluid milk and fresh milk products; rather, they allege that Defendants conspired to limit the national supply of

raw milk. According to their own Complaint, Plaintiffs' purported injury arises from the dynamics of the dairy market. They claim Defendants' Herd Retirement Program first reduced the overall supply of raw milk which resulted in higher raw milk prices, which were driven in large part by higher minimum order prices set by the USDA under federal regulations. Plaintiffs claim that these higher raw milk prices, including the higher regulated prices for raw milk, caused the cost of milk sold to processors who make fluid milk and fresh milk products to increase. And ultimately, Plaintiffs claim to have paid higher prices for finished fluid milk and fresh milk products as a result of the alleged pass through of higher raw milk costs from processors. Doc. 1, ¶ 13 ("The purpose and effect of the Defendants' herd retirement program were to reduce the supply of raw farm milk in order to increase its price, which in turn increased the price paid for milk and other fresh milk products.")

The filed-rate doctrine bars any claim for damages that "necessarily implicates" a regulated rate such that it would require a court to determine the rate that a regulator would have set or approved but-for the challenged conduct. *Goldwasser*, 222 F.3d at 402. This situation arises not only for raw milk sales directly subject to regulation, but also for sales made at or influenced by the regulated price. *See Wah Chang v. Duke Energy Trading & Mktg., LLC*, 507 F.3d 1222, 1226 (9th Cir. 2007) (claims of anticompetitive manipulation of the wholesale electricity market that allegedly affected the unregulated prices plaintiff was charged in the retail market were barred by the filed-rate doctrine because the wholesale rates were accepted by FERC).

Plaintiffs' theory of causation and damages necessarily depends on CWT's effect on government-regulated prices of raw milk sold to manufacturers of fluid milk and fresh milk products. Because estimating those damages unavoidably requires this Court to second-guess

what the government-set price for raw milk would have been in the absence of the CWT's Herd Retirement Program, and thus implicates the regulated minimum raw milk prices set by the Department of Agriculture, Plaintiffs' claims are barred. The court's decision in *DFA Cheese I*, 767 F. Supp. 2d 880, is particularly damning to Plaintiffs' claims. There, direct purchasers of wholesale milk and cheese alleged that the defendants conspired to manipulate the prices of milk futures and "spot" bulk cheese sold on the Chicago Mercantile Exchange, thereby increasing the prices for milk and cheese priced in part on the basis of regulated minimum order prices for raw milk. *Id.* at 886. The price of bulk cheese has a significant impact on the formula used by the government to calculate federal milk marketing order minimum prices. *Id.* at 888. The *DFA Cheese I* court held that the claims were barred because "the difference between what [plaintiffs] paid and what they would have paid absent Defendants' conduct must be the same as the difference between the filed rate, and the reasonable rate that the USDA would have set had the input data (CME cheese prices) not been inflated by Defendants' actions." *Id.* at 895. As the court noted, "Plaintiffs do not propose, nor can the Court conceive of, a method for calculating damages . . . that would not require the Court to engage in just the type of ratemaking that the [filed rate] doctrine precludes." *Id.* That same problem exists here.

In a subsequent opinion in the same case, the Court held that the claims of retail purchasers of finished dairy products were barred as well, as it was implausible to infer that government milk prices did not "at least in part" influence retail prices of finished dairy products. *See In re Dairy Farmers of Am., Inc. Cheese Antitrust Litig.*, No. 09-cv-03690, 2015 WL 3988488, at *32 (N.D. Ill. June 29, 2015) ("*DFA Cheese II*"). In dismissing the complaint, the Court held that "the Court cannot ignore Indirect Plaintiffs' allegation that Defendants' activities raised the governmental price of milk, and that governmental pricing in turn influenced

the price of finished dairy products nationwide. . . ." *Id.*; *see Servais*, 631 N.W.2d at 631, 634 (applying filed rate doctrine to claimed damages from payments that "were not subject to milk orders but . . .[were] in accord with prevailing market rates that were affected by the milk orders").

The case for applying the filed-rate doctrine to the facts alleged in Plaintiffs' Complaint is the same, if not stronger, than in *DFA Cheese*. In that case, plaintiffs' claim was premised on the direct manipulation of the price of cheese on the Chicago Mercantile Exchange. Here, in contrast, Plaintiffs' damage claims for fluid milk and fresh milk products are premised on conduct that allegedly increased the government-set prices of raw milk used to make those products. Thus, there can be no question that Plaintiffs' claims for damages based on purchases of fluid milk and fresh milk products depend on, and thus "necessarily implicate," the regulated prices of raw milk sold to processors of fluid milk and fresh milk products. *Cf. DFA Cheese II*, 2015 WL 3988488, at *32 (plaintiffs' causal theory was that "Defendants' actions in the commodities markets artificially raised the governmental price for milk, which in turn artificially raised the national price of milk and cheese, which ultimately [caused] . . . the nationwide price increase in finished dairy products"). In this regard, Plaintiffs' claims for fluid milk and fresh milk products in this case are indistinguishable from *DFA Cheese II*: "[A]ny calculation of damages resulting from the price of finished dairy products would inevitably include, at least in part, an assessment of what governmental milk prices would have been absent Defendants' actions. Accordingly [the] claims for damages are barred by the filed-rate doctrine." *Id.* The same result is required here. Plaintiffs' Complaint should be dismissed pursuant to the filed-rate doctrine.

## II. Plaintiffs' Allegations of Fraudulent Concealment Are Insufficient and Should Be Dismissed

Defendants will advance arguments that some or all of Plaintiffs' claims are also barred by the statute of limitations, but such arguments are premised on other proceedings and facts that may not be properly raised on a motion to dismiss. With this in mind, Defendants move the court to dismiss Plaintiffs' insufficiently pleaded allegations of fraudulent concealment without waiving any of their rights to later argue that Plaintiffs' claims are time barred.

Plaintiffs attempt to allege fraudulent concealment in order to extend their recoverable damages by tolling the statute of limitations. *See* Doc. 1, ¶¶ 109-111. But they fail to plead fraudulent concealment with the particularity required by the Federal Rules. *See* Fed. R. Civ. P. 9(b); *Licul v. Volkswagen Grp. of Am., Inc.*, No. 13-61686-CIV, 2013 WL 6328734, at *6 (S.D. Fla. Dec. 5, 2013). The three short paragraphs that allege fraudulent concealment are generic and lifted almost verbatim from a complaint in a related case where those allegations were already held insufficient to plead fraudulent concealment. *See* Ex. A, at 10-11 & n.6 ("to the extent Plaintiffs intend to rely on a theory of fraudulent concealment, they have not pled sufficient supporting allegations"). Consequently, Plaintiffs' allegations of fraudulent concealment should be dismissed pursuant to Rules 12(b)(6) and 9(b). *See, e.g., Speier-Roche v. Volkswagen Grp. of Am. Inc.*, No. 14-20107-CIV, 2014 WL 1745050, at *7 (S.D. Fla. Apr. 30, 2014) (granting Rule 12(b)(6) motion to dismiss because, among other things, the plaintiff failed to meet Rule 9(b)'s requirement to allege with particularity the defendant's supposed fraudulent concealment or other supposed efforts to induce the plaintiff to delay filing the complaint); *In re Processed Egg Prods. Antitrust Litig.*, 931 F. Supp. 2d 654, 661-63 (E.D. Pa. 2013) (holding fraudulent concealment insufficiently pleaded where plaintiffs failed to plead with particularity when they discovered their claims, and therefore declining to toll statute of limitations).

**CONCLUSION**

For the foregoing reasons, Defendants' motion to dismiss should be granted. All of Plaintiffs' claims seeking damages that are premised upon the regulated prices of milk should be dismissed with prejudice pursuant to the filed-rate doctrine. Additionally, Plaintiffs' allegations of fraudulent concealment should be dismissed because they are pled without the particularity required by Rule 9(b).

Dated: April 6, 2016

AKERMAN LLP

By: */s/ Cindy A. Laquidara*
Cindy A. Laquidara
Florida Bar No. 394246
Email: cindy.laquidara@akerman.com
50 North Laura Street, Suite 3100
Jacksonville, FL 32202
Telephone: (904) 798-3700
Facsimile: (904) 798-3730

*Attorneys for Defendants National Milk Producers Federation, Southeast Milk, Inc.; Dairy Farmers of America, Inc., Land O'Lakes, Inc.; and Agri-Mark, Inc.*

Michael J. Beaudine, Esq.
Florida Bar No. 0772763
beaudine@lseblaw.com
LATHAM, SHUKER, EDEN & BEAUDINE, LLP
111 N. Magnolia Avenue, Suite 1400
Orlando, Florida 32801
Telephone: (407) 481-5800
Facsimile: (407) 481-5801

*Attorneys for Defendant Southeast Milk, Inc.*

W. Todd Miller
District of Columbia Bar No. 414930
Lucy Clippinger
New York Bar No. 5105796
BAKER & MILLER PLLC
2401 Pennsylvania Avenue, NW, Suite 300

Washington, DC 20037
Telephone: (202) 663-7820
Facsimile: (202) 663-7849
tmiller@bakerandmiller.com
lclippinger@bakerandmiller.com

Steven R. Kuney
District of Columbia Bar No. 253286
Carl R. Metz
District of Columbia Bar No. 490663
WILLIAMS & CONNOLLY LLP
725 Twelfth Street NW
Washington, DC 20016
Telephone: (202) 434-5000
Facsimile: (202) 434-5029
skuney@wc.com
cmetz@wc.com

*Attorneys for Defendant Dairy Farmers of America, Inc.*

Nathan P. Eimer
Illinois State Bar No. 00735353
Scott C. Solberg
Illinois State Bar No. 6204487
Daniel D. Birk
Illinois State Bar No. 6302412
Ben E. Waldin
Illinois State Bar No. 6317991
EIMER STAHL LLP
224 South Michigan Avenue, Suite 1100
Chicago, IL 60604
Telephone: (312) 660-7600
Facsimile: (312) 692-1718
neimer@eimerstahl.com
ssolberg@eimerstahl.com
dbirk@eimerstahl.com
bwaldin@eimerstahl.com

*Attorneys for Defendant Land O'Lakes, Inc.*

Jill M. O'Toole
Connecticut No. 414338
SHIPMAN & GOODWIN LLP
One Constitution Plaza
Hartford, CT 06103

Telephone: (860) 251-5000
Facsimile: (860) 251-5218
jotoole@goodwin.com

*Attorneys for Defendant Agri-Mark, Inc.*

Kenneth P. Ewing
District of Columbia Bar No. 439685
John J. Kavanagh
New York Bar No. 2858074
STEPTOE & JOHNSON LLP
1330 Connecticut Avenue, NW
Washington, DC 20036
Telephone: (202) 429-3000
Facsimile: (202) 429-3902
kewing@steptoe.com
jkavanagh@steptoe.com

*Attorneys for Defendant National Milk Producers Federation aka Cooperatives Working Together*

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on April 6, 2016, a true and correct copy of the foregoing was filed with the Clerk of the Court using the CM/ECF system, which will send a notice of electronic filing to all counsel of record.

/s/ *Cindy A. Laquidara*
Cindy A. Laquidara, Esq.