# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### JACKSONVILLE DIVISION

Winn-Dixie Stores, Inc. and
Bi-Lo Holdings, LLC,

       Plaintiffs,

                               Case No. 3:15-cv-1143-J-39PDB

v.

Southeast Milk, Inc., et al.,

       Defendants.

_____/

## PLAINTIFFS' SECOND MOTION TO COMPEL AGAINST DEFENDANT SOUTHEAST MILK, INC. AND SUPPORTING MEMORANDUM OF LAW

On April 27, 2017, this Court granted (in part) Plaintiffs' Motion to Compel (Dkt. #97) and ordered (1) a Rule 30(b)(6) discovery deposition of Defendant Southeast Milk, Inc. ("SMI") concerning SMI's "document-production efforts," to be held by May 19, 2017, and (2) SMI to produce a sworn declaration from its IT specialist addressing certain email and "other pertinent information." SMI produced a sworn IT declaration on May 5, 2017 (the "First IT Declaration"). SMI sought an extension of the deadline for the Rule 30(b)(6) discovery deposition until June 2, 2017, which was granted. (Dkt. #102). SMI produced three witnesses on June 2, 2017, having previously refused the courtesy of identifying the witnesses and their assigned topics until Plaintiffs' counsel was seated at the deposition table.

The deposition transcripts capture on the official record what was obvious on June 2, 2017: that SMI failed to adequately prepare its witnesses, as required by Rule 30(b)(6). In addition, with respect to the sworn IT declaration, that is also woefully deficient,

consisting mainly of statements that SMI's IT specialist was not asked to do or address certain things, so she did not do so.  All of this has caused further delay and continues SMI's pattern of stonewalling Plaintiffs in their discovery efforts.  Therefore, Plaintiffs have no choice but to renew their Motion to Compel, this time seeking sanctions against SMI, pursuant to Rule 37.

**A.  <u>The Rule 30(b)(6) Discovery Deposition</u>**

On May 9, 2017, pursuant to this Court's order, Plaintiffs served a Rule 30(b)(6) discovery deposition notice on SMI. (A copy of this notice is attached as Exhibit 1.)  SMI did not serve or raise any objections to that notice prior to the depositions.

That notice called for testimony by an SMI corporate representative on the following areas of inquiry (matters for examination): preparation of the corporate designees to testify (1); organizational structure (2); scope of IT operations (3); document retention (4); identifying, collecting and producing responsive documents (5); documents relating to facts asserted in RFP Responses (6) and Interrogatory Answers (7); Shana Wooten (Board Packet) and Danielle Weaver (Laptop) declarations (8); antitrust policy, compliance and training (9); Board training seminars (10); video referenced in July 2007 Board meeting (11); Ed Henderson article (12); Joe Wright, John Peachey, Dale Eade or Calvin Covington notes (13); December 2009 deposition exhibits (14); identifying, collecting and producing non-email (15) and paper documents (16), including custodians (17); computer changes that caused SMI to lose email not backed up (19); identifying, collecting and producing email (20), including custodians (18); Calvin Covington

personal email (21); use of electronic discovery vendors (22); and certification of completeness of document production (23).

SMI designated three people to testify in response to the Rule 30(b)(6) notice: Albert Antoine for topics 1-6, 9 and 22; Shana Wooten for topics 1, 4-6, 8, 11-12 and 14-16; and Danielle Weaver for topics 1-6, 8, and 17-20.   However, none of those representatives were adequately prepared to testify in response to the Rule 30(b)(6) notice.   A Rule 30(b)(6) deposition seeks the entity's knowledge, not just the personal knowledge of the corporate representative.   Thus, it is an insufficient response for a designated corporate representative to testify "I don't know."   Yet, Mr. Antoine responded that way at least 13 times with respect to specific documents or categories of documents; Ms. Wooten seven times, and Ms. Weaver nine times – foreclosing the prospect of meaningful examination beyond the limited recall that the designees had concerning even their own personal conduct, let alone concerning information known or reasonably available to SMI. (A chart with cites to the witnesses' depositions is attached hereto as Exhibit 2.)

A corporate representative must take steps prior to the deposition to educate himself or herself regarding the knowledge that the entity has with respect to each topic. For example, he or she must review documents, and talk to current and former employees.   However, none of SMI's designated corporate representatives talked to any current or former SMI employees in preparation to testify as SMI's corporate representative.   In fact, they did not talk to anyone.   See Antoine Dep., 14:19-21 (Ex. 3); Wooten Dep., 12:22-13:4 (Ex. 9); Weaver Dep., 11:18-24.   (Ex. 10.)   This failing, when

3

combined with the numerous "I don't know" responses from these witnesses, underscores their utter lack of preparation, and confirms that they did nothing to educate themselves regarding SMI's knowledge.  Finally, SMI did not object to any of the topics in the notice prior to the depositions.

Thus, it is clear that SMI did not meet even the minimum standard for preparation of its corporate representatives to testify in response to the Rule 30(b)(6) notice.  Not only did this waste the time and resources of Plaintiffs' counsel and thwart the intention of the Court's Order requiring the Rule 30(b)(6) testimony, but it also further stymied Plaintiffs' attempt to find out information regarding what SMI did to meet its discovery obligations in this case – which was the whole purpose of the deposition.

Plaintiffs had hoped that the deposition would provide them with information regarding what SMI did to search for emails, documents and other information responsive to Plaintiffs' document requests.  That was the deposition's purpose as ordered by this Court.  Furthermore, the plan was to take the information from the deposition and use it to determine (1) whether SMI had engaged in adequate efforts to find and produce relevant information, and (2) what information might be available and how to retrieve it.  Unfortunately, due to SMI's neglectful approach to the deposition, Plaintiffs received no such information – only the stone wall that SMI has continuously put up to thwart Plaintiffs' legitimate requests.

Therefore, Plaintiffs request that this Court order SMI to (1) present a witness or witnesses for another Rule 30(b)(6) discovery deposition – this time with properly prepared designated corporate representatives, and (2) reimburse Plaintiffs for the

attorneys' fees and costs incurred in connection with the June 2 depositions, and this motion.

### 1.   The Law Governing Rule 30(b)(6) Depositions

Rule 30(b)(6) is a discovery device designed to avoid the bandying by corporations where individual officers or employees disclaim knowledge of facts clearly known to the corporation. *QBE Ins. Corp. v. Jorda Enters.*, 277 F.R.D. 676, 688 (S.D. Fla. 2012).   One purpose is to curb any temptation by the corporation to shunt a discovering party from "pillar to post" by presenting deponents who each disclaim knowledge of facts known to someone in the corporation. *Id.*

The testimony of a Rule 30(b)(6) witness represents the collective knowledge of the corporation, not of the specific individual deponents. *Id.*  A Rule 30(b)(6) designee presents the corporation's position on the listed topics. *Id.* The corporation appears vicariously through its designees. *Id.*

A corporation has an affirmative duty to provide a witness who is able to provide binding answers on behalf of the corporation. *Id.*  Thus, a Rule 30(b)(6) witness need not have personal knowledge of the designated subject matter. *Id.*; see generally Federal Civil Rules Handbook, 2012 Ed., at p. 838 ("the individual will often testify to matters outside the individual's personal knowledge").  The corporation has a duty to make a good faith, conscientious effort to designate appropriate persons and to prepare them to testify fully and non-evasively about the subjects. *Id.*  The duty to prepare a Rule 30(b)(6) witness goes beyond matters personally known to the designee or to matters in which the designated witness was personally involved. *Id.*  The duty extends to matters reasonably

known to the responding party. *Id.*  The mere fact that an organization no longer employs a person with knowledge on the specified topics does not relieve the organization of the duty to prepare and produce an appropriate designee. *Id.*  That duty may involve interviews of former employees or others with knowledge. *Id.   Con't Cas. Co. v. First Fin. Emple. Leasing, Inc.,* 716 F. Supp. 2d 1176, 1189 (M.D. Fla. 2010)("The [organization] must prepare the designee to the extent matters are reasonably available, whether from documents, ***past employees***, or other sources.")(internal quotation marks and citation omitted; emphasis added).

In other words, a corporation is expected to present an appropriate witness or witnesses from information reasonably available to it if necessary. *Id.*  Preparing a Rule 30(b)(6) designee may be an onerous and burdensome task, but this consequence is merely an obligation that flows from the privilege of using the corporate form to do business. *Id.*  Moreover, SMI should have (and would have) been able to testify with relative ease about its own document-production efforts over the previous weeks and months but for presenting witnesses with limited personal (not even corporate) fields of knowledge.

If it becomes apparent during the deposition that the designee is unable to adequately respond to relevant questions on listed subjects, then the responding corporation has a duty to timely designate additional, supplemental witnesses as substitute deponents. *Id.*  The rule provides for a variety of sanctions for a party's failure to comply with its Rule 30(b)(6) obligations, ranging from the imposition of costs to preclusion of testimony and even entry of default. *Id.*  The failure to properly designate a

Rule 30(b)(6) witness can be deemed a nonappearance justifying the imposition of sanctions. *Id.*; *Con't Cas. Co.*, 716 F. Supp. 2d at 1189 ("Fed. R. Civ. P. 37(d)(1)(A)(i) authorizes sanctions if a Rule 30(b)(6) designee fails to appear for a deposition, and producing an unprepared Rule 30(b)(6) witness may be sanctionable as a nonappearance under the Rule."); *Resolution Trust Corp. v. Southern Union Co., Inc.*, 985 F.2d 196, 198 (5th Cir. 1993)).

Sanctions for failure to produce an adequately prepared corporate representative under Rule 30(b)(6) may include compelling the offending party to present one or more adequately prepared corporate representatives in a second 30(b)(6) deposition (or second round of Rule 30(b)(6) depositions), as well as assessing attorneys' fees and costs, including travel costs, in connection with the second deposition, and attorneys' fees in connection with the preparation of this motion to compel. *See In re Brican Am LLC Equip. Lease Litig.*, 2013 U.S. Dist. LEXIS 142841 **63-71 (S.D. Fla. 2013). As seen below, such sanctions are appropriate here due to the complete failure of SMI to adequately prepare the witnesses that it designated to testify in response to Plaintiffs' Rule 30(b)(6) discovery deposition notice.

## 2. SMI Completely and Utterly Failed to Adequately Prepare Its Witnesses as Required by Rule 30(b)(6).

None of the three witnesses presented by SMI were adequately prepared to testify as corporate representatives pursuant to Rule 30(b)(6). In fact, their testimony demonstrates total failure by SMI to prepare them.

As an initial matter, pursuant to this Court's order, Plaintiffs served a Rule 30(b)(6) deposition notice on SMI limited to discovery issues. That deposition notice

called for persons to testify on the following subjects: preparation of the corporate designees to testify (1); organizational structure (2); scope of IT operations (3); document retention (4); identifying, collecting and producing responsive documents (5); documents relating to facts asserted in RFP Responses (6) and Interrogatory Answers (7); Shana Wooten (Board Packet) and Danielle Weaver (Laptop) declarations (8); antitrust policy, compliance and training (9); Board training seminars (10); video referenced in July 2007 Board meeting (11); Ed Henderson article (12); Joe Wright, John Peachey, Dale Eade or Calvin Covington notes (13); December 2009 deposition exhibits (14); identifying, collecting and producing non-email (15) and paper documents (16), including custodians (17); computer changes that caused SMI to lose email not backed up (19); identifying, collecting and producing email (20), including custodians (18); Calvin Covington personal email (21); use of electronic discovery vendors (22); and certification of completeness of document production (23). Prior to the June 2, 2017 depositions (which were originally set for no later than May 19, 2017 according to this Court's order), SMI did not serve any objections to the notice, nor move for a protective order with respect to it.

As mentioned above, all three witnesses testified that they did not talk to anyone in preparation for their depositions. This imposed a severe and unwarranted scope limitation at the outset of each deposition, reducing putative corporate witnesses to percipient witnesses (who also turned out to be uninformed and amnesic even concerning matters that should have been known to them personally). Indeed, the witnesses did not

talk to current and former employees, even though they identified in their testimony former employees with relevant information.  Thus, Albert Antoine testified:

> Q.  You've been designated on Topics 1 through 6 and 9 and 22.  …. did you talk to any -- did you go out and talk to, maybe, somebody in IT, or others, to gather information to assist you in testifying on behalf of the company?
>
> A.   I didn't really talk to anyone within the company, to prepare for those questions ….

Antoine Dep., 14:14-20.  (Ex. 3.)

Similarly, Shana Wooten testified:

> Q:   I want to learn a little bit about some of the steps that you took to obtain information to assist you to testify for today.  What steps did you take to obtain information for today's deposition?
>
> A.  Can you be more specific?  What information?
>
> Q.  I'm sorry.  Did you talk to anybody to obtain information?
>
> A.  No.

Wooten Dep., 12:22-13:4.  (Ex. 3.)

Finally, Danielle Weaver testified:

> Q.   All right.  I want to ask you a little bit about what you did to prepare for the deposition here today.  So, not what you did on the document production, but what you did to prepare to testify today.  … did you talk to anybody to obtain information for the deposition?
>
> A.  No.

Weaver Dep., 11:18-24.  (Ex. 3.)

In addition, both Wooten and Weaver identified their predecessors, who were in positions of knowledge during the relevant time period – 2003 through 2013.  Thus, Wooten testified:

Q.   When did you start assisting with the board packets?

A.   For the past six or seven months.

Q.   Okay.  Who was doing it before you?

A.   Rosemary Jones.

Q.   Is Ms. Jones still at the company?

A.   No.

Q.   What was her position.  What was her title?

A.   Executive secretary.

Q.   To Mr. Covington, or someone else?

A.   To the CEO, yes.

…

Q.   How long was Ms. Jones in that position?

A.   I believe, five years.

Q.   And do you know who was in there before Ms. Jones?

A.   I do not.

Wooten Dep., 12:4-21.  (Ex. 3.)

In addition, Weaver testified:

Q.   Did you take over the IT Network Manager position from Jason Lazanowski?

A.   No.

Q.   Who did you take it over from?

A.   Justin Lazanowski.

Weaver Dep., 11:10-14.  (Ex. 3.)

10

In addition, the three witnesses testified repeatedly "I don't know" when asked about specific topics, documents or categories of documents.  Rather than recite all of that testimony, Plaintiffs have summarized it for each witness and then attach the full condensed transcript of the witnesses' short depositions.  Thus, the summary of "I don't know" responses is:

ALBERT ANTOINE (CFO, to whom IT reports) (Ex. 8.)

| 18:1-3 | Doesn't know if SMI has prior versions of policies and procedures manual.  (Topics 4 and 9) |
|---|---|
| 25:23-26:3 | Doesn't know whether any backups exist for the period from 2003-2010.  (Topic 19) |
| 27:24-28:1 | Doesn't know when SMI started using Exhibit 13 for document retention.  (Topic 4) |
| 30:8-13 | Doesn't know whether Board was asked to follow document retention guidelines. Doesn't know who would know.  (Topic 4) |
| 32:25-33:9 | Doesn't know who would know about any policy regarding the retention of CWT related documents. (Topics 15 and 16) |
| 35:10-20 | Doesn't know if SMI has documents relating to the other antitrust litigations. |
| 39:19-40:10 | Doesn't know anything about Ex. 15 or SMI – 316. |
| 40:23-41:7 | Doesn't know what the bates number prefixes mean on documents produced in the prior antitrust litigations. |
| 43:18-23 | Doesn't know if SMI has the 82 boxes of documents provided in the other antitrust litigations. |
| 43:24-25 | Doesn't know who would know. |
| 50:3-52:15 | Doesn't know what steps Covington took to search for and produce documents.  (Topics 4 and 5) |

SHANA WOOTEN (Ex. 9.)

| 21:18-21:22 | Doesn't know how large storage room devoted to documents is.  (Topic 16) |
|---|---|
| 26:18-21 | Doesn't know whether Tom Pittman or Bryce Kelly were document custodians for the search for documents.  (Topics 17 and 18) |
| 27:13-18 | Doesn't know whether there were specific locations for documents relating to CWT and Herd Retirement Program.  (Topic 16) |
| 27:19-21 | Doesn't know whether there are documents regarding SMI member farmers who retired herds under the Herd Retirement Program.  (Topics 15 and 16) |
| 28:11-21 | Doesn't know if SMI has handwritten notes by Wright, Covington, Peachy or Eade.  (Topic 13) |
| 28:22-29:3 | Doesn't know any steps that SMI took to locate any handwritten notes.  (Topic 13) |
| 31:10-14 | Doesn't know if SMI has a copy of the requested video.  (Topic 11) |
| 31:19-22 | Doesn't know if SMI has documents relating to Board training materials.  (Topics 9 and 10) |

DANIELLE WEAVER (Ex. 10.)

| 12:19-22 | Doesn't know if SMI used network drives from 2006 forward.  (Topic 15) |
|---|---|
| 15:1-12 | Doesn't know whether network drives have any materials produced in other antitrust litigations and doesn't know who at SMI would know.  (Topic 19) |
| 18:24-19:2; 24:24-25:5 | Doesn't know about changes to email system prior to 2006. Also, doesn't know when Maggie Murphy, Tom Pittman and Bryce Kelly left SMI.  (Topics 19 and 20) |
| 27:10-15 | Doesn't know whether SMI took any steps to determine |

| | if there were any responsive documents in Covington's personal email accounts. Doesn't know who would know.  (Topic 21) |
|---|---|
| 29:17-20; 31:2-9 | Doesn't know if SMI inquired of Wright. Doesn't know why NMPF emails to Wright relating to CWT were not produced in SMI production.  (Topics 5, 15, 16 and 20) |
| 32:2-8 | Doesn't know when Wright began using his Gmail address.  (Topic 5) |
| 32:9-10 | Did not ask Wright.  (Topic 5) |

The sheer number of "I don't know" responses is a clear indicator of the inadequacy of each witness' preparation.  When these responses are combined with the testimony that none of the witnesses made any effort to talk to any current or former employees, the conclusion is inescapable that SMI completely and utterly failed to adequately prepare the witnesses in compliance with Rule 30(b)(6).

Furthermore, and even more disturbing, according to Antoine's cursory testimony, the document requests were assigned to various current and former employees to be responsible for searching for responsive documents.  Apparently, Calvin Covington, the former CEO, who was CEO from 2003 through mid-2010, the heart of the relevant time period, was assigned many of the requests.  Antoine Dep., 50:3-52:15.  (Ex. 8.)  Why Covington was not designated by SMI as one of the representatives to testify in response to the Rule 30(b)(6) notice is a mystery if SMI's apparent approach (*albeit* inherently flawed for Rule 30(b)(6) testimony) was to present relevant first-hand fact witnesses in place of a more comprehensively prepared witness.  However, what is not a mystery is that Antoine did not know what steps Covington took to search for responsive

13

documents, and has never asked Covington. *Id.* Thus, not only did Antoine not know what Covington did, but also never asked a key person about core matters. Finally, Antoine assumed that the others who were assigned document requests "would have searched for documents and provided them," but did not confirm this, and he did not have any knowledge about requests that were not assigned to him. Antoine Dep., 49:6-10, 37:24-38:1. (Ex. 8.) The deposition record thus describes the following process (for which additional details were unavailable): SMI employees met to discuss the document requests, and the employees self-identified themselves as custodians and sent documents to SMI counsel for further action. The paucity of that description leaves much to be desired in terms of a reasonably diligent effort by SMI to identify, collect and produce responsive documents, but leaves little to the imagination about one reason why SMI's piecemeal document productions have been so disorganized, incomplete and sporadic.

Antoine's testimony is astounding, in its total lack of information and preparation. Moreover, it is exactly what Rule 30(b)(6) was designed to prevent – passing the buck from one executive or employee to another. This type of gamesmanship – which we can clearly call SMI's approach to discovery now – is not to be tolerated under the Federal Rules of Civil Procedure.

Furthermore, whether it was inadequate preparation for the Rule 30(b)(6) deposition, or just inadequate efforts to comply with SMI's discovery obligations, Wooten testified that she did not look for any documents relating to or produced in the prior antitrust litigations, did not look for the exhibits from the Wright and Covington depositions from prior antitrust litigations, and did not look for anything other than

SDCA or DCMA minutes or pricing letters. Wooten Dep., 17:6-9, 18:14-15, and 24:15-25. (Ex. 9.) Weaver also testified that SMI did not take any steps to collect non-email electronic responsive documents – such as Word, PDF, Powerpoint or Excel documents – generally, and specifically from Joe Wright's laptop. Weaver Dep., 29:10-16. (Ex. 10.)

In addition, Weaver testified that former employees' emails are kept for a certain period of time after they leave SMI, but could not say when potential document custodians Maggie Murphy, Tom Pittman and Bryce Kelly left SMI. Weaver Dep., 24:24-25:5. (Ex. 10.)

Based on all of the above, it is clear that SMI did not adequately prepare its corporate representatives designated to testify in response to the Rule 30(b)(6) discovery deposition notice. Therefore, this Court should order a second Rule 30(b)(6) discovery deposition, and award Plaintiffs their attorneys' fees and costs in connection with the second deposition (or the June 2 deposition), as well as their attorneys' fees incurred in preparing and pursuing this motion to compel.

## B.  The First and Second IT Declarations

In its May 3, 2017 order (Dkt. #97), this Court ordered SMI to produce a sworn declaration from its IT specialist. As part of that order, the Court indicated that the declaration should provide answers to questions from Plaintiffs about various email discovery issues, and invited Plaintiffs to provide those questions to SMI. Plaintiffs provided those questions to SMI in an email dated May 3, 2017. (A copy of that email is attached as Exhibit 4.) Those questions were:

1. Identify the make and model of the laptop (*e.g.*, Dell Latitude 13 7350) that Joe Wright used for SMI business for 2003-2013.  Provide the serial number for the laptop.
2. Identify the operating system and version for the laptop.
3. Identify the chain of custody for the laptop from the time that SMI first began any discovery efforts regarding Wright email forward.
4. Identify Wright's email program (*e.g.*, Outlook), service provider (*e.g.*, strato.net) and email address (*e.g.*, pjw@strato.net).  Please include all email addresses and the dates of their use.
5. State whether any Wright email from 2003-2013 is available online from the service provider, and whether Wright or SMI attempted to obtain email from the service provider.
6. Describe why, how and when the laptop crashed and the nature of the problem that Wright encountered when he attempted to access email on his laptop after the 2015 crash.
7. Describe the steps that Wright took to attempt to move email from his old laptop to his new laptop after the 2015 crash, including the name of the outside vendor and any steps taken by the outside vendor.  Identify any documents concerning work done by the outside vendor.
8. State whether and when SMI conducted pre- or post-collection interviews with Wright concerning the possible locations of his email and the likely completeness of the search and retrieval of those emails.
9. Identify the SMI employees, contractors or outside vendors that SMI used to retrieve emails from the laptop.
10. Describe the exact steps that SMI took to retrieve emails from the laptop.  For example, (a) state the locations from which email was retrieved (online/cloud or offline/local email boxes or folders as well as archived email or email captured by any computer backup software, tool or utility); (b) identify the file paths for the locations from which email was retrieved; (c) state whether any email archives or other backups were retrieved; and (d) identify the universe of email that was searched using search terms.  Identify all email accounts searched.
11. Identify the software (and any hardware) used for retrieval and searching.  State whether and when a forensic or other image of the laptop or any portion thereof was made.
12. Identify any laptop files that were unreadable or inaccessible, including the identity thereof, *e.g.*, the folder path, file name, file extension, date created, date modified, file size and author.
13. Identify the date range of emails that were retrieved, and the number of emails retrieved for each year from 2003 through 2013.
14. Identify the search terms that were used, and list the search term results (*i.e.*, number of unique or non-unique document hits per search term).  State whether Wright, Covington or other SMI employees provided SMI with a list of potential search terms.

15. Identify any storage devices (*e.g.*, disk, CD-ROM, DVD, USB drive or tape) that were collected.  Provide the same information for these storage devices as provided for the laptop, including description of device and collection, retrieval, search and production of documents.

16. Describe the steps that SMI took to retrieve non-email documents from the laptop (including documents sent or received via email).

17. State whether SMI reviewed, retrieved or retained a file directory for the laptop (*i.e.*, listing the folders, subfolders, operating system files, software program files and user documents on the laptop).

18. Identify any backup software, tool or utility installed on the laptop.  Identify any system or data recovery software, tool or utility installed on the laptop.

19. Identify any computer wiping, erasing or cleansing utility installed on the laptop (*e.g.*, utilities that overwrite free space with other data).

20. Identify any reports that were created concerning efforts by Wright or SMI to retrieve email or other documents from the laptop, including a description of the subject matter and overall conclusions of those reports.

21. State whether the laptop can be booted either from its own internal hard drive or from an external recovery drive.

22. Describe any physical damage to the laptop and any known technical issues with the laptop.

23. State whether the hard drive has ever been removed from the laptop, and whether the hard drive can be accessed independent of the laptop (*i.e.*, recognized as an operational external drive by a computer other than the laptop itself).

24. Identify all user names and passwords used in any effort to retrieve documents from the laptop.  Identify any user manual, technical manual or other written material used in connection with any effort to retrieve documents from the laptop.

25. Describe the steps that SMI took to locate printed copies of Wright email (including documents sent or received via email).

SMI's First IT Declaration did not answer 12 of the 25 questions posed by Plaintiffs. (A copy of the First IT Declaration is attached as Exhibit 5.)  On May 8, 2017, Plaintiffs sent a letter to SMI's counsel noting the deficiencies in the First IT Declaration, and asking for another declaration to provide the missing responses. (A copy of this letter is attached as Exhibit 6.)  That letter included a chart with the topics from the May 3, 2017 email, SMI's response to each topic and whether the topic had been answered or responded to.  On May 12, 2017, SMI indicated that it would provide a second IT

17

declaration addressing the missing responses. (See May 12, 2017 email from Christina Taylor to Patrick J. Ahern, attached as Exhibit 7.)  On May 22, 2017, SMI provided a second IT declaration (the "Second IT Declaration"). (A copy of the Second IT Declaration is at Exhibit 5.)  Unfortunately, the Second IT Declaration also did not answer many of Plaintiffs' questions.  More disturbing was the fact that Ms. Weaver's reason for not providing information was that it was not "my assignment."  And this is notwithstanding the fact that this Court invited Plaintiffs to pose questions to SMI that it would respond to in the declaration.  Contrary to that instruction from this Court, SMI apparently never even instructed or asked Ms. Weaver to look into a response to many of the questions posed by Plaintiffs.  All of this begs the question as to who gave Ms. Weaver her "assignment" and why was it so circumscribed and limited.  This is another example of SMI's stonewalling.

Therefore, since SMI failed to comply with this Court's May 3 Order regarding its IT declaration, Plaintiffs request that this Court order SMI to (1) produce a third IT declaration covering the 12 questions that, after providing two declarations, Ms. Weaver, states was not "my assignment," and (2) award Plaintiffs their attorneys' fees and costs in connection with pursuing an adequate IT declaration, including but not limited to the preparation and pursuit of this motion to compel.

## **MEMORANDUM OF LAW**

Federal Rule of Civil Procedure 26(b) governs the scope of discovery and provides that "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case.…

18

Information within this scope of discovery need not be admissible in evidence to be discoverable." Implicit in the Court's May 3, 2017 Order is a determination that corporate testimony concerning SMI's "document-production efforts" is relevant, and SMI has made no showing to establish lack of proportionality. The Court's relevancy determination is unassailable. Even following the 2015 amendments to Rule 26, "relevance" is construed broadly to "encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case." *Regions Bank v. Kaplan*, 2016 U.S. Dist. LEXIS 63164, at *3 (M.D. Fla. 2016) quoting *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978).

Section I.C.4 of the Discovery Practice Manual for the Middle District of Florida (the "Discovery Practice Manual") also provides that:

> A party responding to a discovery request should make diligent effort to provide a response that (i) fairly meets and complies with the discovery request and (ii) imposes no unnecessary burden or expense on the requesting party.

Additionally, Section I.D. of the Discovery Practice Manual also provides in relevant part that:

> Rule 26(e), Federal Rules of Civil Procedure, expressly provides that in many instances a party is under a duty to supplement or correct prior disclosures pursuant to Rule 26(a) or in discovery responses. Fairness and professionalism suggest a broader range of circumstances requiring supplementation.

Finally, Federal Rule of Civil Procedure 37 provides that a party may move for an order compelling disclosure or discovery. An evasive or incomplete disclosure, answer, or response must be treated as a failure to disclose, answer, or respond. Fed. R. Civ. P. 37(a)(4). The court has broad discretion in managing pretrial discovery matters and in

deciding to compel. *Josendis v. Wall to Wall Residence Repairs*, Inc., 662 F.3d 1292, 1306 (11th Cir. 2011); *Perez v. Miami-Dade Cnty.*, 297 F.3d 1255, 1263 (11th Cir. 2002).

## **CONCLUSION**

Based on the above facts relating to the Rule 30(b)(6) discovery deposition and the IT declarations, this Court should grant Plaintiffs' second motion to compel against SMI and order (1) a second Rule 30(b)(6) discovery deposition, and award Plaintiffs their attorneys' fees and costs in connection with the second deposition (or the June 2 deposition), as well as their attorneys' fees and costs incurred in preparing and pursuing this motion to compel, and (2) a third IT declaration covering those 12 questions, and award Plaintiffs their attorneys' fees and costs in connection with pursuing an adequate IT declaration, including but not limited to the preparation and pursuit of this motion to compel.

Respectfully submitted July 24, 2017

*/s/ H. Timothy Gillis*
H. Timothy Gillis, Trial Counsel
Florida Bar No. 133876
Gillis Way & Campbell
1022 Park Street, Suite 308
Jacksonville, FL 32204
Phone: (904) 647-6476
Fax: (904) 738-8640
tgillis@gillisway.com

and

Patrick J. Ahern
Ahern and Associates, P.C.
8 South Michigan Avenue
Suite 3600
Chicago, IL 60603
(312) 404-3760
patrick.ahern@ahernandassociatespc.com
(*Admitted Pro Hac Vice*)

*Attorneys for Plaintiffs Winn-Dixie*
*Stores, Inc., and Bi-Lo Holdings, LLC*

## CERTIFICATE OF GOOD FAITH CONFERENCE

In accordance with Rule 3.01(g), prior to the filing of this motion, Patrick J. Ahern, Esquire, counsel for Plaintiffs, conferred with counsel for Defendant, Southeast Milk, Inc., in a good faith attempt to resolve the issues raised by this motion but the parties were unable to reach a resolution of the issues contained herein.

*/s/ H. Timothy Gillis*
Attorney

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on July 24, 2017, I electronically filed the foregoing with the Clerk of Court pursuant to the Administrative Procedures for Electronic Filing in Civil and Criminal Cases of this Court by using the CM/ECF System, which will send a notice of electronic filing to all counsel of record.

/s/ <em>H. Timothy Gillis</em>
Attorney

SBDOCS 6715 2