# EXHIBIT 1

## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## JACKSONVILLE DIVISION

Winn-Dixie Stores, Inc. and
Bi-Lo Holdings, LLC,

     Plaintiffs,

v.

Southeast Milk, Inc., *et al.*,

     Defendants.

Case No. 3:15-cv-01143-BJD-PDB

### RULE 30(b)(6) DISCOVERY DEPOSITION NOTICE
### TO DEFENDANT SOUTHEAST MILK, INC.

### TO:   ALL COUNSEL OF RECORD

Pursuant to Rule 30(b)(6) of the Federal Rules of Civil Procedure, and the Court's May 3,

2017 Order (Dkt. No. 97), please take notice that Plaintiffs Winn-Dixie Stores, Inc. ("Winn-

Dixie") and Bi-Lo Holdings, LLC ("Bi-Lo") ("Plaintiffs"), by and through their undersigned

counsel, will take the deposition of Defendant Southeast Milk, Inc. ("SMI") concerning SMI's

document-production efforts, as described more fully in the matters for examination set forth in

the attached Exhibit A.

The deposition will commence at 9:00 a.m. local time on Friday, May 19, 2017 at the

offices of Orange Legal, 633 East Colonial Drive, Orlando, Florida 32803. The deposition shall

continue until completed in accordance with the Federal Rules of Civil Procedure and the orders

of this Court.

1



Pursuant to Rule 30(b)(6) of the Federal Rules of Civil Procedure, SMI shall designate a person or persons to testify about the matters for examination set forth in Exhibit A. All parties are invited to attend. The deposition will be conducted under oath and will be recorded by audio and stenographic means.

Dated: May 9, 2017

Patrick J. Ahern
Mark S. Hamill
Ahern & Associates, P.C.
Willoughby Tower
8 South Michigan Avenue
Suite 3600
Chicago, Illinois 60603
Phone: (312) 404-3760
patrick.ahern@ahernandassociatespc.com
mark.hamill@ahernandassociatespc.com

*Attorneys for Winn-Dixie Stores, Inc. and
Bi-Lo Holdings, LLC*

2

**EXHIBIT A**
**TO MAY 9, 2017 RULE 30(b)(6) DISCOVERY DEPOSITION NOTICE**
**TO DEFENDANT SOUTHEAST MILK, INC.**

## A. DEFINITIONS

1.      "All" shall mean "each," "any," and "every."

2.      "Communication" means oral or written transmission or receipt of words or information, by all means, directly or indirectly, regardless of how or by whom the communication was initiated, including: (a) written statements by means such as letter, memorandum, e-mail, instant message or facsimile, and (b) oral statements by means such as face-to-face meetings or via telephone or computer. Communications with an entity include communications by or with its subsidiaries, divisions, subdivisions, affiliates, programs, predecessor and successor entities, partners, officers, directors, members, employees, agents, legal counsel or other persons acting on its behalf.

3.      The term "meeting" means any contemporaneous presence (whether face-to-face or via telephone or computer) of two or more persons for any purpose, whether planned or arranged, scheduled or not.

4.      The term "employee" means a person currently or previously employed by or acting as the agent of another person.

5.      The term "person" means a natural person or an entity.

6.      The term "entity" means a business, legal or government entity such as a corporation, partnership, association, program or cooperative.

7.      The term "identify," when referring to a natural person, means to give the person's full name, present or last known residential address, and present or last known place of

3

employment. When referring to an entity, the term "identify" means to give the full business name and present or last known business address.

8.     The term "identify," when used in reference to a Communication or Meeting, means to identify all persons involved in such Communication or Meeting, to list all documents related to such Communication or Meeting (including all documents recording or summarizing such Communication or Meeting or documents tending to show that the Communication or Meeting occurred) and to state any actions known by you to have been taken as a result of such Communication or Meeting.

9.     The term "identify," when used in reference to a fact, means to set forth all matters explaining, concerning, causing, or contributing to the information sought in the Interrogatory.

10.     "Concerning," "relating to," "referring to," "regarding" or "with respect to" means discussing, describing, reflecting, dealing with, pertaining to, analyzing, evaluating, estimating, embodying, identifying, constituting, containing, mentioning, stating, evidencing, studying, surveying, projecting, assessing, recording, summarizing, criticizing, reporting, supporting, refuting, commenting or otherwise involving, in whole or in part.

11.     "You" or "your" means Southeast Milk, Inc., its predecessors, successors, subsidiaries, departments, divisions, affiliates, locations or programs in the United States, including entities which Southeast Milk manages or controls, together with all present and former directors, officers, partners, members, employees, agents, attorneys, investigators, representatives, or other persons known by Southeast Milk to be acting in whole or in part on behalf of Southeast Milk.

12.     "Southeast Milk, Inc.," "Southeast Milk" or "SMI" means Southeast Milk, Inc., its predecessors, successors, subsidiaries, departments, divisions, affiliates, or locations in the United

States, including entities which SMI manages or controls, together with all present and former directors, officers, partners, members, employees, agents, attorneys, investigators, representatives, or other persons known by SMI to be acting in whole or in part on behalf of SMI. SMI shall include, but not be limited to, Gustafson's Dairy, Sunshine State Dairy and Sunshine Dairy.

13.   "National Milk Producers Federation" or "NMPF" means National Milk Producers Federation, its predecessors, successors, subsidiaries, departments, divisions, affiliates, locations or programs in the United States, including entities which NMPF manages or controls, together with all present and former directors, officers, partners, members, employees, agents, attorneys, investigators, representatives, or other persons known by you to be acting in whole or in part on behalf of NMPF.

14.   "Cooperatives Working Together" or "CWT" means Cooperatives Working Together, its predecessors, successors, subsidiaries, departments, divisions, affiliates, locations or programs in the United States, including entities which CWT manages or controls, together with all present and former directors, officers, partners, members, employees, agents, attorneys, investigators, representatives, or other persons known by you to be acting in whole or in part on behalf of CWT. For purposes of these Interrogatories, CWT shall exclude matters exclusively regarding the Export Assistance Program such that the Export Assistance Program is not intended, standing entirely alone, to be responsive.

15.   "Dairy Farmers of America, Inc." or "DFA" means Dairy Farmers of America, Inc., its predecessors, successors, subsidiaries, departments, divisions, affiliates or locations in the United States, including entities which DFA manages or controls, together with all present and former directors, officers, partners, members, employees, agents, attorneys, investigators, representatives, or other persons known by you to be acting in whole or in part on behalf of DFA.

5

16.    "Land O'Lakes, Inc." or "Land O'Lakes" means Land O'Lakes, Inc., its predecessors, successors, subsidiaries, departments, divisions, affiliates or locations in the United States, including entities which Land O'Lakes manages or controls, together with all present and former directors, officers, partners, members, employees, agents, attorneys, investigators, representatives, or other persons known by you to be acting in whole or in part on behalf of Land O'Lakes.

17.    "Dairylea Cooperative Inc." or "Dairylea" means Dairylea Cooperative Inc., its predecessors, successors, subsidiaries, departments, divisions, affiliates or locations in the United States, including entities which Dairylea manages or controls, together with all present and former directors, officers, partners, members, employees, agents, attorneys, investigators, representatives, or other persons known by you to be acting in whole or in part on behalf of Dairylea.

18.    "Agri-Mark, Inc." or "Agri-Mark" means Agri-Mark, Inc., its predecessors, successors, subsidiaries, departments, divisions, affiliates or locations in the United States, including entities which Agri-Mark manages or controls, together with all present and former directors, officers, partners, members, employees, agents, attorneys, investigators, representatives, or other persons known by you to be acting in whole or in part on behalf of Agri-Mark.

19.    "DCMA" shall mean Dairy Cooperative Marketing Association, Inc., its predecessors, successors, subsidiaries, departments, divisions, affiliates or locations in the United States, including entities which DCMA manages or controls, together with all present and former directors, officers, partners, members, employees, agents, attorneys, investigators, representatives, or other persons known by you to be acting in whole or in part on behalf of DCMA.

20.    "SDCA" shall mean Southeastern Dairy Cooperative Association, Inc., its predecessors, successors, subsidiaries, departments, divisions, affiliates or locations in the United

States, including entities which SDCA manages or controls, together with all present and former directors, officers, partners, members, employees, agents, attorneys, investigators, representatives, or other persons known by you to be acting in whole or in part on behalf of SDCA.

21.     The term "Milk Product" shall mean raw farm milk as well as fluid milk (whole milk, 2% milk, 1% milk and skim milk) and other milk products, including without limitation cream, half & half, yogurt, cottage cheese, cream cheese, sour cream, butter, cheese and ice cream.

22.     A "dairy cow" shall mean a milking cow, dry cow or bred heifer.

23.     The term "BST-free" shall mean Milk Products that you describe, offer, produce, sell, advertise or market as being produced from milk drawn from dairy cows that are not treated with bovine somatotropin or recombinant bovine growth hormone, sometimes also referred to as rBST or rBGH, respectively (or as artificial growth hormones).

24.     The "dairy industry" shall mean persons that produce, assemble, bottle or sell Milk Products in the United States, or such other meaning as you may from time to time use in the ordinary course of your business.

25.     The term "Herd Retirement Program" refers to a program or effort developed, sponsored, implemented or funded in whole or in part by NMPF, CWT or other Defendants by which dairy cows were removed from production through retirement or otherwise, including the ten herd retirements implemented by CWT during the Relevant Time Period.

26.     The "United States Congress" shall mean members, committees, subcommittees, employees, offices or agencies of the United States Congress, as well as registered lobbyists. A "State Legislature" shall mean members, committees, subcommittees, employees, offices or agencies of a legislative body of one of the fifty United States (for example, the Florida Legislature), as well as registered lobbyists.

7

27.     "USDA" shall mean the United States Department of Agriculture, the Agriculture Secretary, and employees, offices or agencies of the United States Department of Agriculture, as well as registered lobbyists. A "State Department of Agriculture" shall mean a State Agriculture Secretary, and employees, offices or agencies of a State Department of Agriculture (for example, the Florida Department of Agriculture and Consumer Services), as well registered lobbyists.

28.     "Class I" shall mean Grade A milk used in all beverage milks.  "Class II" shall mean Grade A milk used in fluid cream products, yogurts, or perishable manufactured products (*e.g.*, ice cream, cottage cheese, and others).  "Class III" shall mean Grade A milk used to produce cream cheese and hard manufactured cheese.  "Class IV" shall mean Grade A milk used to produce butter and any milk in dried form.  In addition, each of the foregoing terms (*i.e.*, Class I-IV) shall also have any other meaning as used by you in connection with any price announcement concerning the Relevant Time Period.

29.     "Over-order Premium" shall mean any price, charge or surcharge above the Federal Milk Marketing Order ("FMMO") regulated price for Class I-IV milk or Milk Products sold by you, and shall include, without limitation, service charges, BST-free premiums and fuel surcharges.

30.     For this deposition, the term "Relevant Time Period" means the period from January 1, 2003 through December 31, 2013.  Unless otherwise noted, each paragraph in the Matters for Examination shall be construed to cover the Relevant Time Period.

**B.  MATTERS FOR EXAMINATION**

You are requested to designate a person or persons who consent to testify on your behalf and provide all information known or reasonably available to you with respect to the following matters for examination.

8

1.      The steps or efforts that the designated corporate representative (*i.e.*, deponent) took to prepare to testify for Southeast Milk about the Matters for Examination set forth herein, including the identity of persons with whom the designee met, topics of discussion, information learned and documents reviewed. This Matter for Examination shall not include the content of Communications with counsel for Southeast Milk or, if represented separately, the designee.

2.      The organizational structure, personnel, operations and locations of the Information Technology or computer systems department(s) ("IT") of Southeast Milk.

3.      The scope of SMI's IT operations (and any changes thereto).

4.      The document retention policies, procedures and practices of Southeast Milk, including without limitation documents and information concerning Winn-Dixie, Milk Products, NMPF, CWT, DCMA or SDCA, and what steps were taken to identify and locate them.

5.      The steps that SMI took to identify, preserve, collect and produce to Plaintiffs documents responsive to Plaintiffs' Requests for Production of Documents, dated August 3, 2016, October 12, 2016 and November 11, 2016.

6.      The documentary and testimonial basis for the facts that SMI asserted in its Specific Responses to Plaintiffs' Requests for Production of Documents, dated August 3, 2016, October 12, 2016 and November 11, 2016.

7.      The documentary and testimonial basis for SMI's October 14, 2016 responses to Plaintiffs' First Set of Interrogatories, Interrogatory Nos. 4-14 and SMI's November 17, 2016 responses to Plaintiffs' Second Set of Interrogatories, Interrogatory Nos. 15-25.

8.      The documentary and testimonial basis for the May 5, 2017 Declarations of Shana Wooten (Board Packets) and Danielle Weaver (Joe Wright laptop).

9.      The possession, custody and control of documents concerning SMI's antitrust compliance and training, and what steps were taken to identify and locate them.

10.     The possession, custody and control of documents concerning any SMI Board Training Seminar, including any Seminar held in or around April 2008 (*see* draft agenda at SMI-013489-13491), and what steps were taken to identify and locate them.

11.     The possession, custody and control of all known copies of the video referenced in the July 10, 2007 SMI Board Meeting Minutes, and the steps taken to identify and locate it.

12.     The possession, custody and control of all known copies of the article by Ed Henderson referenced in the August 12, 2008 SMI Board Meeting Minutes, and what steps were taken to identify and locate it.

13.     The possession, custody and control of all known copies of notes taken during CWT, NMPF, DCMA, SDCA or SMI meetings by Joe Wright, Calvin Covington, Dale Eade or John Peachey, and what steps were taken to identify and locate them.

14.     The possession, custody and control of all known copies of exhibits to the December 3, 2009 deposition of Joe Wright and the December 4-5, 2009 deposition of Calvin Covington in the Southeastern Milk Antitrust Litigation, and what steps were taken to identify and locate them.

15.     Steps taken by SMI to identify, preserve, collect, review and produce responsive non-email documents on local drives (*i.e.*, on individual user PCs) and network drives, including documents concerning NMPF, CWT, DCMA, SDCA and Plaintiffs.

16.     Steps taken by SMI to identify, preserve, collect, review and produce responsive hard copy paper documents, including documents concerning NMPF, CWT, DCMA, SDCA and Plaintiffs.

17.     The identity of all SMI non-email document custodians in this case, including custodians for non-email electronic documents and hard copy paper documents, and what steps were taken to identify them and interview them.

18.     The identity of all SMI email document custodians, and what steps were taken to identify them and interview them.

19.     Changes to SMI's computer systems and email systems from 2003 through 2013 that would have resulted in SMI losing all of its email unless SMI saved archived emails, including a description of the old and new computer and email systems and the related operating environments. This Matter for Examination shall include the identity of email and backup systems used by SMI from 2003 through 2013, and the dates on which changes to the computer and email systems occurred.

20.     The steps that SMI took to collect, review and produce emails, including without limitation, for Calvin Covington, Albert Antoine and Shana Wooten archived in connection with changes to SMI computer systems and email systems.

21.     The steps that SMI took to determine whether any responsive email in the personal email accounts of Calvin Covington, on which Covington conducted SMI business (including, *e.g.*, calvincovington@att.net and ccovington5@cs.com, both of which were used in SMI-013333-SMI-013339), were duplicative of email otherwise produced by SMI in this case.

22.     Aside from Latham, Shuker, Eden & Beaudine, LLP, the identity of any outside vendors (*e.g.*, eDiscovery vendors) that SMI retained or used in connection with its document discovery in this case.

23.     Whether SMI has completed its document productions efforts in this case and is prepared to certify its production as complete.

11

## **CERTIFICATE OF SERVICE**

     I HEREBY CERTIFY that on May 9, 2017, I served the foregoing by email on counsel of record for all defendants.

Patrick J. Ahern