# EXHIBIT 4

## Mark Hamill

| | |
|---|---|
| **From:** | Patrick Ahern |
| **Sent:** | Wednesday, May 3, 2017 8:42 PM |
| **To:** | mbeaudine@lseblaw.com; Christina Taylor |
| **Cc:** | Mark Hamill |
| **Subject:** | Winn-Dixie v. Southeast Milk |

Mike and Christina,

Per the Court's May 3, 2017 Order (Dkt. No. 97), and at the Court's suggestion ("Rather than being very specific here, I'm just going to leave it to you to convey what Mr. Ahern wants to your IT
person and have her prepare an appropriate declaration on that."), please include in the IT declaration information "regarding the configuration of Joe Wright's laptop, efforts made to retrieve his emails, why the laptop crashed, and any other pertinent information," including the following (note – singular terms used herein are not intended to exclude the plural, if applicable):

1.  Identify the make and model of the laptop (*e.g.*, Dell Latitude 13 7350) that Joe Wright used for SMI business for 2003-2013.  Provide the serial number for the laptop.

2.  Identify the operating system and version for the laptop.

3.  Identify the chain of custody for the laptop from the time that SMI first began any discovery efforts regarding Wright email forward.

4.  Identify Wright's email program (*e.g.*, Outlook), service provider (*e.g.*, strato.net) and email address (*e.g.*, pjw@strato.net).  Please include all email addresses and the dates of their use.

5.  State whether any Wright email from 2003-2013 is available online from the service provider, and whether Wright or SMI attempted to obtain email from the service provider.

6.  Describe why, how and when the laptop crashed and the nature of the problem that Wright encountered when he attempted to access email on his laptop after the 2015 crash.

7.  Describe the steps that Wright took to attempt to move email from his old laptop to his new laptop after the 2015 crash, including the name of the outside vendor and any steps taken by the outside vendor.  Identify any documents concerning work done by the outside vendor.

8.  State whether and when SMI conducted pre- or post-collection interviews with Wright concerning the possible locations of his email and the likely completeness of the search and retrieval of those emails.

9.  Identify the SMI employees, contractors or outside vendors that SMI used to retrieve emails from the laptop.

10. Describe the exact steps that SMI took to retrieve emails from the laptop.  For example, (a) state the locations from which email was retrieved (online/cloud or offline/local email boxes or folders as well as archived email or email captured by any computer backup software, tool or utility); (b) identify the file paths for the locations from which email was retrieved; (c) state whether any email archives or other backups were retrieved; and (d) identify the universe of email that was searched using search terms.  Identify all email accounts searched.

11. Identify the software (and any hardware) used for retrieval and searching.  State whether and when a forensic or other image of the laptop or any portion thereof was made.

12. Identify any laptop files that were unreadable or inaccessible, including the identity thereof, *e.g.*, the folder path, file name, file extension, date created, date modified, file size and author.

13. Identify the date range of emails that were retrieved, and the number of emails retrieved for each year from 2003 through 2013.

14. Identify the search terms that were used, and list the search term results (*i.e.*, number of unique or non-unique document hits per search term).  State whether Wright, Covington or other SMI employees provided SMI with a list of potential search terms.

15. Identify any storage devices (*e.g.*, disk, CD-ROM, DVD, USB drive or tape) that were collected.  Provide the same information for these storage devices as provided for the laptop, including description of device and collection, retrieval, search and production of documents.

16. Describe the steps that SMI took to retrieve non-email documents from the laptop (including documents sent or received via email).

17. State whether SMI reviewed, retrieved or retained a file directory for the laptop (*i.e.*, listing the folders, subfolders, operating system files, software program files and user documents on the laptop).

18. Identify any backup software, tool or utility installed on the laptop.  Identify any system or data recovery software, tool or utility installed on the laptop.

19. Identify any computer wiping, erasing or cleansing utility installed on the laptop (*e.g.*, utilities that overwrite free space with other data).

20. Identify any reports that were created concerning efforts by Wright or SMI to retrieve email or other documents from the laptop, including a description of the subject matter and overall conclusions of those reports.

21. State whether the laptop can be booted either from its own internal hard drive or from an external recovery drive.

22. Describe any physical damage to the laptop and any known technical issues with the laptop.

23. State whether the hard drive has ever been removed from the laptop, and whether the hard drive can be accessed independent of the laptop (*i.e.*, recognized as an operational external drive by a computer other than the laptop itself).

24. Identify all user names and passwords used in any effort to retrieve documents from the laptop.  Identify any user manual, technical manual or other written material used in connection with any effort to retrieve documents from the laptop.

25. Describe the steps that SMI took to locate printed copies of Wright email (including documents sent or received via email).

Patrick

Patrick J. Ahern
Ahern and Associates, P.C.
Willoughby Tower
8 South Michigan Avenue
Suite 3600
Chicago, Illinois   60603
(312) 404-3760