# EXHIBIT 6

# Mark Hamill

| | |
|---|---|
| **From:** | Patrick Ahern |
| **Sent:** | Monday, May 8, 2017 8:36 PM |
| **To:** | mbeaudine@lseblaw.com; Christina Taylor |
| **Cc:** | Mark Hamill |
| **Subject:** | Winn-Dixie v. Southeast Milk |
| **Attachments:** | 5-8-17 Letter to SMI re IT Declaration.pdf; Attachment to 5-8-17 Letter to SMI's Counsel.pdf |

Mike and Christina,   attached please see our letter re SMI's IT Declaration.

Patrick

Patrick J. Ahern
Ahern and Associates, P.C.
Willoughby Tower
8 South Michigan Avenue
Suite 3600
Chicago, Illinois   60603
(312) 404-3760

1

**Ahern & Associates, P.C.**
Willoughby Tower
8 South Michigan Avenue, Suite 3600
Chicago, IL 60603
www.ahernandassociatespc.com

                              Patrick J. Ahern
                              (312) 404-3760
                              patrick.ahern@ahernandassociatespc.com

May 8, 2017

**VIA Email**

Christina Y. Taylor
Latham, Shuker, Eden & Beaudine, LLP
111 North Magnolia Avenue, Suite 1400
Orlando, Florida 32801

Re:   *Winn-Dixie Stores, Inc. et al. v. Southeast Milk, Inc., et al.*

Dear Christina,

      I am writing regarding the May 5, 2017 Declaration of Danielle Weaver concerning Joe Wright's personal laptop (the "laptop"). Plaintiffs have some follow-up based on the Declaration.

      Weaver states that Wright had a Dell Inspiron 1545 laptop. (Decl. ¶ 4.) It appears that Dell began selling the Inspiron 1545 sometime around January 2009. Wright was communicating via email as early as 2003 (*see*, *e.g.*, SMI-013315). However, Michael Beaudine stated at the April 27, 2017 hearing that there was only one Wright computer (*see*, *e.g.*, Tr. 30:11, "No. There's just one laptop."). Please explain what happened to all computers that Wright used from 2003 until he acquired the Inspiron 1545. Does Wright have any of the older computers?

      Weaver does not provide a chain of custody for the laptop, other than to state that she received the laptop from Jim Sleper on March 15, 2017. (Decl. ¶ 3.) Please explain why Sleper had the laptop and state whether Sleper accessed (or attempted to access) any files on the laptop. Please provide a full chain of custody.

      Weaver states that she used eleven terms to search six Outlook 2003 folders. The search terms were: (1) BiLo; (2) CWT; (3) Dairy Cooperatives Marketing Association; (4) DCMA; (5) Herd Retirement; (6) National Milk; (7) National Milk Producers Federation; (8) NMPF; (9) SDCA; (10) Southeastern Dairy Cooperative Association; and (11) Winn Dixie. (Decl. ¶ 9.) The folders were: (1) Calvin, (2) NMPF, (3) SMI Misc., (4) Inbox, (5) Sent and (6) Deleted. (Decl. ¶ 8.) Plaintiffs believe that the search terms were inadequate, and should have included, for example, Leary, Welch, Ridgway, Cooperatives Working Together, Scott Brown, Tillison, Kozak, Wosje, Sunshine Dairy, Sunshine State, WD, Superbrand, Hammond, Plant City, Gustafson, OOP,

2

premium, service charge, surcharge and rBST. In addition, Weaver did not specify that all folders related to SMI, NMPF and Winn-Dixie were searched. Plaintiffs are concerned that some relevant folders may have been excluded from the search – and we believe that it would be appropriate to search all email folders, particularly given the business orientation of the search terms (*i.e.*, there should be few false hits among the personal folders). Plaintiffs request that SMI apply the entire (expanded) search term list across all email folders.

It appears from the Declaration that neither Weaver nor SMI searched the laptop for either email backups (*i.e.*, PST files) or non-email documents, did not search for responsive documents on external media such as USB drives and did not search for printed copies of emails or other responsive documents retained by Wright. Please search those sources for responsive documents, using the expanded search terms where applicable.

The Declaration shows that there were at least 30 documents that hit on the search term "Winn Dixie." (Decl. ¶ 10(e).) However, SMI produced only three such documents from the laptop. Please identify the categories of "Winn Dixie" documents collected from the laptop that counsel deemed to be non-responsive.

In addition, Plaintiffs, at Judge Barksdale's invitation, provide information that they wished the IT Declaration to respond to. Attached is a chart with that information requested and SMI's response, if any.

With respect to additional searches of the laptop, Plaintiffs are available to discuss with SMI the possibility of Plaintiffs acquiring a forensic image of the laptop so that Plaintiffs can conduct the additional searches.

Finally, please provide responses to this letter and the outstanding items on the chart as soon as possible (and let us know when you will be providing the response).

Regards,

*Patrick J. Ahern*

Patrick J. Ahern

cc: Michael Beaudine
    Mark Hamill

# CHART OF INFORMATION REQUESTED BY PLAINTIFFS
# TO BE COVERED BY SMI IT DECLARATION.

Per the Court's May 3, 2017 Order (Dkt. No. 97), and at the Court's suggestion ("Rather than being very specific here, I'm just going to leave it to you to convey what Mr. Ahern wants to your IT person and have her prepare an appropriate declaration on that."), please include in the IT declaration information "regarding the configuration of Joe Wright's laptop, efforts made to retrieve his emails, why the laptop crashed, and any other pertinent information," including the following (note – singular terms used herein are not intended to exclude the plural, if applicable):

| WD Requested Topics | Weaver Declaration |
| --- | --- |
| 1. Identify the make and model of the laptop (e.g., Dell Latitude 13 7350) that Joe Wright used for SMI business for 2003-2013. Provide the serial number for the laptop. | Provided except for serial number. |
| 2. Identify the operating system and version for the laptop. | Provided except for version. |
| 3. Identify the chain of custody for the laptop from the time that SMI first began any discovery efforts regarding Wright email forward. | Not provided; Danielle Weaver received the laptop from Jim Sleper, SMI CEO.<br><br>Please provide chain of custody. |
| 4. Identify Wright's email program (e.g., Outlook), service provider (e.g., strato.net) and email address (e.g., pjw@strato.net). Please include all email addresses and the dates of their use. | Provided; Weaver is not aware of additional email addresses. What steps did Weaver take to determine if there were other addresses? |
| 5. State whether any Wright email from 2003-2013 is available online from the service provider, and whether Wright or SMI attempted to obtain email from the service provider. | Not answered, except to state that Weaver does not know if Wright email from 2003 to 2013 is available online. What steps did Weaver take to determine? |
| 6. Describe why, how and when the laptop crashed and the nature of the problem that Wright encountered when he attempted to access email on his laptop after the 2015 crash. | Weaver does not know why the laptop crashed, but states that the laptop had limited RAM and was experiencing frequent lockups and system hangs. Weaver did not answer re why Wright could not access his emails after the 2015 crash. What steps did Weaver take to determine? |

| WD Requested Topics | Weaver Declaration |
|---|---|
| 7.     Describe the steps that Wright took to attempt to move email from his old laptop to his new laptop after the 2015 crash, including the name of the outside vendor and any steps taken by the outside vendor.  Identify any documents concerning work done by the outside vendor. | Not answered.<br><br>Please answer. |
| 8.     State whether and when SMI conducted pre- or post-collection interviews with Wright concerning the possible locations of his email and the likely completeness of the search and retrieval of those emails. | Not answered.<br><br>Please answer. |
| 9.     Identify the SMI employees, contractors or outside vendors that SMI used to retrieve emails from the laptop. | Only Weaver.<br><br>Any others? |
| 10.    Describe the exact steps that SMI took to retrieve emails from the laptop.  For example, (a) state the locations from which email was retrieved (online/cloud or offline/local email boxes or folders as well as archived email or email captured by any computer backup software, tool or utility); (b) identify the file paths for the locations from which email was retrieved; (c) state whether any email archives or other backups were retrieved; and (d) identify the universe of email that was searched using search terms.  Identify all email accounts searched. | Searched local Outlook 2003 client, in Calvin, NMPF, SMI Misc., Inbox, Sent and Deleted folders. |
| 11.    Identify the software (and any hardware) used for retrieval and searching.  State whether and when a forensic or other image of the laptop or any portion thereof was made. | Searched using Outlook 2003.<br>No response re forensic image. |
| 12.    Identify any laptop files that were unreadable or inaccessible, including the identity thereof, e.g., the folder path, file name, file extension, date created, date modified, file size and author. | None of the email documents in Outlook 2003 were inaccessible.  No answer re other laptop files, because the search was restricted to email documents sitting in Outlook 2003. |
| 13.    Identify the date range of emails that were retrieved, and the number of emails retrieved for each year from 2003 through 2013. | Not answered.<br><br>Please answer. |

2

| WD Requested Topics | Weaver Declaration |
|---|---|
| 14.     Identify the search terms that were used, and list the search term results (i.e., number of unique or non-unique document hits per search term).  State whether Wright, Covington or other SMI employees provided SMI with a list of potential search terms. | (1) BiLo; (2) CWT; (3) Dairy Cooperatives Marketing Association; (4) DCMA; (5) Herd Retirement; (6) National Milk; (7) National Milk Producers Federation; (8) NMPF; (9) SDCA; (10) Southeastern Dairy Cooperative Association; and (11) Winn Dixie. <br><br>No answer re source of the search terms. <br><br>Please answer. |
| 15.     Identify any storage devices (e.g., disk, CD-ROM, DVD, USB drive or tape) that were collected.  Provide the same information for these storage devices as provided for the laptop, including description of device and collection, retrieval, search and production of documents. | No storage devices collected. |
| 16.     Describe the steps that SMI took to retrieve non-email documents from the laptop (including documents sent or received via email). | Not answered. <br><br>Please answer. |
| 17.     State whether SMI reviewed, retrieved or retained a file directory for the laptop (i.e., listing the folders, subfolders, operating system files, software program files and user documents on the laptop). | SMI did not review, retrieve or retain a file directory for the laptop. <br><br>What steps did Weaver take? |
| 18.     Identify any backup software, tool or utility installed on the laptop.  Identify any system or data recovery software, tool or utility installed on the laptop. | Weaver does not know if there is any backup software, tool or utility on the laptop.  No response re any data recovery software, tool or utility. <br><br>What steps did Weaver take? |
| 19.     Identify any computer wiping, erasing or cleansing utility installed on the laptop (e.g., utilities that overwrite free space with other data). | Weaver did not encounter any computer wiping or erasing tool installed on the laptop. |
| 20.     Identify any reports that were created concerning efforts by Wright or SMI to retrieve email or other documents from the laptop, including a description of the subject matter and overall conclusions of those reports. | None. <br><br>What steps did Weaver take to find out or confirm? |
| 21.     State whether the laptop can be booted either from its own internal hard drive or from an external recovery drive. | The laptop boots, or at least it booted for Weaver. |

3

| WD Requested Topics | Weaver Declaration |
|---|---|
| 22.     Describe any physical damage to the laptop and any known technical issues with the laptop. | No physical damage. |
| 23.     State whether the hard drive has ever been removed from the laptop, and whether the hard drive can be accessed independent of the laptop (i.e., recognized as an operational external drive by a computer other than the laptop itself). | Weaver does not know if the hard drive has ever been removed, or if it can be accessed independent of the laptop.<br><br>What steps did Weaver take? |
| 24.     Identify all user names and passwords used in any effort to retrieve documents from the laptop.  Identify any user manual, technical manual or other written material used in connection with any effort to retrieve documents from the laptop. | Not answered.<br><br>Please answer. |
| 25.     Describe the steps that SMI took to locate printed copies of Wright email (including documents sent or received via email). | Not answered.<br><br>Please answer. |

4