United States District Court
Middle District of Florida
Jacksonville Division

WINN-DIXIE STORES, INC.,
& BI-LO HOLDINGS, LLC,

    *Plaintiffs,*

V.

SOUTHEAST MILK, INC., ETC.,

    *Defendants.*

NO. 3:15-CV-1143-J-39PDB

## Order

On September 29, 2017, the Court heard arguments on and granted in part the plaintiffs' second motion to compel Southeast Milk, Inc., to provide discovery, Doc. 107. The reasons for providing relief are in the plaintiffs' motion, Doc. 107, the plaintiffs' reply, Doc. 114, and the record of the oral argument. This order sets forth the relief more specifically.

In an earlier order, to address the plaintiffs' concerns about Southeast Milk's efforts to gather discovery, the Court directed Southeast Milk to: (1) "provide a declaration from Shana Wooten regarding how and where board packets are maintained and the efforts made to retrieve them"; (2) "provide a declaration from Southeast Milk's IT specialist regarding the configuration of Joe Wright's laptop, efforts made to retrieve his emails, why the laptop crashed, and any other pertinent information"; and (3) "produce a representative for a Federal Rule of Civil Procedure 30(b)(6) deposition on document-production efforts." Doc. 97.

Southeast Milk provided additional discovery. Besides other discovery, it provided two declarations from the IT specialist and designated three representatives

for a Rule 30(b)(6) deposition to respond to topics in a deposition notice. Doc. 107 at 1, 17–18; Doc. 109 at 7–8.

Unhappy with the efforts, including preparation of the representatives, the plaintiffs, through the second motion to compel, sought: (1) another declaration from the specialist to supplement paragraphs 6, 7, 8, 9, 10, 14, 15, 16, 17, 18, and 20 of the second declaration; (2) another Rule 30(b)(6) deposition to address topics 5, 9, 10, 13, 14, 15, 16, and 17; (3) a search of Southeast Milk's IT network for items containing key words; and (4) expenses related to the additional discovery. *See* Docs. 107, 114 (as supplemented by statements during oral argument).

Southeast Milk opposed the motion, contending it had gone beyond the Court's directives, the plaintiffs do not establish the witnesses "were completely unprepared to testify" on any topic, the witnesses were people with the most knowledge about Southeast Milk's document-production efforts, a Rule 30(b)(6) representative's "I don't know" answer or failure to talk to anyone to prepare for the deposition does not mean the representative was unprepared, and any gaps in testimony were due to counsel's failure to ask follow-up questions. *See* Doc. 109 (as supplemented by statements during oral argument).

The plaintiffs replied, contending asking follow-up questions would have been futile and the deposition transcripts made "clear" the "failure to prepare was tied to numerous key topics." *See* Doc. 114 (as supplemented by statements at oral argument).

As ordered on the record after hearing arguments, Southeast Milk must provide another declaration from Southeast Milk's IT specialist to supplement paragraphs 6, 7, 8, 9, 10, 14, 15, 16, 17, 18, and 20 of the second declaration. By limiting the specialist's assignment, Southeast Milk failed to provide reasonable discovery on "efforts made to retrieve [Wright's] emails." *See* Doc. 97 at 1 (quoted). Southeast Milk also must search its IT network for key words provided by the plaintiffs.

Southeast Milk must provide the declaration and relevant and responsive discovery from the network search unless privileged or protected by **October 20, 2017**. The parties may agree among themselves to extend that deadline. Because discovery must be proportional to the needs of the case, Southeast Milk may ask for relief from the directives in this order if it can provide specific information on the burden imposed.[1]

Southeast Milk must designate a representative for another Rule 30(b)(6) deposition to address topics 5, 9, 10, 13, 14, 16, and 17.[2] The deposition should be coordinated with other depositions to the extent practicable. In addition, the plaintiffs

---

[1]A party "may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1).

A "party need not provide discovery of electronically stored information from sources that the party identifies as not reasonably accessible because of undue burden or cost." Fed. R. Civ. P. 26(b)(2)(B). On a motion for a protective order, "the party from whom discovery is sought must show that the information is not reasonably accessible because of undue burden or cost." Id. If the party makes that showing, "the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C)" ("the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive"; "the party seeking discovery has had ample opportunity to obtain the information by discovery in the action"; or "the proposed discovery is outside the scope permitted by Rule 26(b)(1)"). Id. "The court may specify conditions." Id.

[2]"[A] party may name as the deponent a public or private corporation … and must describe with reasonable particularity the matters for examination." Fed. R. Civ. P. 30(b)(6). "The named organization must then designate one or more officers, directors, or managing agents, or designate other persons who consent to testify on its behalf; and it may set out the matters on which each person designated will testify." Id. "The persons designated must testify about information known or reasonably available to the organization." Id.

For topic 15 ("Steps taken by SMI to identify, preserve, collect, review and produce responsive non-email documents on local drives … and network drives, including documents concerning NMPF, CWT, DCMA, SDCA and Plaintiffs"), the parties agreed the topic will be addressed with the network search.

may have an additional hour to depose Calvin Covington during his deposition on document retention and discovery collection efforts.

At the end of oral argument, Southeast Milk's counsel indicated it was unclear what the representative would need to do to further prepare to testify about those topics. Besides clarification offered during the ensuing discussion,

> For topic 5 ("The steps that SMI took to identify, preserve, collect and produce to Plaintiffs documents responsive to Plaintiffs' Requests for Production of Documents, dated August 3, 2016, October 12, 2016 and November 11, 2016"), the representative must be prepared to testify about who was responsible for identifying, finding, and obtaining documents responsive to the plaintiffs' document requests and what they did to identify, find, and obtain such documents.
>
> For topic 9 ("The possession, custody and control of documents concerning SMI's antitrust compliance and training, and what steps were taken to identify and locate them"), the representative must be prepared to testify about efforts to identify, find, and obtain the assertedly privileged documents.
>
> For topic 10 ("The possession, custody and control of documents concerning any SMI Board Training Seminar, including any Seminar held in or around April 2008 (*see* draft agenda at SMI-013489-13491), and what steps were taken to identify and locate them"), the representative must be prepared to testify about efforts to identify, find, and obtain the documents to determine if they contain relevant and requested information, such as pricing or over-order premiums.
>
> For topic 13 ("The possession, custody and control of all known copies of notes taken during CWT, NMPF, DCMA, SDCA or SMI meetings by Joe Wright, Calvin Covington, Dale Eade or John Peachey, and what steps were taken to identify and locate them"), the representative must be prepared to testify about efforts to find and obtain the notes. Following the testimony, the parties should discuss which side should undertake the burden of reviewing the notes for any relevant and requested information.[3]
>
> For topic 14 ("The possession, custody and control of all known copies of exhibits to the December 3, 2009 deposition of Joe Wright and the

---

[3]Southeast Milk's counsel objected to questions on notes, contending they are not the subject of a prior request for production. *See* Doc. S112-2 (Wooten deposition) at 27:25–28:10. At oral argument, counsel contended Covington took notes but they were too cumbersome to review, and the plaintiffs' counsel stated his willingness to search them.

December 4–5, 2009 deposition of Calvin Covington in the Southeastern Milk Antitrust Litigation, and what steps were taken to identify and locate them"), the representative must be prepared to testify about the efforts to find the exhibits, who made the efforts, what that individual did to try to find them, and whether Southeast Milk maintained the exhibits in an internal litigation file.

For topic 16 ("Steps taken by SMI to identify, preserve, collect, review and produce responsive hard copy paper documents, including documents concerning NMPF, CWT, DCMA, SDCA and Plaintiffs"), and topic 17 ("The identity of all SMI non-email document custodians in this case, including custodians for non-email electronic documents and hard copy paper documents, and what steps were taken to identify them and interview them"), the representative must be prepared to testify about who kept relevant and requested hardcopy documents (including those no longer with the company), the efforts made to interview them, the efforts made to collect the documents from them, and any follow-up done if they could not locate files. (The network search presumably will address any concern with identifying custodians of electronic documents.)

The Court denied the plaintiffs' request for an award of expenses because the circumstances would make one unjust. Although Southeast Milk's efforts fell short, its provision of two declarations and designation of three representatives with the most knowledge about discovery efforts shows it made a good-faith attempt to comply with the earlier directives.[4]

**Done** in Jacksonville, Florida, on October 10, 2017.

_____

PATRICIA D. BARKSDALE
*United States Magistrate Judge*

---

[4]If a court grants a motion to compel, "the court must, after giving an opportunity to be heard, require the party … whose conduct necessitated the motion, the party or attorney advising that conduct, or both to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees," but "must not order this payment if … other circumstances make an award of expenses unjust." Fed. R. Civ. P. 37(a)(5)(A). If a party "fails to obey an order to provide or permit discovery, … the court where the action is pending may issue further just orders." Fed. R. Civ. P. 37(b)(2)(A). In addition or instead, the court "must order the disobedient party, the attorney advising that party, or both to pay the reasonable expenses, including attorney's fees, caused by the failure, unless … other circumstances make an award of expenses unjust." Fed. R. Civ. P. 37(b)(2)(C).

c:	Counsel of record