Winn-Dixie Stores, Inc. and
Bi-Lo Holdings, LLC,

      Plaintiffs,

                            Case No. 3:15-cv-1143

v.

Southeast Milk, Inc., et al.,

      Defendants.

_____/

**PLAINTIFFS' SUBMISSION REGARDING AMENDED**
**DISCOVERY RESPONSES AND OUTSTANDING DISCOVERY ISSUES**

      Pursuant to this Court's instruction (Dkt. #166), Plaintiffs hereby file this submission

regarding amended discovery responses and outstanding discovery issues.

## I.      AMENDED DISCOVERY RESPONSES

      Since the oral argument before this Court on April 11, 2018, on numerous discovery

motions, and having reviewed the transcript of the oral argument in detail, Plaintiffs amended

their responses to all of Defendants' discovery – nine (9) amended responses in all.  In those

amended responses, Plaintiffs did the following across all responses:

1. Removed numerous General Objections and Objections to Definitions and Instructions.
2. Removed general reference in each response to "Subject to and without waiving the foregoing General Objections …."
3. Stated that a Response was not subject to an objection unless specifically stated and specified.
4. Provided specific objections to each Response, where applicable.
5. Changed sixty (60) Responses to Requests for Admission to "Admitted" – including RFAs mentioned by the Court (RFA No. 1) and by Defendants' counsel (RFA Nos. 185-237).

The specific amended responses are attached hereto as Exhibits 1-9.

## II.     DISMISSAL OF BI-LO HOLDING LLC

Plaintiffs have informed Defendants today that they will be dismissing Bi-Lo Holding LLC as a Plaintiff.  This dismissal moots the discovery directed to Bi-Lo Holding LLC.

## III.     SPECIFIC RESPONSES

Plaintiffs continued to respond to certain Requests for Admission that, after a reasonable inquiry, they do not have facts or such facts cannot be reasonably obtained so that they cannot admit or deny the specific request.  Many of these requests seek information not in Plaintiffs' knowledge, custody, possession or control, and, instead, seek information exclusively within Defendants' knowledge, possession, custody or control.  Furthermore, many of the RFAs relate to Defendants' Capper-Volstead immunity defense.  However, Defendants bear the burden of proving that affirmative defense, as with any affirmative defense.  Moreover, Plaintiffs served interrogatories on Defendants to elicit the facts supporting those defenses.  Here is a typical response:

> DFA incorporates its General Objections, Objections to Definitions, and Objections to Instructions as if fully set forth herein.  DFA further responds that discovery is ongoing and it reserves the right to provide a final answer to this contention Interrogatory until discovery has been completed pursuant to Fed. R. Civ. P. 33(a). Subject to and without waiving the foregoing objections, DFA preliminarily responds that Section 6 of the Clayton Act provides immunity from the antitrust laws to agricultural organizations established for purposes of mutual help among their members, of which DFA is one. DFA further directs Plaintiffs to its response to Plaintiffs' Interrogatory No. 15, above, which is incorporated here by reference.
>
> DFA reserves the right to revise, amend, correct, supplement, modify, or clarify its responses to this Interrogatory.

Defendant Dairy Farmers of America, Inc;'s Response to Plaintiffs' Second Set of Interrogatories, Response No. 16, attached hereto as Exhibit 10.  Not only does DFA engage

in the type of response that it has excoriated Plaintiffs for, but also DFA provides no facts in the Response. Instead, DFA refers to its Response to Interrogatory No. 15, which states:

> DFA incorporates its General Objections, Objections to Definitions, and Objections to Instructions as if fully set forth herein. DFA further responds that discovery is ongoing and it reserves the right to provide a final answer to this contention Interrogatory until discovery has been completed pursuant to Fed. R. Civ. P. 33(a). Subject to and without waiving the foregoing objections, DFA preliminarily responds that it is a food and agriculture cooperative association owned by and operated for the benefit of its farmer-members. DFA has been determined by the U.S.D.A. to qualify as a cooperative marketing association under the provisions of the Capper Volstead Act. See DFA2013-00241081-DFA2013-00241084. The Cooperatives Working Together program of the National Milk Producers Federation, of which DFA was a member, was similarly composed entirely of individual farmers and farmer cooperative marketing associations qualified under the Capper Volstead Act. See e.g., NMPF0025820, NMPF0000162; NMPF0025885; NMPF0026741; NMPF0027144; NMPF0027153; NMPF0001445; NMPF0000022. Additional information about the factual and legal basis for this affirmative defense is set forth in Defendants' motion for summary judgment and reply in support thereof filed in the California Action. See ECF Nos. 333, 356, Edwards v. National Milk Producers Federation, No. 11-cv-04766 (N.D. Cal.).

> DFA reserves the right to revise, amend, correct, supplement, modify, or clarify its responses to this Interrogatory.

Id., Response No. 15. In the above response, DFA only references nine (9) documents – eight (8) of which just list the members of the Cooperatives Working Together program. The other document – DFA2013-00241081-84 – contains a one page document from the USDA setting forth a determination made in 1966 that DFA's predecessor confirming that DFA is a cooperative marketing association of producers, qualified under the Capper-Volstead Act. There is no other factual information provided. Thus, for Defendants to take issue with Plaintiffs' lack of knowledge or access to facts is the height of hypocrisy.[1] Therefore,

---

[1] Defendants did serve amended responses to these interrogatories on March 30, 2018, at the same time that they filed their motion to compel with respect to Plaintiffs' responses to their RFAs. Thus,

Plaintiffs' invocation of the "lack of knowledge and access to fact" response was proper, as admitted by Defendants' own discovery responses and the paucity of the information that they provided as support for this affirmative defense, prior to the final day of discovery.[2]

## IV. DEFENDANTS' EXPLANATION AS TO WHY THEY DID NOT CONDUCT DISCOVERY FOR NINE (9) MONTHS.

At the oral argument on April 11, 2018, for the first time, Defendants' counsel asserted that the reason that they all-of-a-sudden starting conducting discovery in February 2018 was that Dr. Connor, Plaintiffs' expert, used a set of data that was not previously produced. However, Defendants did not make an issue of that after receiving Dr. Connor's report on December 18, 2017. Moreover, on or about January 19, 2018, Defendants raised with Plaintiffs the idea of an extension of portions of the Case Management Schedule, and did not mention the third set of data or that it had caused them to look again at Plaintiffs' production and discovery responses. See Exhibit 11 attached hereto. This is precisely the point that the Court raised at the April 11 oral argument – if Defendants knew as of December 18, 2017, that there had concerns about Plaintiffs' production and discovery responses as a result of the third set of data, why didn't they ask for an extension of the Discovery Deadline then? Or even on January 19? The answer is clear – the argument set forth by Defendants at the April 11 oral argument is an after-the-fact attempt to justify that they simply did not conduct any discovery for 9 months in this case – from May 2017 until February 2018.

---

Plaintiffs did not have the information contained in Defendants' amended responses when they responses to Defendants' RFAs.

[2] Plaintiffs still rely on their arguments as to why these RFAs are improper (Dkt. #150).

In addition, on February 7, 2018, Defendants sent a letter to Plaintiffs asking them to meet and confer on Plaintiffs' responses to Defendants' first set of interrogatories, but mentioning nothing about a wholesale reexamination of Plaintiffs' document production and discovery responses. See Exhibit 12 attached hereto.  Finally, Defendants began their barrage of discovery on February 23, 2018, and then again on February 27, 2018 – no doubt realizing that they had done nothing for 9 months and had a little more than 30 days before the Discovery Deadline.

Furthermore, at oral argument, Defendants did not inform this Court that the third data set only relating to purchases when C&S Wholesale Grocers was involved in purchasing for Plaintiffs, which only started in mid to late 2013.  Thus, that data set relates to about $800,000 of Plaintiffs' $21.4 million in damages.  Finally, Defendants have stated that they intend to move to have those purchases and damages excluded.

Finally, Defendants' argument that they decided to reexamine Plaintiffs' production and discovery responses as a result of the third set of data does not explain why they did not conduct any discovery into dairy publications or newspapers for the 12 months from January 2017 – when they knew that Plaintiffs' position was that they did not learn of Cooperatives Working Together or its Herd Retirement Program until late 2013 – until February 2018.

Therefore, based on all of the above, the contention that the third data set caused Defendants some significant concern about Plaintiffs' document production and discovery responses – beyond the concern that they might have had when Plaintiffs produced documents

in early 2017 and responded to discovery – is belied by their own actions and by the relative unimportance of the third data set.

## V.    DEFENDANTS' EFFORTS

In contrast to Plaintiffs' efforts, Defendants initially took the position that they had nothing to do before the June 1 deadline, because all of the outstanding discovery motions only dealt with Plaintiffs' discovery responses. After Plaintiffs pointed out to Defendants that their discovery responses were in issue with their late Rule 26 amended disclosures, which are the subject of Plaintiffs' Motion to Strike or Exclude, Defendants sent a one sentence email stating that they stand by their position that the disclosures are timely.

Respectfully submitted June 1, 2018

/s/ H. Timothy Gillis
H. Timothy Gillis, Trial Counsel
Florida Bar No. 133876
Shutts & Bowen LLP
1022 Park Street, Suite 308
Jacksonville, FL 32204
Phone: (904) 647-6476
Fax: (904) 738-8640
tgillis@shutts.com


Patrick J. Ahern
Ahern and Associates, P.C.
8 South Michigan Avenue
Suite 3600
Chicago, IL 60603
(312) 404-3760
patrick.ahern@ahernandassociatespc.com
(*Admitted Pro Hac Vice*)

*Attorneys for Plaintiffs Winn-Dixie
Stores, Inc., and Bi-Lo Holdings, LLC*

## <u>CERTIFICATE OF SERVICE</u>

   I HEREBY CERTIFY that on June 1, 2018, I electronically filed the foregoing with the Clerk of Court pursuant to the Administrative Procedures for Electronic Filing in Civil and Criminal Cases of this Court by using the CM/ECF System, which will send a notice of electronic filing to all counsel of record.

/s/ <i>Patrick J. Ahern</i>    
Attorney
