# EXHIBIT 1

**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

| | |
|---|---|
| Winn-Dixie Stores, Inc. and<br>Bi-Lo Holdings, LLC,<br><br>    Plaintiffs,<br><br>v.<br><br>Southeast Milk, Inc., *et al.*,<br><br>    Defendants. | Case No. 3:15-cv-01143-BJD-PDB |

## PLAINTIFFS' SUPPLEMENTAL REQUESTS FOR PRODUCTION

Plaintiffs Winn-Dixie Stores, Inc. ("Winn-Dixie") and Bi-Lo Holdings, LLC ("Bi-Lo") ("Plaintiffs"), pursuant to Rules 26 and 34 of the Federal Rules of Civil Procedure, request that Defendants Dairy Farmers of America, Inc., Land O'Lakes, Inc., and Agri-Mark, Inc. ("Defendants") provide a written response to Plaintiffs' Supplemental Request for Production of Documents (the "Requests"), within 7 days of service, and produce responsive documents within 14 days of service.

## DEFINITIONS

1. "All" shall mean "each," "any," and "every."

2. "Communication" means oral or written transmission or receipt of words or information, by all means, directly or indirectly, regardless of how or by whom the communication was initiated, including: (a) written statements by means such as letter, memorandum, e-mail, instant message or facsimile, and (b) oral statements by means such as face-to-face meetings or via telephone or computer. Communications with an entity include communications by or with its subsidiaries, divisions, subdivisions, affiliates, programs,

1

predecessor and successor entities, partners, officers, directors, members, employees, agents, legal counsel or other persons acting on its behalf.

3. The term "meeting" means any contemporaneous presence (whether face-to-face or via telephone or computer) of two or more persons for any purpose, whether planned or arranged, scheduled or not.

4. The term "document" includes, but is not limited to, Electronically Stored Information ("ESI"), and (without regard to medium) shall include "writings, drawings, graphs, charts, photographs, sound recordings, images, and other data or data compilations." *See* Fed. R. Civ. P. 34(a)(1)(A). A "document" shall also mean the original (or identical duplicate when the original is not available) and all non-identical copies (whether non-identical because of notes, comments, marks, transmission notations, highlights or other reasons), and all drafts.

5. The term "employee" means a person currently or previously employed by or acting as the agent of another person.

6. The term "person" means a natural person or an entity.

7. The term "entity" means a business, legal or government entity such as a corporation, partnership, association, program or cooperative.

8. The term "identify," when referring to a natural person, means to give the person's full name, present or last known residential address, and present or last known place of employment. When referring to an entity, the term "identify" means to give the full business name and present or last known business address.

9. The term "identify," when used in reference to a Communication or Meeting, means to identify all persons involved in such Communication or Meeting, to list all documents related to such Communication or Meeting (including all documents recording or summarizing

such Communication or Meeting or documents tending to show that the Communication or Meeting occurred) and to state any actions known by you to have been taken as a result of such Communication or Meeting.

10. The term "identify," when used in reference to a fact, means to set forth all matters explaining, concerning, causing, or contributing to the information sought in the Request.

11. "Concerning," "relating to," "referring to," "regarding" or "with respect to" means discussing, describing, reflecting, dealing with, pertaining to, analyzing, evaluating, estimating, embodying, identifying, constituting, containing, mentioning, stating, evidencing, studying, surveying, projecting, assessing, recording, summarizing, criticizing, reporting, commenting or otherwise involving, in whole or in part.

12. "You" or "your" means the responding Defendant, its predecessors, successors, subsidiaries, departments, divisions, affiliates, locations or programs in the United States, including entities which the responding Defendant manages or controls, together with all present and former directors, officers, partners, members, employees, agents, attorneys, investigators, representatives, or other persons known by the responding Defendant to be acting in whole or in part on behalf of the responding Defendant.

13. "Southeast Milk, Inc." or "SMI" means Southeast Milk, Inc., its predecessors, successors, subsidiaries, departments, divisions, affiliates, or locations in the United States, including entities which SMI manages or controls, together with all present and former directors, officers, partners, members, employees, agents, attorneys, investigators, representatives, or other persons known by SMI to be acting in whole or in part on behalf of SMI. SMI shall include, but not be limited to, Gufstafson's Dairy, Sunshine State Dairy and Sunshine Dairy.

14. "National Milk Producers Federation" or "NMPF" means National Milk

Producers Federation, its predecessors, successors, subsidiaries, departments, divisions, affiliates, locations or programs in the United States, including entities which NMPF manages or controls, together with all present and former directors, officers, partners, members, employees, agents, attorneys, investigators, representatives, or other persons known by NMPF to be acting in whole or in part on behalf of NMPF.

15. "Cooperatives Working Together" or "CWT" means Cooperatives Working Together, its predecessors, successors, subsidiaries, departments, divisions, affiliates, locations or programs in the United States, including entities which CWT manages or controls, together with all present and former directors, officers, partners, members, employees, agents, attorneys, investigators, representatives, or other persons known by CWT to be acting in whole or in part on behalf of CWT. For purposes of these Requests, CWT shall exclude matters exclusively regarding the Export Assistance Program such that the Export Assistance Program is not intended, standing entirely alone, to be responsive.

16. "Dairy Farmers of America, Inc." or "DFA" means Dairy Farmers of America, Inc., its predecessors, successors, subsidiaries, departments, divisions, affiliates or locations in the United States, including entities which DFA manages or controls, together with all present and former directors, officers, partners, members, employees, agents, attorneys, investigators, representatives, or other persons known by DFA to be acting in whole or in part on behalf of DFA.

17. "Land O'Lakes, Inc." or "Land O'Lakes" means Land O'Lakes, Inc., its predecessors, successors, subsidiaries, departments, divisions, affiliates or locations in the United States, including entities which Land O'Lakes manages or controls, together with all present and former directors, officers, partners, members, employees, agents, attorneys, investigators,

4

representatives, or other persons known by Land O'Lakes to be acting in whole or in part on behalf of Land O'Lakes.

18. "Dairylea Cooperative Inc." or "Dairylea" means Dairylea Cooperative Inc., its predecessors, successors, subsidiaries, departments, divisions, affiliates or locations in the United States, including entities which Dairylea manages or controls, together with all present and former directors, officers, partners, members, employees, agents, attorneys, investigators, representatives, or other persons known by Dairylea to be acting in whole or in part on behalf of Dairylea.

19. "Agri-Mark, Inc." or "Agri-Mark" means Agri-Mark, Inc., its predecessors, successors, subsidiaries, departments, divisions, affiliates or locations in the United States, including entities which Agri-Mark manages or controls, together with all present and former directors, officers, partners, members, employees, agents, attorneys, investigators, representatives, or other persons known by Agri-Mark to be acting in whole or in part on behalf of Agri-Mark.

20. The term "Milk Product" shall mean raw farm milk as well as fluid milk (whole milk, 2% milk, 1% milk and skim milk) and other fresh milk products, including without limitation cream, half & half, yogurt, cottage cheese, cream cheese, sour cream, butter, cheese and ice cream.

21. A "dairy cow" shall mean a milking cow, dry cow or bred heifer.

22. The term "BST-free" shall mean Milk Products that you describe, offer, produce, sell, advertise or market as being produced from milk drawn from dairy cows that are not treated with bovine somatotropin or recombinant bovine growth hormone, sometimes also referred to as rBST or rBGH, respectively (or as artificial growth hormones).

Case 3:15-cv-01143-BJD-PDB   Document 222-1   Filed 10/12/18   Page 7 of 13 PageID 9596

23. The "dairy industry" shall mean persons that produce, asSMIble, bottle or sell Milk Products in the United States, or such other meaning as you may from time to time use in the ordinary course of your business.

24. The term "Herd Retirement Program" refers to a program or effort developed, sponsored, implemented or funded in whole or in part by NMPF, CWT or other Defendants by which dairy cows were removed from production through retirement or otherwise, including the ten herd retirements implemented by CWT during the Relevant Time Period.

25. The "United States Congress" shall mean members, committees, subcommittees, employees, offices or agencies of the United States Congress, as well as registered lobbyists. A "State Legislature" shall mean members, committees, subcommittees, employees, offices or agencies of a legislative body of one of the fifty United States (for example, the Florida Legislature), as well as registered lobbyists.

26. "USDA" shall mean the United States Department of Agriculture, the Agriculture Secretary, and employees, offices or agencies of the United States Department of Agriculture, as well as registered lobbyists. A "State Department of Agriculture" shall mean a State Agriculture Secretary, and employees, offices or agencies of a State Department of Agriculture (for example, the Florida Department of Agriculture and Consumer Services), as well registered lobbyists.

## INSTRUCTIONS

1. In addition to all requirements set forth in the Federal Rules of Civil Procedure, which Plaintiffs incorporate herein, the following instructions apply to each of the Requests set forth below, and are deemed to be incorporated in each of these Requests.

2. Defined terms apply without regard to capitalization.

3. You should construe these Requests as follows:

      a. the conjunctions "and" and "or" should be read either disjunctively or conjunctively to bring within the scope of the Request all information that might otherwise be construed to be outside its scope; and

      b. the present tense of a verb includes its past tense and vice versa.

4.    These Requests require that you produce: (a) all responsive Documents created, generated or dated during the Relevant Time Period, and (b) all Documents created, generated or dated outside the Relevant Time Period that contain information concerning the Relevant Time Period or which were referred to in Documents otherwise responsive to these Requests.

5.    Produce all responsive Documents in your possession, custody or control, regardless of the physical location of the Documents or whether such Documents are possessed directly by you or by others from whom you can obtain the Documents.

6.    Produce the original of all responsive Documents, together with all non-identical copies and drafts. If the original of a Document cannot be located, a copy shall be produced in lieu thereof, and shall be legible.  A paper Document shall be bound or stapled in the same manner as the original.

7.    Documents that respond in whole or in part to a portion of these Requests are to be produced in their entirety, including all attachments, enclosures, glossaries, appendices, exhibits, routing slips, transmittal memoranda, letters, cover sheets, comments or evaluations. Documents attached to each other, and email messages and their attachments, should not be separated.

8.    Documents not otherwise responsive to these Requests shall be produced if such Documents mention, discuss, refer to, or explain the Documents that are called for by these Requests.

9.    All Documents shall be produced in the same order as they are kept in the ordinary course of business. If Documents have been removed from the files in which they were

found for purposes of producing them in response to these Requests, indicate for each Document the file in which the Document was originally located.

10. All Documents shall be produced in the file folder, envelope, or other container in which the Documents are kept. If the container cannot be produced, produce copies of all labels or other identifying marks.

11. Documents shall be produced in such fashion as to identify the department, branch, or office where they were located and, if applicable, the natural person in whose possession they were found and the business address of all document custodians.

12. If a Document once existed and has subsequently been lost, destroyed, or is otherwise missing, provide sufficient information to identify the Document and state the details concerning its loss.

13. All Documents produced in paper or .TIFF form should be numbered sequentially, with a unique number on each page, and with a prefix identifying the producing party.

14. If you object to a part of these Requests: (a) state each objection in sufficient detail to permit the Court to determine the validity of the objection; and (b) produce all responsive information to which your objection does not apply.

15. If you claim that a part of these Requests is vague or ambiguous, identify the specific language you consider vague or ambiguous and state the interpretation of the language in question you used to frame your response.

16. If you redact a portion of a Document, affix the word "REDACTED" on each page which you have redacted.

17. If Documents are redacted on a basis other than privilege, provide the information

and reason for the redaction in sufficient detail to allow Plaintiffs to assess the validity of the claim for redaction. Non-responsiveness of a portion of a Document is not a sufficient basis for redaction.

18. If you claim the attorney-client privilege or another privilege or work-product protection for a Document, provide a detailed privilege log that contains the following information for each Document withheld:

   a. the date of the Document;
   b. the identity of all authors of the Document;
   c. the identity of all persons who prepared or participated in the preparation of the Document;
   d. the identity of all persons who received the Document;
   e. the identity of all persons from whom the Document was received;
   f. a general description of the subject matter;
   g. the present location of the Document and all copies thereof;
   h. the identity of all persons having custody or control of the Document and all copies thereof;
   i. the Requests to which the Document is responsive; and
   j. sufficient information concerning the Document and the circumstances thereof to explain the claim of privilege or protection and to permit the adjudication of the propriety of the claim.

19. If you assert privilege with respect to part of a Document, redact the privileged portion and indicate clearly on the Document where the information was redacted. Produce the redacted Document even if you believe that the nonredacted portion is not responsive. Identify the redacted portions on the privilege log in the same manner as Documents that are withheld in their entirety.

20. Requests seeking Documents concerning supply, demand, prices or sale of Milk Products exclude invoices and compilations thereof.

## **REQUESTS FOR PRODUCTION**

1. For each witness identified in response to Supplemental Interrogatory No. 1, produce the following:

a. All documents relating to the witness' dairy farming business from 2003 through 2013;

b. All documents relating to the entity or entities through which the witness conducted his or her dairy farming business from 2003 through 2013;

c. All documents relating to that entity's or entities' accounts and relationships with any bank, credit union or other financing source;

d. All documents relating to any analysis done by the witness or on behalf of the entity or entities through which he or she conducted dairy farming regarding a decision whether or not to submit a bid under the Herd Retirement Program, and if so, the amount of the bid;

e. All documents relating to any bid submitted under the Herd Retirement Program;

f. The federal and state tax returns for the entity or entities through which the witness conducted his or her dairy farming business for the tax years 2003 through 2013;

g. All documents relating to the financial condition of the entity or entities through which the witness conducted his or her dairy farming business from 2003 through 2013;

h. The witness' personal federal and state tax returns for the tax years 2003 through 2013.

i. All documents relating to any compensation or remuneration received from the witness by any Defendant from 2003 through the present, as requested in Interrogatory No. 1.f.

2. For each witness identified in response to Supplemental Interrogatory No. 3, if applicable, produce the following:

   a. All documents relating to any statements made by the witness regarding Cooperatives Working Together;

   b. All documents received by the witness regarding Cooperatives Working Together;

   c. All documents relating to any statements made by the witness regarding CWT's Herd Retirement Program;

   d. All documents received by the witness regarding CWT's Herd Retirement Program;

   e. All documents relating to any statements made by the witness regarding the Capper-Volstead Act or Capper-Volstead immunity;

   f. All documents received by the witness regarding the Capper-Volstead Act or Capper-Volstead immunity.

   g. All documents relating to any compensation or remuneration received from the witness by any Defendant from 2003 through the present, as requested in Interrogatory No. 3.g.\

Dated: October 12, 2018

/s/ H. Timothy Gillis
H. Timothy Gillis, Trial Counsel
Florida Bar No. 133876
Jeffrey S. York
Florida Bar No. 987069
Shutts & Bowen LLP
1022 Park Street, Suite 308
Jacksonville, FL 32204
Phone: (904) 899-9926
Fax: (904) 899-9965
tgillis@shutts.com
jyork@shutts.com

Patrick J. Ahern
Ahern and Associates, P.C.
8 South Michigan Avenue
Suite 3600
Chicago, IL 60603
(312) 404-3760
patrick.ahern@ahernandassociatespc.com
(*Admitted Pro Hac Vice*)

*Attorneys for Plaintiffs Winn-Dixie Stores, Inc., and Bi-Lo Holdings, LLC*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on October 12, 2018, I served the foregoing by email on counsel of record for all defendants.

/s/ H. Timothy Gillis