# EXHIBIT F

# Exhibit 3

**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

| | |
|---|---|
| Winn-Dixie Stores, Inc. and<br>Bi-Lo Holdings, LLC,<br><br>     Plaintiffs,<br><br>v.<br><br>Southeast Milk, Inc., *et al.*,<br><br>     Defendants. | Case No. 3:15-cv-01143-BJD-PDB |

**PLAINTIFFS' THIRD AMENDED RESPONSE TO**
**DEFENDANT DFA'S FIRST SET OF INTERROGATORIES**

Pursuant to Rules 26 and 33 of the Federal Rules of Civil Procedure, and all other applicable Rules and Orders of this Court, Plaintiffs Winn-Dixie Stores, Inc., and Bi-Lo Holding LLC ("Plaintiffs") submit this amended response to the First Set of Interrogatories, propounded by Dairy Farmers of America, Inc. ("Defendant"). [The information provided in this response is designated "Highly Confidential" pursuant to the Protective Order in this case.]

**I.   GENERAL OBJECTIONS**

1.   Plaintiffs reserve all evidentiary objections and issues under the Federal Rules of Evidence.

2.   Plaintiffs object to Defendant's interrogatories to the extent that they seek any information that is protected from discovery based on the attorney-client privilege, the work product doctrine, or any other privilege or immunity (collectively "Privilege").

3.   Plaintiffs object to the interrogatories to the extent that they seek information that is not in Plaintiffs' possession custody or control or to the extent they seek information from

persons or entities that are not parties to this litigation.

4.      Plaintiffs object to the interrogatories to the extent the interrogatories seek information related to Plaintiffs' sales, pricing, marketing, distribution, revenue, profits, or information related to its retail sales practices, including but not limited to, sales of milk products, often referred to as "downstream" discovery. To the extent the interrogatories seek any "downstream" discovery, such information is irrelevant to the claims and defenses of the parties and not proportional to the needs of the case, unduly burdensome, harassing and protected by Privacy.

5.      Unless Plaintiffs state in a Response that they are responding "Subject to and without waiving" a specific Objection, the Response is made without being subject to any Objection.

## II.   **OBJECTIONS TO DEFINITION AND INSTRUCTIONS**

1.      Plaintiffs object to Defendant's interrogatories to the extent that Defendant's temporal scope conflicts with the temporal scope limits that Defendants place on their responses to Plaintiffs' discovery to Defendants.

2.      Plaintiffs object to the term "communications" on the grounds that it is unreasonably broad and therefore the interrogatories, if any, to which the term applies are unreasonably burdensome. Plaintiffs further object to the term "broadest sense" as overly broad and to the extent it seeks information not relevant to any party's claim or defense and not proportional to the needs of the case.

3.      Plaintiffs object to the definition of "Fresh Milk Products" because "Fresh Milk Products" is not a term used with initial capitals in Plaintiffs' Complaint and Amended Complaint,

is not a defined term in the Complaint and Amended Complaint, and does not refer only or exclusively to the products specifically identified in the Complaint and Amended Complaint.

## III.    **RESPONSES TO INTERROGATORIES**

**INTERROGATORY NO. 1:**    Identify by name, title, and dates of employment each of your current or former employees or agents who had any responsibility for, or involvement in, any of your purchases of raw milk, Fluid Milk or Fresh Milk Products, including but not limited to employees or agents involved in purchasing, analysis of demand conditions, marketing, and strategic planning. If a person's responsibility or involvement relates to a particular product or type of product, please include such information in your response.

**RESPONSE TO INTERROGATORY NO. 1:**    Plaintiffs object to this interrogatory on the basis stated in Objection No. 3 to the Definitions and Instructions.  Plaintiffs identify the following persons:

Graham Leary – Vice President of Strategic Sourcing -- March 2007 through present.

David Welch – Senior Category Manager for Dairy – May 2005 through 2008; Director, Dairy and Frozen Foods – 2009 through 2014.  Currently employed by Plaintiffs.

Coler Ambrose (former employee) – Replenishment Buyer – October 2002 – March 2009; Category Analyst II – March 2009 – April 2011; Category Manager, Dairy Merchandising – April 2011 – March 2014.

Donald Bernos – Plant Manager for Plant City and Hammond plants – from prior to the sale of plants by Winn-Dixie to SMI.

Dwight Moore

Evan Rainwater

Joe Ragase

Hugh Ridgway

**INTERROGATORY NO. 2:**    Identify each milk processing plant for which you purchased raw milk, including, but not limited to, the date on which you first purchased raw milk

3

and the date on which you last purchased raw milk for each processing plant, and each entity from whom you purchased raw milk for each processing plant.

**RESPONSE TO INTERROGATORY NO. 2:**    Plaintiffs    identify    the    following plants:

Plant City, Florida – Southeast Milk, Inc. – January 1, 2003 through December 31, 2013

Hammond, Louisiana – Dairy Farmers of America, Inc. – January 1, 2003 through April 30, 2008

Miami, Florida – Southeast Milk, Inc. – January 1, 2003 through May 31, 2004.

High Point, North Carolina – Virginia/Maryland Dairy Cooperative – January 1, 2003 until sale or closing.

**INTERROGATORY NO. 3:**    Identify each store or distribution center for which you purchased Fluid Milk or Fresh Milk Products.

**RESPONSE TO INTERROGATORY NO. 3:**    Plaintiffs object to this interrogatory on the basis stated in Objection No. 4 to the Definitions and Instructions.  Plaintiffs identify the following distribution centers:

Baldwin, FL

Tampa, FL

Miami, FL

Greenville, SC

Raleigh, NC

Louisville, KY

Montgomery, AL

Hammond, LA

Atlanta, GA

Pompano, FL

Charlotte, NC

Orlando, FL

Fort Worth, Tx

**INTERROGATORY NO. 4:**   Identify each product that you contend is a "Fluid Milk" product.

**RESPONSE TO INTERROGATORY NO.4:**   Plaintiffs identify the following products:

Raw Milk

Processed Milk, including Whole Milk, 2% Milk, Skim Milk, Lactose Free Milk, Chocolate Milk, and Strawberry Milk.

**INTERROGATORY NO. 5:**   Identify each entity from which you purchased "Fluid Milk" products during the Relevant Period.

**RESPONSE TO INTERROGATORY NO. 5:**   Plaintiffs identify the following Defendants:

Southeast Milk, Inc., including without limitation, Sunshine State, Superbrand, and Gufstafson's.

Dairy Farmers of America

This response is complete.

**INTERROGATORY NO. 6:**   Identify each product that you contend is a "Fresh Milk Product."

**RESPONSE TO INTERROGATORY NO. 6:**   Plaintiffs object to this interrogatory on the basis stated in Objection No. 3 to Definitions and Instructions.  Plaintiffs identify the following products made from fresh milk, including raw milk: cream, cream cheese, ice cream, half and half, sour cream, cottage cheese, yogurt, ice cream, butter, and cheese.

**INTERROGATORY NO. 7:**   Identify each entity from which you purchased "Fresh Milk Products" during the Relevant Period.

**RESPONSE TO INTERROGATORY NO. 7:**     Plaintiffs object to this interrogatory on the basis stated in Objection No. 3 to Definitions and Instructions. Plaintiffs identify the following Defendants from which they purchased dairy products:

Southeast Milk, Inc., including without limitation, Sunshine State, Superbrand, and Gufstafson's.

Dairy Farmers of America, including without limitation, Superbrand, and Kemps.

Agri-mark

Land O'Lakes

This list is complete.

**INTERROGATORY NO. 8:**     Identify the source of the quote in Paragraph 105 of the Complaint, including but not limited to the person who is quoted and where such quote was obtained.

**RESPONSE TO INTERROGATORY NO. 8:**     Plaintiffs state that they have been unable to identify the source of the quote in Paragraph 105, and therefore will withdraw the quote from their allegations.

**INTERROGATORY NO. 9:**     Identify and describe any actions that you took to mitigate the alleged damages that you suffered by virtue of the alleged conspiracy relating to raw milk, Fluid Milk and Fresh Dairy Products, including any effort or attempt by you to obtain lower prices for such products, once you were aware of the alleged conspiracy, including but not limited to, the dates on which such actions were taken and the identity of the persons involved in such actions.

**RESPONSE TO INTERROGATORY NO. 9:**     Plaintiffs object to this interrogatory on the basis stated in Objection No. 3 to Definitions and Instructions. Plaintiffs state that they were not aware of the alleged conspiracy until 2013.

**INTERROGATORY NO. 10:**     Identify, on a Defendant-by-Defendant and alleged coconspirator- by- alleged co-conspirator basis, each action you allege the Defendants or any alleged co-conspirators made to hide or conceal their alleged wrongful conduct (including but not limited to allegations that "Defendants' statements regarding the purpose and effect of the Herd Retirement Program concealed that it was intended to create supracompetitive prices" and "The

6

CWT also covered up that the Program was intended to drive small dairy farmers out of business" (see e.g., Complaint ¶¶ 117, 113)), the date such action allegedly occurred, the person(s) who allegedly took such action, and the identity of any person with knowledge of such facts.

**RESPONSE TO INTERROGATORY NO. 10:**   Plaintiffs   state   that   Defendants

committed the following acts of concealment:

1.  Defendant Southeast Milk attributed price increases to various cost and other putatively legitimate factors, such as increases in the cost of feed and fuel, and inhospitable weather, and never revealed to Plaintiffs the material fact that prices were increased above competitive levels due to the Herd Retirement Program.  Plaintiffs identify Bryce Kelly as one of the SMI employees who made such statements to Hugh Ridgway and Plaintiffs.

2.  Furthermore, Calvin Covington, Southeast Milk's CEO, made price forecasts for raw milk and other commentary about the dairy industry which conveyed that the changes in prices were part of the normal "ups" and "downs" of the dairy industry, and never mentioned that increasing prices or a rebound from lower prices was due to the Herd Retirement Program.  Graham Leary testified to this in his deposition.

3.  Southeast Milk knew or should have known that the intended purpose and actual effect of the Program to raise prices above competitive levels should have been disclosed to Plaintiffs, independently and when the topic of prices arose in dealings with Plaintiffs.  Southeast Milk also knew that it could induce Plaintiffs to forego taking action to protect their interests and prevent or recover their losses by concealing from them the intended purpose and actual effect of the Program to raise prices above competitive levels, and communicating other

7

plausible, yet false, reasons for the price increases to Plaintiffs. Moreover, when it was communicating with Plaintiffs about prices or price increases, Southeast Milk had a duty to disclose to Plaintiffs the Herd Retirement Program and the fact that its intended and actual purpose was to reduce the number of dairy cows and increase prices above competitive levels. That duty was created, inter alia, by the Supply Agreements in force between Plaintiffs and Southeast Milk from at least May 2006 through 2013, including without limitation the obligation on behalf of Southeast Milk to conduct itself ethically, and also its representation in the Agreements that it would conduct itself in compliance with all laws, as well as the duty of good faith and fair dealing implied in every contract. Plaintiffs identify the agreements between them and SMI in effect from at least May 2006 through the end of 2013.

Plaintiffs state further that DFA also had a duty to disclose similar to SMI's duty set forth above. DFA's duty was based on the course of dealing between Plaintiffs and DFA whereby DFA acted as a supplier to Plaintiffs.

4.   Defendants took steps to conceal more broadly the intended purpose and actual effect of the Herd Retirement Program to raise prices above competitive levels. For example, when Defendants ceased the Program, they sought to cover it up. They took down the FAQs section from the CWT website that contained information regarding the Program. In addition, Mr. Kozak made a false statement as to why the CWT was discontinuing the Program. He said that it was because it was having a diminishing effect. See Paragraph 82 of the Amended Complaint. However, to the contrary, 2010 was the most successful

year ever for the Program, with 3 of the 10 herd retirements occurring during that year.  Moreover, Mr. Kozak's statement was made after the first lawsuits were filed challenging the legality of the Program – lawsuits that CWT ascribed to animal rights activists, another false statement.  Plaintiffs identify Mr. Kozak.

5.     The CWT concealed the Capper-Volstead disabling conflicts of interests that existed as a result of the makeup of the NMPF and CWT, as detailed in Paragraph 107 of the Amended Complaint.   Plaintiffs identify the CWT documents set forth in Paragraph 107 of the Amended Complaint.

6.     The CWT put into fine print on the Bid Form the conditions that (1) a dairy farmer had to sell his entire herd, not just his poorly-producing part of the herd, and (2) a dairy farmer had to attest that the herd being sold was a true producing herd, and not one that was sickly or poorly producing, even though the cows purchased by CWT as part of the Program were going to slaughter. See Paragraphs 6-7 of the Amended Complaint, which includes the Bid Form. Furthermore, Plaintiffs never saw the Bid Form during the time that the Herd Retirement Program was being carried out.  Plaintiffs identify CWT documents, including without limitation the CWT Bid Forms used in the Herd Retirement Program.

7.     The CWT covered up and certainly did not publicize the fact that the Program was changed in 2009 to require that any dairy farmer who sold his herd to the Program had to stay out of dairy farming for one year (and would not get the remaining 10% of the payment for his herd until the end of that one year and only upon certification that he had not engaged in dairy farming during that one

9

year). See Paragraphs 10 and 66 of the Amended Complaint. Plaintiffs identify CWT documents, including without limitation the CWT Bid Forms used in the Herd Retirement Program starting in 2009 and other CWT documents relating to the change in the Program described above.

8.   Defendants' statements regarding the purpose and effect of the Herd Retirement Program concealed that it was intended to create supracompetitive prices. Those statements masked the true purpose of the Program – to raise over-order prices to supracompetitive levels.   Instead, Defendants' statements spoke of "the milk price recovery" – suggesting the opposite of the truth -- that the Program was intended to help dairy farmers in times of low prices, rather than to create supracompetitive prices. See Paragraphs 79 and 71 of the Amended Complaint.  Plaintiffs identify CWT press releases on July 10, 2009 and May 27, 2010.

9.   No Defendant, including Southeast Milk and DFA, ever told Plaintiffs (1) about the existence of the Herd Retirement Program or Cooperatives Working Together, (2) that Southeast Milk, DFA and the other Defendants Dairylea, Land O'Lakes and Agri-mark were members of CWT and participated in the Herd Retirement Program, either by paying the Herd Retirement Program fees or assessments and/or by reason of their members retiring their herds pursuant to the Program, or (3) that the intended purpose and actual effect of the Program was to raise prices to supracompetitive levels.

Pursuant to the Court's Order dated June 27, 2018, Plaintiffs identify the persons mentioned in the responses above: Jerry Kozak, Bryce Kelly, Calvin Covington, Graham Leary and Hugh Ridgway.

Plaintiffs also identify David Welch, Coler Ambrose, Joe Ragase, Evan Rainwater, Kathy Lussier, Donald Bernos, Dwight Moore, Don Breen, Joe Wright and Frank Johns.

**INTERROGATORY NO. 11:**   Identify all actions that you took to exercise diligence in investigating the alleged factual and legal bases for your claims, including any investigation you conducted into the Herd Retirement Program, identifying all of your personnel that conducted such diligence and/or investigation, and all acts that you took to investigate your claims after May 27, 2010.

**RESPONSE TO INTERROGATORY NO. 11:**   Plaintiffs state that they were not required to exercise diligence unless and until they were on inquiry notice, they were not aware of the alleged conspiracy until 2013, and that, prior to 2013, they had no knowledge of any facts that would constitute "storm warnings" or "red flags" such as to put them on inquiry notice.   In addition, as set forth above in Response to Interrogatory No. 10, subpart 1, Plaintiffs inquired of SMI and other Defendants, in the normal course of their supplier relationships, regarding the reasons for increases in prices and were told that they were due to increases in feed and fuel costs and inhospitable weather, and were never told that the increases were due to the Herd Retirement Program or the herd retirements carried out under the Program, and were never even told of the existence of the Herd Retirement Program or the herd retirements carried out under the Program. Plaintiffs identify the same individuals identified in response to Interrogatory No. 10.

**INTERROGATORY NO. 12:**   If your response to any Request for Admission is anything other than an unqualified "admitted," describe the basis for your denial, qualification or failure to admit and identify all Documents or other information that support your response.

**RESPONSE TO INTERROGATORY NO. 12:**   Plaintiffs provide the following information:

RFA No. 4: Plaintiffs denied this RFA because "Fresh Milk Products" is not a term used with initial capitals in Plaintiffs' Complaint and Amended Complaint, is not a defined term in the

Complaint and Amended Complaint, and does not refer only or exclusively to the products specifically identified in the Complaint and Amended Complaint.

RFA Nos. 5 and 9: Plaintiffs denied this RFA because documents produced by DFA show that its wholly-owned subsidiary Kemps sold dairy products to Plaintiffs.

RFA Nos. 10: Plaintiffs denied this RFA because transactional data produced by Plaintiffs show that they purchased butter from Land O' Lakes.

RFA No. 17: Plaintiffs denied this RFA because documents produced by DFA show that it had a supply agreement with SMI.

RFA No. 18: Plaintiffs denied this RFA because documents produced by Plaintiffs show Tennessee as the place of invoicing by DFA.

RFA No. 21: Plaintiffs denied this RFA because, as stated, the RFA is misleading and incomplete. When the federal government issues prices under a Federal Milk Marketing Order, those prices are derived from (1) a survey of wholesale prices reported to the federal government from producers, and (2) utilization rates presumably also derived from information reported to the federal government by producers. Thus, the FMMO price is derived from prices and information provided by producers to the federal government. Plaintiffs also denied this request based on their Objection No. 8 to the Defendants' Definition of "Fresh Milk Products."

RFA No. 22: Plaintiffs denied this RFA because documents produced by Plaintiffs and Defendants show that there are other components to the total price paid to suppliers of raw milk, fluid milk and dairy products, that are in addition to "over-order premiums" or "service charges."

**INTERROGATORY NO. 13:**   Identify each person who assisted in the preparation of your responses to the Requests for Production, Requests for Admission, and Interrogatories served by Dairy Farmers of America, Inc. or any other Defendant in this litigation, and state the role played by each, including whether that person's files and electronic records were searched for responsive Documents and/or information.

12

**RESPONSE TO INTERROGATORY NO. 13:**   Plaintiffs identify Graham Leary as the only person who assisted in the preparation of these Responses, along with counsel.   The information contained in this Response comes from depositions, documents produced by Defendants and Plaintiffs, purchase and sales data produced by Plaintiffs and Defendants, and information gathered by counsel.

**INTERROGATORY NO. 14:**   If you produce data in a spreadsheet or database format and the spreadsheet or database has data fields or column/row headings that are not self-explanatory, Identify or otherwise explain the data fields, or column/row headings, in such spreadsheets or databases.

**RESPONSE TO INTERROGATORY NO. 14:**   Plaintiffs   state   that   information responsive to this interrogatory was produced along with the transactional data produced on January 13, 2017.

Dated: August 6, 2018

*/s/ Patrick J. Ahern*

Patrick J. Ahern
Carl Poli
Christopher Stuart
Ahern & Associates, P.C.
Willoughby Tower
8 South Michigan Avenue
Suite 3600
Chicago, Illinois 60603
Phone: (312) 404-3760
patrick.ahern@ahernandassociatespc.com

*Attorney for Winn-Dixie Stores, Inc. and Bi-Lo Holdings, LLC*

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on August 6, 2018, I served the foregoing by email on counsel of record for all defendants.


_/s/ Patrick J. Ahern_
Patrick J. Ahern

## UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF FLORIDA

| | |
|---|---|
| Winn-Dixie Stores, Inc., et al., | ) |
|              Plaintiffs | )   Case No. 3:15-cv-1143 |
| | ) |
| v. | ) |
| | ) |
| Southeast Milk Inc., et al. | ) |
|              Defendants | ) |
| | ) |
| | ) |
| | ) |

## <u>VERIFICATION</u>

On behalf of Winn-Dixie Stores, Inc., and Bi-Lo Holding LLC, in my capacity as Vice President, Strategic Sourcing, for Southeastern Grocers, LLC, I have read and am familiar with the answers provided in the forgoing PLAINTIFF'S THIRD AMENDED RESPONSE TO DEFENDANT DFA'S FIRST SET OF INTERROGATORIES. The answers were prepared with the assistance of counsel, and are based on records and information currently available, as well as information produced by Defendants in this litigation, and depositions taken in this litigation, declarations provided by former employees and depositions of Defendants' corporate representatives in the Edwards action. To the extent that I do not have personal knowledge, I have relied on others, including outside counsel, to gather the responsive information. Subject to the foregoing, I declare under penalty of perjury that the answers provided are true and correct to the best of my knowledge, information and belief.

_____
Graham Leary

Sworn to and subscribed
before me this 6th day of
August, 2018

_____
Notary Public

My Commission Expires:

_____
4/6/19

> JODY ANDERSON
> Commission # FF 217639
> Expires April 6, 2019
> Bonded Thru Troy Fain Insurance 800-385-7019

1