UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

WINN-DIXIE STORES, INC.,

    Plaintiff,

v.                                        Case No. 3:15-cv-1143-J-39PDB

SOUTHEAST MILK, INC., NATIONAL
MILK PRODUCERS FEDERATION,
DAIRY FARMERS OF AMERICA, INC.,
LAND O'LAKES, INC., DAIRYLEA
COOPERATIVE INC., and AGRI-MARK,
INC.,

    Defendants.
_____/

## ORDER

**THIS CAUSE** is before the Court on Defendants' Renewed Motion and Supporting Memorandum for Summary Judgment on Standing (Doc. 242; Motion) and Plaintiff's Response in Opposition (Doc. 247; Opposition).

On August 31, 2016, Plaintiff Winn-Dixie Stores, Inc. ("Plaintiff" or "Winn-Dixie") filed the Amended Complaint and Demand for Jury Trial (Doc. 56; Amended Complaint) against Defendants Southeast Milk, Inc. ("SMI"), National Milk Producers Federation ("NMPF"), Cooperatives Working Together ("CWT"), Dairy Farmers of America, Inc. ("DFA"), Land O'Lakes, Inc. ("LOL"), Dairylea Cooperative Inc. ("DCI"), and Agri-Mark, Inc. ("AMI") (collectively "Defendants"). Am. Compl. ¶¶ 24-30. The action involves alleged violations of Section 1 of the Sherman Act, 15 U.S.C. § 1 et seq., which provides in part that "[e]very contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce among the several States, or with foreign nations, is

declared to be illegal." See id. ¶¶ 126-31 (citing 15 U.S.C. § 1). The action involves Plaintiff's purchases of raw milk, processed or fluid milk, and other fresh milk products at allegedly higher prices as a result of Defendants' conduct in violation of antitrust laws. See id. ¶ 22.

By Order dated January 16, 2019 (Doc. 234; Order), the Court granted in part and denied in part Defendants' Motion and Supporting Memorandum for Summary Judgment on Statute of Limitations and Standing (Doc. 187; First Motion). The Court granted the First Motion to the extent that fraudulent concealment did not toll Plaintiff's claims and that class action tolling did not apply to Plaintiff's claims with the limited exception provided in the Order based on purchases of fresh dairy products from Defendants DFA, LOL, and AMI on or after May 22, 2009. See Order ¶¶ 1(a), (b). The Court denied the First Motion as to the issue of the Statute of Limitations and standing. See id. ¶¶ 1(c), (d). The Court permitted Defendants to file a renewed motion on the issue of standing, which is the subject of the Motion. See id. ¶ 1(d), n.18. On March 4, 2019, the Court denied Plaintiff's Motion for Reconsideration of the Order (Doc. 248; Reconsideration Order).

## I. Standard of Law

Under Rule 56 of the Federal Rules of Civil Procedure, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P 56(a). The record to be considered on a motion for summary judgment may include "depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56(c)(1)(A). An issue is genuine when the

evidence is such that a reasonable jury could return a verdict in favor of the non-movant. See Mize v. Jefferson City Bd. of Educ., 93 F.3d 739, 742 (11th Cir. 1996) (quoting Hairston v. Gainesville Sun Publ'g Co., 9 F.3d 913, 919 (11th Cir. 1993)). "[A] mere scintilla of evidence in support of the non-moving party's position is insufficient to defeat a motion for summary judgment." Kesinger ex rel. Estate of Kesinger v. Herrington, 381 F.3d 1243, 1247 (11th Cir. 2004) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986)).

The party seeking summary judgment bears the initial burden of demonstrating to the Court, by reference to the record, that there are no genuine issues of material fact to be determined at trial. See Clark v. Coats & Clark, Inc., 929 F.2d 604, 608 (11th Cir. 1991). "When a moving party has discharged its burden, the non-moving party must then go beyond the pleadings, and by its own affidavits, or by depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." Jeffery v. Sarasota White Sox, Inc., 64 F.3d 590, 593-94 (11th Cir. 1995) (internal citations and quotation marks omitted). Substantive law determines the materiality of facts, and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson, 477 U.S. at 248. In determining whether summary judgment is appropriate, a court "must view all evidence and make all reasonable inferences in favor of the party opposing summary judgment." Hayes v. City of Miami, 52 F.3d 918, 921 (11th Cir. 1995) (citing Dibrell Bros. Int'l, S.A. v. Banca Nazionale Del Lavoro, 38 F.3d 1571, 1578 (11th Cir. 1994)).

## II.   Factual Background[1]

Between 2003 and 2010, the Cooperative Working Together program conducted ten herd retirements through the Herd Retirement Program ("HRP"). See (Doc. 189 ¶ 18; Declaration of Jerome Kozak).[2] The HRP did not have the desired effects. See id. ¶ 19. As a result, the last herd retirement was completed in September 2010 and the HRP discontinued that same year. See id. Plaintiff commenced this action on September 23, 2015 – five years after the last herd was retired under the HRP. (Doc. 1). Even though the last herd retirement occurred in September 2010, Plaintiff provided evidence that the alleged violations were continuing in nature. See Order at 6-12. The determination of when the Statute of Limitations began in light of the continuing nature of the alleged violations will be left for the jury to decide. Id. at 10.

On April 30, 2008, Winn-Dixie sold two of its dairy processing plants to Sunshine State Dairy Farms, LLC ("Sunshine"). (Doc. 243-4 at 2 ¶ B; Agreement); (Doc. 243-7 at 2; Amended Agreement). One dairy processing plant is in Hammond, Louisiana and the other in Plant City, Florida. See Agreement at 2 ¶ B. Pursuant to the Agreement, Winn-Dixie agreed to "sell, transfer, assign and deliver the Assets to Sunshine" and Sunshine agreed to "purchase, acquire and accept the Assets" from Winn-Dixie. See Agreement at 2 § 2.01. Assets are defined in the Agreement as follows:

> [A]ll of the assets, properties and rights of Seller (including all assignable guarantees, warranties, indemnities and similar rights of Seller with respect to any of the Assets), of every type and description, real, personal and mixed, directly relating to the Dairy Plants, including the Owned Real Estate,

---

[1] The Court adopts the undisputed facts as explained in the Order and will not reiterate all of them here. See Order at 3-6. The Court focuses this Order on the issue of standing while applying the standard of law on summary judgment.

[2] Mr. Kozak is the former President and Chief Executive Officer of NMPF. Kozak Decl. ¶ 2.

the Subleased Real Estate, the Inventories (other than finished product Inventories to be removed from the Dairy Plants by Seller for relocation to other locations of Seller), the Equipment, the Supplies, the General Property, the Intellectual Property (other than Intellectual Property comprising or related to the Excluded Assets), the Assumed Contracts, and other fixed or tangible assets known or unknown, fixed or unfixed, choate or inchoate, accrued, absolute, contingent or otherwise, wherever located and whether or not reflected on the books and records of the Seller, excluding only the Excluded Assets.

Id. at 47, Schedule A. Excluded Assets are defined in the Agreement as follows:

[A]ny equipment (all of which is described on **Schedule J** hereto) leased under a lease that is not an Assumed Contract or otherwise not owned or leased by Seller or its Affiliates, the equipment listed on **Schedule J** hereto, any non-assignable and non-transferrable Contracts and Permits, over-the-road motor vehicles, any computer software subject to a license that restricts its transfer or that resides on equipment comprising Excluded Assets, accounts receivable, all finished product Inventories to be removed by Seller at or prior to Closing, any of the Inventories excluded pursuant to the procedure set forth on **Schedule F** hereto, cash and cash equivalents and trademarks, trade names, logos or designs of Seller or its Affiliates, Records not customarily located at the Dairy Plants, all milk cases containing any Winn-Dixie trade name, and all Intellectual Property relating to any of the foregoing.

Id. at 48-49, Schedule A. The Amended Agreement added the following exclusion to the Excluded Assets definition: "Excluded Assets will also include any asset that is not included in the 'Lessee's Equipment and Personalty' as such term is fined in the Lease." Amended Agreement at 12 ¶ 21. On May 1, 2013, Winn-Dixie began purchasing raw milk, processed or fluid milk, or fresh milk product produced by Defendants through C&S Wholesale Grocers, Inc. ("C&S").

### III.   Discussion

"Standing 'is the threshold question in every federal case, determining the power of the court to entertain the suit.'" CAMP Legal Def. Fund, Inc. v. City of Atlanta, 451 F.3d 1257, 1269 (11th Cir. 2006) (quoting Warth v. Seldin, 422 U.S. 490, 499 (1975)). To

establish Article III standing, three elements must be present. See Duty Free Americas, Inc. v. Estee Lauder Companies, Inc., 797 F.3d 1248, 1271 (11th Cir. 2015). "'First, the plaintiff must have suffered an "injury in fact"—an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical.'" Id. (quoting Lujan v. Defs. of Wildlife, 504 U.S. 555, 560 (1992)). Next, "the plaintiff must establish a causal connection between its injury and the defendant's conduct." Id. (citing Lujan, 504 U.S. at 560). "Third, the plaintiff must show that it is likely—and not merely speculative—that a favorable decision by the court will redress the injury." Id. (citing Lujan, 504 U.S. at 561). "The party invoking federal jurisdiction bears the burden of establishing these elements." Lujan, 504 U.S. at 561.

In antitrust actions, "a party must do more than meet the basic 'case or controversy' requirement that would satisfy constitutional standing; instead, the party must show that it satisfies a number of 'prudential considerations aimed at preserving the effective enforcement of the antitrust laws.'" Palmyra Park Hosp. Inc. v. Phoebe Putney Mem'l Hosp., 604 F.3d 1291, 1299 (11th Cir. 2010) (quoting Todorov v. DCH Healthcare Auth., 921 F.2d 1438, 1448 (11th Cir. 1991)). To determine standing in an antitrust action, the Court's analysis "is aimed at determining whether the plaintiff's injuries are merely indirect, secondary, or remote" and the "purpose is to ensure against potentially disastrous recoveries by those only tenuously harmed." Constr. Aggregate Transp., Inc. v. Fla. Rock Indus., Inc., 710 F.2d 752, 764 (11th Cir. 1983) (internal citations omitted).

The Eleventh Circuit employs the following two-part test to determine antitrust standing: "first, the plaintiff must have alleged an antitrust injury, and second, the plaintiff must be an efficient enforcer of the antitrust laws." Palmyra, 604 F.3d at 1299. "Antitrust

injury is defined as 'injury of the type the antitrust laws were intended to prevent and that flows from that which makes the defendants' acts unlawful.'" Mun. Utilities Bd. of Albertville v. Alabama Power Co., 934 F.2d 1493, 1499 (11th Cir. 1991) (quoting Todorov, 921 F.2d at 1449). Whether a plaintiff is an efficient enforcer of the antitrust laws depends on a variety of factors including the following:

> the directness or indirectness of the injury, the remoteness of the injury, whether other potential plaintiffs were better suited to vindicate the harm, whether the damages were highly speculative, the extent to which the apportionment of damages was highly complex and would risk duplicative recoveries, and whether the plaintiff would be able to efficiently and effectively enforce the judgment.

Palmyra, 604 F.3d at 1299 (citing Todorov, 921 F.2d at 1451-52). These factors are not exhaustive and depending on the case "other factors not identified by the Supreme Court might be relevant . . . ." Palmyra, 604 F.3d at 1299 (citing Todorov, 921 F.2d at 1452). The factors are generally "intertwined, and no single factor will necessarily predominate over the others." Palmyra, 604 F.3d at 1299 (internal citation omitted).

Defendants argue that Plaintiff lacks standing on two grounds: (1) claims based on raw milk purchases that Plaintiff purchased at its former plants because Plaintiff assigned those claims to Sunshine in 2008; and (2) claims based on indirect purchases through C&S. See Motion at 2-3. The Court will consider each argument in turn.

### a. Assignment

Defendants maintain that the first argument is now moot in light of the Order holding that the Statute of Limitations was not tolled by fraudulent concealment or class action tolling with a limited exception for fresh dairy products. See id. at 5. Even if the first argument is not moot, Defendants argue that Plaintiff lacks standing because the legal

claims are not part of the Excluded Assets in the Agreement or the Amended Agreement and thus must be assigned to Sunshine. See id. at 6-11.

In its Opposition, Plaintiff argues in support of its Motion for Reconsideration of the Order (Doc. 239), which was pending at the time but has since been denied by the Court (Doc. 248). See Opp. at 11-16. Plaintiff argues that the Agreement and Amended Agreement do not purport to assign the claims in the instant case to Sunshine. See Opp. at 7-10. Plaintiff maintains that the Agreement reveals that there is no language purporting to be an express assignment of any antitrust claim, no language referring to "all causes of action and claims," and language relating to "Assets," "Excluded Assets," do not support an interpretation that the Agreement transferred any antitrust claim. See id. at 7 (citing Gulfstream III Assocs., Inc. v. Gulfstream Aerospace Corp., 995 F.2d 425, 437-39 (3d Cir. 1993) (Greenberg, J., filing the opinion in as to Part IIA.1.c. and concurring in the balance of the opinion); Lerman v. Joyce Int'l, Inc., 10 F.3d 106, 112 (3d Cir. 1993)).

In Gulfstream, the Third Circuit Court held that "[b]ecause we conclude that the inclusion of antitrust claims in a general assignment would be disfavored under the direct purchaser rule, we hold that only an express assignment of an antitrust claim can be valid." 995 F.2d at 438-39; see also BUC Int'l Corp. v. Int'l Yacht Council Ltd., 517 F.3d 1271, 1278 n.7 (11th Cir. 2008) (following Gulfstream in a copyright infringement case involving the application of the one-satisfaction rule to federal claims); In re Prudential of Fla. Leasing, Inc., 478 F.3d 1291, 1302 (11th Cir. 2007) (citing Gulfstream in a bankruptcy matter regarding issues of settlements involving multiple claims and parties); In re: Domestic Drywall Antitrust Litig., 322 F.R.D. 188, 198 (E.D. Pa. 2017) ("In order to be effective, the assignment must expressly relate to antitrust claims; a general assignment

is insufficient." (citing Gulfstream, 995 F.2d at 437-39)); Texas Life, Acc. Health & Hosp. Serv. Ins. Guar. Ass'n v. Gaylord Entm't Co., 105 F.3d 210, 218 (5th Cir. 1997) ("[O]nly an express and knowing assignment of an ERISA fiduciary breach claim is valid." (citing Gulfstream, 995 F.2d at 439)).

Here, none of the Assets or Excluded Assets include an antitrust claim. See generally Agreement at 3 § 2.01, 47-49 Schedule A; Amended Agreement at 12 ¶ 21. Absent some express language to the effect that Plaintiff was selling its dairy processing plants' antitrust claims or, at the very least, the plants' causes of action, the record does not establish that as a matter of law there was an assignment from Plaintiff to Sunshine. The Motion is therefore due to be denied as to the first issue on standing relating to raw milk purchases and the assignment to Sunshine.

### b. Indirect Purchases

Regarding the second standing argument, Defendants contend that Plaintiff lacks standing to recover damages on purchases that it made indirectly through C&S. See Motion at 11-16. "Under the direct purchaser rule, only the customer who purchased the goods or services at issue directly from the alleged antitrust violator can recover damages." Lakeland Reg'l Med. Ctr., Inc. v. Astellas US, LLC, 763 F.3d 1280, 1285 (11th Cir. 2014) (citing Illinois Brick Co. v. Illinois, 431 U.S. 720, 736 (1977)). The reasoning behind the rule is threefold:

> 1) eliminates the complications of apportioning overcharges between direct and indirect purchasers, 2) eliminates the possibility that direct and indirect purchasers could seek duplicative recoveries against the antitrust violator, and 3) best promotes the vigorous enforcement of the antitrust laws by permitting only the best-situated purchaser to sue for damages . . . .

Lakeland, 763 F.3d at 1285 (internal quotations, alterations, and citations omitted); see also In re Disposable Contact Lens Antitrust, 329 F.R.D. 336, 400 (M.D. Fla. 2018) (Schlesinger, J.) (discussing the listed reasons behind the direct purchaser rule); Kansas v. UtiliCorp United, Inc., 497 U.S. 199, 208-17 (1990) (same). There are limited exceptions to the direct purchaser rule, "which provide for indirect purchaser standing 'where there is a preexisting cost-plus contract or where the direct purchaser is owned or controlled by its customer.'" In re Disposable Contact Lens Antitrust, 329 F.R.D. at 400 (quoting Glynn-Brunswick Hosp. Auth. v. Becton, 159 F. Supp. 3d 1361, 1370 (S.D. Ga. 2016)); see also Lowell v. Am. Cyanamid Co., 177 F.3d 1228, 1229, n.2 (11th Cir. 1999) (listing the two exceptions and relying on Illinois Brick, 431 U.S. at 735-36, n.16). The Eleventh Circuit also recognizes an additional exception for co-conspirators in "a single vertical conspiracy where the plaintiff has purchased directly from a conspiring party in the chain of distribution." Lowell, 177 F.3d at 1232; see also In re Disposable Contact Lens Antitrust, 329 F.R.D. at 400 ("'[F]or the indirect purchaser to merit standing under this exception, the conspiracy must fix the price paid by the plaintiffs.'" (quoting In re ATM Fee Antitrust Litig., 686 F.3d 741, 749 (9th Cir. 2012)).

Defendants argue that Plaintiff lacks standing for purchases made through C&S beginning on May 1, 2013. See Motion at 11-13; see also (Doc. 243-6 at 8 ¶ 21 (identifying May 1, 2013, as the date on which Plaintiff began purchasing Defendants' milk products through C&S). Like its prior briefing (Doc. 208) in opposition to the First Motion, Plaintiff does not provide a response to Defendants' second standing argument and the Court will not make arguments on Plaintiff's behalf. See generally Opp. at 2-16 (opposing

Defendants' first standing argument and omitting argument involving indirect purchases from C&S).

In the Amended Complaint, Plaintiff identifies the relevant purchasing period between 2003 through 2013. See Am. Compl. ¶¶ 18, 111, 124, 125. During the relevant time period, Plaintiff pleads that it was the direct purchaser of raw milk, processed or fluid milk, and other fresh milk products. See id. ¶¶ 15, 96, 102, 125. However, Plaintiff and C&S entered into a Supply Agreement (Doc. 243-13), effective May 10, 2013, for the exclusive purchases by Plaintiff from C&S for a variety of product categories, including dairy products. See Supply Agreement at 2 ¶ 1.[3] On August 6, 2018, Plaintiff answered Defendant AMI's interrogatory request that May 1, 2013 was the date on which Plaintiff began purchasing raw milk, processed or fluid milk, or fresh milk dairy produced by Defendants through C&S. (Doc. 243-6 at 8 ¶ 21).

Moreover, there is no evidence to support that any of the limited exceptions to the direct purchaser rule apply to Plaintiff's purchases through C&S. See generally Motion at 13-16 (discussing each exception). On this record, there is no evidence that the Supply Agreement between Plaintiff and C&S is a pre-existing cost-plus contract wherein Plaintiff as the purchaser was insulated from any decrease in its sales as a result of attempting to

---

[3] The Supply Agreement provides in relevant part that

> [Plaintiff] shall purchase exclusively from C&S, and C&S shall procure and sell to [Plaintiff], for resale in the [Plaintiff's] Stores . . . all merchandise in the following categories, except as specifically set forth in Section 1.2: grocery, bakery, GM/HBC, candy, spices, meat, deli, seafood, produce, floral, **dairy**, frozen (mainline), frozen bakery, ice cream, frozen meat, frozen seafood, ice, tobacco, and certain other merchandise in the product categories carried by C&S . . . for use and resale for all BWD store locations . . . .

Supply Agreement at 2 ¶ 1 (emphasis added).

pass on the overcharge because Plaintiff's customer was committed to buying a fixed quantity regardless of price. See generally Supply Agreement; see also Illinois Brick, 431 U.S. at 736 (defining a pre-existing cost-plus contract); Hanover Shoe, Inc. v. United Shoe Mach. Corp., 392 U.S. 481, 494 (1968) (identifying the cost-plus contract exception to the direct purchaser rule). Moreover, there is no evidence to support that Plaintiff owned or controlled C&S, that C&S was a co-conspirator, or that C&S assigned its antitrust claims to Plaintiff. The Court finds that the Motion is due to be granted as to the second standing issue regarding Plaintiff's indirect purchases from C&S.

Accordingly, after due consideration, it is

**ORDERED:**

Defendants' Renewed Motion and Supporting Memorandum for Summary Judgment on Standing (Doc. 242) is **GRANTED in part** and **DENIED in part** as follows:

1. The Motion (Doc. 242) is **GRANTED** to the extent that Plaintiff lacks standing for its indirect purchases made through C&S Wholesale Grocers, Inc. on or after **May 1, 2013**.

2. The Motion (Doc. 242) is **DENIED** as to the issue of Plaintiff's assignment of its raw milk purchases to Sunshine State Dairy Farms, LLC.

**DONE** and **ORDERED** in Jacksonville, Florida this 18th day of April, 2019.

_____
BRIAN J. DAVIS
United States District Judge

5
Copies furnished to:

Counsel of Record