# EXHIBIT 32

Case4:11-cv-04766-JSW Document123 Filed10/30/12 Page1 of 11

United States District Court
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

MATTHEW EDWARDS, et al.,

Plaintiffs,

v.

NATIONAL MILK PRODUCERS FEDERATION, aka COOPERATIVES WORKING TOGETHER, et al.,

Defendants.
_______________________________________/

No. C 11-04766 JSW

**ORDER REGARDING MOTION TO DISMISS CONSOLIDATED AMENDED COMPLAINT**

Now before the Court is the motion to dismiss filed by Defendants. The Court finds that this matter is appropriate for disposition without oral argument and is deemed submitted. *See* N.D. Cal. Civ. L.R. 7-1(b). Accordingly, the hearing set for November 2, 2012 is hereby VACATED. Having carefully reviewed the parties' papers, considered their arguments and the relevant legal authority, the Court hereby denies Defendants' motion to dismiss.[1]

**BACKGROUND**

Defendants are moving to dismiss Plaintiffs' complaint on the grounds that this Court lacks jurisdiction to adjudicate this matter. Defendants are also moving to dismiss Plaintiffs' claims on the grounds that they fail to state a claim. The Court will address additional facts as necessary in the remainder of this Order.

///

///

///

[1] The Court GRANTS Defendants' request for judicial notice. *See* Fed. R. Evid. 201.

## ANALYSIS

### A. Applicable Legal Standards.

Respondents move to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1), for lack of subject matter jurisdiction, and Rule 12(b)(6), for failure to state a claim. When a defendant moves to dismiss a complaint or claim for lack of subject matter jurisdiction the plaintiff bears the burden of proving that the court has jurisdiction to decide the claim. *Thornhill Publ'n Co. v. Gen. Tel. & Elecs. Corp.*, 594 F.2d 730, 733 (9th Cir. 1979). A motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1) may be "facial or factual." *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004).

A facial attack on the jurisdiction occurs when factual allegations of the complaint are taken as true. *Fed'n of African Am. Contractors v. City of Oakland*, 96 F.3d 1204, 1207 (9th Cir. 1996). The plaintiff is then entitled to have those facts construed in the light most favorable to him or her. *Id.* A factual attack on subject matter jurisdiction occurs when defendants challenge the actual lack of jurisdiction with affidavits or other evidence. *Thornhill*, 594 F.2d at 733. In a factual attack, plaintiff is not entitled to any presumptions or truthfulness with respect to the allegations in the complaint, and instead must present evidence to establish subject matter jurisdiction. *Id.*

A motion to dismiss is proper under Rule 12(b)(6) where the pleadings fail to state a claim upon which relief can be granted. The Court construes the allegations in the complaint in the light most favorable to the non-moving party and all material allegations in the complaint are taken to be true. *Sanders v. Kennedy*, 794 F.2d 478, 481 (9th Cir. 1986). However, even under the liberal pleading standard of Rule 8(a)(2), "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).

Pursuant to *Twombly*, a plaintiff must not merely allege conduct that is conceivable but must instead allege "enough facts to state a claim to relief that is plausible on its face." *Id.* at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the

United States District Court
For the Northern District of California

court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S.662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully.... When a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Id.* (quoting *Twombly*, 550 U.S. at 557) (internal quotation marks omitted). If the allegations are insufficient to state a claim, a court should grant leave to amend, unless amendment would be futile. *See, e.g., Reddy v. Litton Indus., Inc.*, 912 F.2d 291, 296 (9th Cir. 1990); *Cook, Perkiss & Liehe, Inc. v. N. Cal. Collection Serv., Inc.*, 911 F.2d 242, 246-47 (9th Cir. 1990).

**B. Defendants' Motion.**

**1. Whether the Secretary of Agriculture has Exclusive or Primary Jurisdiction.**

Section 1 of the Capper-Volstead Act provides agricultural cooperatives with a limited exception to liability for antitrust violations under the Sherman Act.[2] Section 2 provides for procedures by which the Secretary of the United States Department of Agriculture ("Secretary") may act if he or she has reason to believe that any such association described in Section 1

---

[2] Section 1 provides:

> Persons engaged in the production of agricultural products as farmers, planters, ranchmen, dairymen, nut or fruit growers may act together in associations, corporate or otherwise, with or without capital stock, in collectively processing, preparing for market, handling, and marketing in interstate and foreign commerce, such products of persons so engaged. Such associations may have marketing agencies in common; and such associations and their members may make the necessary contracts and agreements to effect such purposes: *Provided, however*, That such associations are operated for the mutual benefit of the members thereof, as such producers, and conform to one or both of the following requirements:
> First. That no member of the association is allowed more than one vote because of the amount of stock or membership capital he may own therein, or,
> Second. That the association does not pay dividends on stock or membership capital in excess of 8 per centum per annum.
> And in any case to the following:
> Third. That the association shall not deal in the products of nonmembers to an amount greater in value than such as are handled by it for members.

7 U.S.C. § 291 (emphasis in original).

Case4:11-cv-04766-JSW Document123 Filed10/30/12 Page4 of 11

monopolizes or restrains trade "to such an extent that the price of any agricultural product is unduly enhanced." *See* 7 U.S.C. § 292.

Defendants argue that Section 2 of this statute vests exclusive jurisdiction to the Secretary to determine whether the conduct by those engaged in milk production or marketing is covered by the exemption from antitrust liability provided by Section 1. In support of this argument, Defendants rely upon the language of the Capper-Volstead Act and the fact that the price of raw milk is subject to comprehensive regulation and controls administered by the Secretary pursuant to the Agricultural Marketing Agreement Act of 1937 ("AMAA"), 7 U.S.C. §§ 601, *et seq*., and the Agricultural Marketing Act of 1929, 12 U.S.C. § 1141, *et seq*.

However, the Supreme Court has expressly considered and rejected this argument. *See United States v. Borden*, 308 U.S. 188, 204-206 (1939). In *Borden*, the lower court:

> deduced from the Capper-Volstead Act that the [Secretary] has exclusive jurisdiction to determine and order, in the first instance, whether or not farmer cooperatives, in their operation, monopolize and restrain interstate trade and commerce "to such an extent that the price of any agricultural product is unduly enhanced." Until the [Secretary] acts, the judicial power cannot be invoked.

*Id*. at 203-204. Supreme Court conclusively rejected this proposition. *Id*. at 204 ("We are unable to accept this view."). The Court explained that it found no ground for saying that the "limited procedure" set forth in Section 2 of the Capper-Volstead Act was "a substitute for the provisions of the Sherman Act, or has the result of permitting the sort of combinations and conspiracies here charged unless the [Secretary] takes action. ... Section two of the Capper-Volstead Act contains no provision giving immunity from the Sherman Act in the absence of a proceeding by the Secretary." *Id* at 206. The Court further explained that "the procedure under Section two of the Capper-Volstead Act is auxiliary... ." *Id*. Section two "is not to be deemed to be designed to take the place of, or to postpone or prevent, prosecution under Section one of the Sherman Act... ." *Id*.

More than twenty years later, the Supreme Court again considered and soundly rejected the argument that the procedure under Section 2 of the Capper-Volstead Act provides the Secretary with exclusive or primary jurisdiction over any prosecutions under the Sherman Act. *See Maryland & Virginia Milk Producers Ass'n v. United States*, 362 U.S. 458, 462-63 (1960).



United States District Court
For the Northern District of California

In *Maryland & Virginia*, the defendant argued that Section 2 "was intended to give the Secretary primary jurisdiction, and thereby exclude any prosecutions under the Sherman Act." . *Id*. at 462-63. The Court stated that it had "unequivocally rejected the same contention in [*Borden*] ..." and that it again adhered to the reasoning and holding of *Borden* on this point. *Id*. at 463; *see also Dairymen, Inc. v. Federal Trade Comm'n.*, 684 F.2d 376, 379 (6th Cir. 1982) ("It is clear ... that the Secretary's jurisdiction is not exclusive.") (citing *Borden*, 308 U.S. at 205-206 and *Maryland & Virginia*, 362 U.S. at 462-63). Notably, the Court did not use any limiting language, indicating that the rejection of primary or exclusive jurisdiction was limited to the factual circumstances presented in *Borden* or in *Maryland & Virginia*. *Id*. at 463. The Court's rejection of Defendants' proposition was clear and unequivocal. *Id*. Therefore, there are no grounds upon which this Court may limit the Supreme Court's holdings in *Borden* and *Maryland & Virginia*.[3] Accordingly, the Court finds that it has jurisdiction to consider Plaintiffs' antitrust claim.

**2. Whether "Referal" to the Secretary Under the Primary Jurisdiction Doctrine is Appropriate.**

Defendants also move, in the alternative, to have this Court "refer" this matter to the Secretary pursuant to the primary jurisdiction doctrine. Under this doctrine, courts may exercise discretion to stay an action pending "referral" of the issues to an administrative body. *Chabner v. United Omaha Life Ins. Co.*, 225 F.3d 1042, 1051 (9th Cir. 2000). Although courts use the word "referral" to explain the primary jurisdiction doctrine, this word "is perhaps not the most accurate term to describe this process, as most statutes do not authorize courts to *require* an agency to issue a ruling. ... Rather, the court merely stays or dismisses proceedings

[3] Because the Court finds that the Supreme Court's rejection of the proposition that the Secretary has exclusive or primary jurisdiction is not limited to the factual circumstances raised in *Borden* and in *Maryland & Virginia*, the Court need not evaluate at this time whether Plaintiffs have sufficiently alleged predatory conduct, whether the cooperatives were operated for the mutual benefit of its members, or whether supply restraints are included in the exemption provided by Section 1 of the Capper-Volstead Act. As Defendants clarify in their reply, they are not seeking a ruling from this Court regarding whether their alleged conduct is immune from antitrust liability pursuant to Section 1 of the Capper-Volstead Act. (Reply at 1.)



United States District Court
For the Northern District of California

United States District Court
For the Northern District of California

to allow the plaintiff to pursue administrative remedies." *Clark v. Time Warner Cable*, 523 F.3d 1110, 1115 n. 9 (9th Cir. 2008) (internal citation omitted) (emphasis in original).

This doctrine is applicable "when a claim is originally cognizable in the courts, but is also subject to a regulatory scheme that is enforced by an administrative body of special competence." *Chabner*, 225 F.3d at 1051. "[N]o rigid formula exists for applying the primary jurisdiction doctrine." *Id.* A court may consider: "1) whether application will enhance court decision-making and efficiency by allowing the court to take advantage of administrative expertise; and 2) whether application will help assure uniform application of regulatory laws." *Id.*

However, as noted above, most statutes do not authorize a court to require an agency to issue a ruling. Defendants do not point to any statute or regulation that provides for such authority here. Moreover, Defendants have not shown that there is a provision whereby Plaintiffs could request action by the Secretary. Accordingly, if the Court stayed or dismissed these proceedings to allow Plaintiffs to pursue administrative remedies, it is not clear that there is any avenue to ensure that the Secretary would actually address the jurisdictional issue.

Even more importantly, *Borden* and *Maryland & Virginia* preclude this Court from "referring" this matter to the Secretary. The Supreme Court has already determined that the Secretary does not have primary or exclusive jurisdiction. *See Borden*, 308 U.S. at 204-206; *Maryland & Virginia*, 362 U.S. at 462-63. In light of the Supreme Court's holdings in *Borden* and *Maryland & Virginia*, there is no basis for this Court to defer jurisdiction to the Secretary over Plaintiffs' claims.[4] The Court thus denies Defendants' motion on this ground.

---

[4] In a footnote, Defendants argue that the Supreme Court's holdings in *Credit Suisse Securities (USA) LLC v. Billing*, 551 U.S. 264 (2007) and *Verizon Communications, Inc. v. Law Offices of Curtis V. Trinko, LLP*, 540 U.S. 398 (2004) "underscore" the point that the Court should refer this matter to the Secretary to make an initial jurisdictional determination. However, *Credit Suisse* and *Verizon* are inapplicable and do not support a finding that the Court should defer ruling pursuant to the primary jurisdiction doctrine. In *Credit Suisse*, the question before the Supreme Court was whether there was a "plain repugnancy" between the plaintiffs' antitrust claims and the federal securities law. *Id.*, 551 U.S. at 267. The Court explained that an implied repeal of the antitrust laws could be found where there is a plain repugnancy between the antitrust law and regulatory provisions. *Id.* at 271 (citing *Gordon v. New York Stock Exchange, Inc.*, 422 U.S. 659, 682 (1975). In determining whether there is a "clear repugnancy" between the securities law and the antitrust complaint, the Supreme

**3. Whether the Filed-Rate Doctrine Applies.**

Defendants contend that Plaintiffs' claims are barred by the filed-rate doctrine. "The [filed-rate] doctrine is a judicial creation that arises from decisions interpreting federal statutes that give federal agencies exclusive jurisdiction to set rates for specified utilities, originally through rate-setting procedures involving the filing of rates with the agencies." *E. & J. Gallo Winery v. Encana Corp.*, 503 F.3d 1027, 1033 (9th Cir. 2007). "At its most basic, the filed rate doctrine provides that state law, and some federal law (e.g. antitrust law), may not be used to invalidate a filed rate nor to assume a rate would be charged other than the rate adopted by the federal agency in question." *Wah Chang v. Duke Energy Trading & Mktg., LLC*, 507 F.3d 1222, 1225 (9th Cir. 2007) (quoting *Transmission Agency v. Sierra Pac. Power Co.*, 295 F.3d 918, 929-30 (9th Cir. 2002)); *see also Wegoland Ltd. v. NYNEX Corp.*, 27 F.3d 17, 18 (2d Cir. 1994) ("Stated simply, [the filed rate] doctrine holds that any 'filed rate' – that is, one approved by the governing regulatory agency – is per se reasonable and unassailable in judicial proceedings brought by ratepayers.").

The Ninth Circuit recently held that the filed rate doctrine applies to, and thus bars, Farm Milk Marketing Orders ("FMMO") price-related claims. *See Carlin v. DairyAmerica, Inc.*, 688 F.3d 1117, 1140 (9th Cir. 2012). Pursuant to the AMAA, the United States Department of Agriculture ("USDA") issues FMMOs which set the minimum price which may be charged for raw milk. *Id.* at 1120. The Ninth Circuit reasoned that the filed rate doctrine should apply because "milk pricing is the subject of extensive federal statutory and regulatory control[,]" the USDA sets minimum prices for raw milk from which there can be no downward

---

Court has "treated the following factors as critical: (1) the existence of regulatory authority under the securities law to supervise the activities in question; (2) evidence that the responsible regulatory entities exercise that authority; and (3) a resulting risk that the securities and antitrust laws, if both applicable, would produce conflicting guidance, requirements, duties, privileges, or standards of conduct." *Id.* at 275-76. The Court further noted that it also considers whether "the possible conflict affected practices that lie squarely within an area of financial market activity that the securities law seeks to regulate." *Id.* at 276; *see also id.* at 285. Defendants have not demonstrated, and do not even argue, that there is a clear or plain repugnancy between any law and Plaintiffs' antitrust claims based upon these factors. In *Verizon*, the Supreme Court determined that an alleged breach by an incumbent telephone company under the Telecommunications Act of 1996 of its duty to share its network with its competitors did not state a monopoly or attempted monopoly claim under Section 2 of the Sherman Act. *Id.*, 540 U.S. at 401, 410-415. *Verizon* is inapposite.

United States District Court
For the Northern District of California

departure from the rate, and the "underlying justifications for the filed rate doctrine apply to FMMO prices set under the AMAA." *Id*. at 1131. "In sum, the USDA did possess the authority and did exercise it to address problems as to the agency-set minimum prices for raw milk under the FMMOs, such that the filed rate doctrine is applicable in the present AMAA situation." *Id*. at 1134.

Nevertheless, the Ninth Circuit noted that, in contrast to the typical filed rate scenario, the rates set by FMMOs "consist of only *minimum* prices" from which the prices charged may be increased. *Id*. at 1130 (emphasis in original). The AMAA does not mandate a maximum price. Parties "can and do, negotiate premiums, known as 'over-order' prices, for the sale of milk." *Id*. at 1120 (quoting *Farmers Union Milk Mktg Coop. v. Yeutter*, 930 F.2d 466, 468-69 (6th Cir. 1991)).

Here, Plaintiffs allege that by manipulating the supply of raw milk through herd retirement, Defendants have suppressed price competition and thereby artificially raised prices. (CAC, ¶ 15.) As a result, "indirect purchasers of milk and fresh milk products have paid supracompetitive prices." (*Id*. at ¶ 124.) Plaintiffs further plead that the "over-order" price of milk is unregulated and determined solely by market forces; the allegedly inflated over-order prices charged by Defendants were never approved by the USDA. (*Id*. at ¶ 128.) Plaintiffs' claims are premised on the over-order prices of raw milk which resulted in higher wholesale and retail prices of milk and fresh milk products. They do not challenge the minimum prices set by the FMMOs. (*Id*. at ¶¶ 129, 130.)

Other courts who have examined whether the filed-rate doctrine bars claims related to over-order prices, as opposed to the regulated minium prices, have found that it does not. *See Ice Cream Liquidation, Inc. v. Land O'Lakes, Inc.*, 253 F. Supp. 2d 262, 275-76 (D.Conn. 2003); *In re Southeastern Milk Antitrust Litig.*, 2008 WL 2368212, *7-8 (E.D. Tenn. June 6, 2008). In *Ice Cream Liquidation*, the court found that the plaintiff was not challenging the minimum milk rates set by the USDA through the FMMOs. *Id*., 253 F. Supp. 2d at 275. Instead, the plaintiff challenged the "defendants' inflated whole-sale milk prices in excess of the minimum milk prices, which ... were never approved by the USDA." *Id*. at 276. The court

United States District Court
For the Northern District of California

reasoned that because the prices challenged by the plaintiff were never regulated or approved by the USDA, the filed rate doctrine was inapplicable. *Id*.

Similarly, in *Southeastern Milk*, the plaintiffs challenged the "elimination of competition and the fixing of over-order premiums[,]" not the minimum raw milk prices established by the USDA. *Id*., 2008 WL 2368212 at *7. The prices challenged were not regulated by the USDA. *Id*. As the court noted, "[a]lthough the AMAA has reduced competition in the milk industry significantly, market forces still play a substantial role in the prices actually paid to dairy farmers and cooperatives for the milk they produce. While Congress did authorize the [Secretary] to set certain minimum prices, Congress specifically left the determination of milk prices above this floor to market forces." *Id*. The plaintiffs alleged that the defendants "stifled competition and fixed prices to the extent they are determined by market forces." *Id*. Their claims centered around prices that "are neither regulated nor approved by the [USDA]." *Id*. Therefore, the court found that the plaintiffs' complaint did not require the court "to engage in judicial rate making and to substitute its judgment for that of the [USDA][,]" and thus determined that the filed rate doctrine was not implicated. *Id*., 2008 WL 2368212 at *8.

The Court finds the reasoning of *Ice Cream Liquidation* and *Southeastern Milk* persuasive. As discussed above, Plaintiffs are not challenging the minimum milk prices for raw milk set by the USDA. Instead, they contend that Defendants' practices limited competition and artificially inflated over-order prices. These over-order prices are not regulated or approved by the USDA. Defendants argue that the over-order prices are "regulated" by the USDA because the USDA publishes a report on the over-order prices. The Court is not convinced. Defendants have not demonstrated that merely reporting what prices are constitutes sufficient regulation to qualify for the filed rate doctrine.[5] Significantly, the USDA does not approve or

---

[5] Defendants also point to the fact that the Secretary is authorized, pursuant to Section 2 of the Capper-Volstead Act, to bring an action if he or she believes that agricultural prices have been "unduly enhanced." *See* 7 U.S.C. § 292. However, ability of the Secretary in certain circumstances to bring an action does not mean that the Secretary has actually set and approved of the over-order prices. If that were the case, the filed-rate doctrine would apply in every instance in which an agency has the ability to bring an action regarding prices charged. Defendants have not shown that the Secretary has exercised this procedure under the Capper-Volstead Act to effectively regulate and control the over-order prices to the

Case4:11-cv-04766-JSW Document123 Filed10/30/12 Page10 of 11

United States District Court
For the Northern District of California

authorize over-order prices. The FMMOs merely set the minimum raw milk prices. Accordingly, Defendants have not shown that Plaintiffs' complaint would require the court "to engage in judicial rate making and to substitute its judgment for that of the [USDA]." *Southeastern Milk*, 2008 WL 2368212 at *8. Therefore, the Court denies Defendants' motion to dismiss based on the filed-rate doctrine.

**4. Whether the Statutes of Limitations Bars Plaintiffs' Claims.**

Defendants argue that Plaintiffs' claims seek damages outside of the statute of limitations period and that tolling does not apply. According to Defendants, in light of the public announcements regarding the herd retirement program, a reasonably prudent person would have been on notice of a potentially actionable injury when the program was first implemented in 2003. (Mot. at 19.)

Plaintiffs allege that they were not aware of Defendants' anticompetitive conduct until shortly before September 2011. (CAC, ¶ 146.) In response to Defendants' motion, Plaintiffs argue that they should not have been expected to discover Defendants' conduct sooner. Defendants communicated with their own members. Consumers purchasing milk at their local supermarket would have no reason to review Cooperatives Working Together's website or read industry newsletters. (Opp. at 19.) The Court finds that the timing of when a reasonable plaintiff would have discovered Defendants' conduct is a factual question which may not be resolved on a motion to dismiss. Accordingly, the Court denies Defendants' motion to dismiss based on statute of limitations grounds.[6]

**CONCLUSION**

For the foregoing reasons, the Court DENIES Defendants' motion to dismiss. However, as the Court noted, to the extent Plaintiffs intend to rely on a theory of fraudulent concealment,

---

extent necessary to implicate the filed-rate doctrine.

[6] However, the Court does note that, to the extent Plaintiffs intend to rely on a theory of fraudulent concealment, Plaintiffs have not plead facts in support of such a theory with sufficient particularity. If Plaintiffs seek to pursue this legal theory, they should file an amended complaint by no later than November 15, 2012.

they have not pled sufficient supporting allegations. If Plaintiffs seek to pursue this legal theory, they should file an amended complaint by no later than November 15, 2012.

**IT IS SO ORDERED.**

Dated: October 30, 2012



JEFFREY S. WHITE
UNITED STATES DISTRICT JUDGE