**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

Winn-Dixie Stores, Inc.,

        Plaintiff,

v.                                 Case No. 3:15-cv-01143-BJD-JBT

Southeast Milk, Inc., *et al.*,

        Defendants.
_____/

**PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANTS'**
**MOTION *IN LIMINE* REGARDING CONTINUING VIOLATION**
**(DOC. 323) AND INCORPORATED MEMORANDUM OF LAW IN SUPPORT**

In a desperate attempt to relitigate an issue that this Court has already decided, Defendants seek to improperly use a motion *in limine* to bar Plaintiff's continuing violation theory from trial. The Court should reject this attempt not only because this Court has already decided this issue, but also because Defendants' motion ignores the record evidence, which flatly contradicts their argument and which this Court cited in its January 16, 2019 opinion deciding this issue. Finally, the key decision that Defendants rely on actually quotes the seminal decision of *Morton's Market* for the exact same proportion that this Court and Plaintiff relied on – holding that the continuing violation theory applies to "an act that by its very nature constitutes a continuing antitrust violation."[1] For these and additional reasons, this Court should deny Defendants' motion.

---

[1] *Bray v. Bank of America*, 2019 U.S. App. LEXIS 27231 at *5 (11th Cir. 2019).

In its January 16, 2019 decision, this Court denied Defendants' Motion Summary Judgment Based on the Statute of Limitations because (1) when the statute began to run was an issue of fact for the jury, (2) Defendants had not provided sufficient facts (actually none at all) demonstrating that they had withdrawn from the conspiracy to entitle them as a matter of law to summary judgment,[2] and (3) Plaintiff had provided sufficient evidence to create an issue of fact with respect to the application of the continuing violation theory. (Doc. 264). With respect to the continuing violation theory, this Court noted several pieces of evidence when it determined that the continuing violation theory applied and that Plaintiff had set forth sufficient facts for that theory to go to the jury. Specifically, the Court noted that (1) according to analysis and findings of Defendants' contemporaneous economist, Dr. Scott Brown, the Herd Retirement Program had a lasting effect increasing the All Milk Price at least into 2012, and (2) Defendants admitted in deposition testimony and contemporaneous documents that the effect of a herd retirement lasts for several years because removing a milking cow also removes the calves that it would have had and the calves that its calves would have had. Thus, this Court held:

> Even though there is no dispute that the last herd retirement ended in September 2010, Plaintiff maintains that the Defendants have not affirmatively shown that they reduced their artificially high prices or returned to competitive pricing after the last herd retirement." *See* Opp. at 6. Rather, Plaintiff argues that every sale to Plaintiff from 2003-2013 began the Statute of Limitations running anew because a horizontal agreement to restrict output (supply) is the same as price-fixing, to which the theory clearly applies. Id. at 6, Ex. 1 at 323:8-18 (Deposition of Bryan Ricchetti). In support, Plaintiff provides evidence from the parties' contemporaneous economist, Dr. Scott Brown, showing that "that the effect of each herd retirement on prices lasted

---

[2] (Doc. 264, pp. 10-11). This was an alternative ground for denying Defendants' Motion for Summary Judgment on Limitations. Defendants do not challenge this portion of the Court's ruling (even through an improper motion *in limine*).

> 3-4 years …."). *See id.* at 6, Ex. 2 at 7 (calculating higher prices into 2012 from the herd retirements); *see also id.* at 6, Ex. 30 at 47:13-15, 48:8-25 (Deposition Excerpt of Edward Gallagher) ("[l]f you slaughter a three-year-old dairy cow that might otherwise be milked for two more lactations, they would have two more calves ... if you take, in this example, a three-year- old cow and slaughtered it, then you would not have two calves that otherwise would have been born."). Plaintiff maintains that its claims based on purchases made through 2013 are timely. *See id.* at 7. Plaintiff argues that the individual herd retirements constituted "a new and separate act in violation" and the Statute of Limitations began to run from them all separately. *See id.*
>
> "The commencement of the [S]tatute of [L]imitations is a question of fact." *Morton's Mkt., Inc.*, 198 F.3d at 828 (citing *In re Beef Indus. Antitrust Litig.*, MDL Docket No. 248, 600 F.2d 1148, 1169-70 (5th Cir. 1979).[4] If there is a genuine question as to when the Statute of Limitations began to run, the Motion must be denied. *See id.* On this record, the Court finds that genuine issues of material fact remain as to when the Statute of Limitations began to run. Even though the last herd retirement occurred in September 2010, ***Plaintiff provides evidence that the alleged violations were continuing in nature***. *See e.g.*. Opp. at 6, Ex. 2, 30 (depositions of Dr. Scott Brown and Edward Gallagher discussing the effects of the HRP on milk prices into at least 2012). Defendants' publications support the same conclusion. For example, at least one publication states that
>
>> [t]he beauty of CWT herd retirements is that the impact of each herd retirement lasts several years ..For example, the average impact on the
>> All Milk Price in 2009 of $1.50 per hundredweight, ... is the result of the 2007 herd retirement, the two 2008 herd retirements and two of the three 2009 herd retirements. Since cows taken in the third herd retirement of 2009 may not all have gone to processing, its impact is not yet included in Dr. Brown[ ]'s analysis.
>
> O'Toole Decl. ¶ 39 at Ex. 37 (part 3) at 9. The determination of when the Statute of Limitations began in light of the continuing nature of the alleged violations will be left for the jury to decide.

(Doc. 264, pp. 9-10) (emphasis added).  Defendants may disagree with the above ruling but it is hard to imagine a clearer application of the law on continuing violation to the facts of the Herd Retirement Program, its multiple herd retirements and their lasting effect.[3]  Finally,

---

[3] Defendants acknowledge and clearly understand the Court's ruling here:

3

because the herd retirements in 2008, 2009 and 2010 would have had lasting effects into at least 2011, 2012 and 2013, the continuing violation carried into the period after September 2011, within four years prior to the filing of the Complaint in this case.

Based on the Court's ruling above and its reliance on the evidence from Dr. Brown, Mr. Gallagher and Defendants' documents, it is not clear what basis Defendants have to relitigate this issue. Indeed, using a motion *in limine* to cut off from trial an issue that the Court has already ruled must go to the jury is an improper use of an *in limine* motion. *Obeso v. Jacobson*, 2011 U.S. Dist. LEXIS 59313 at *6 (N.D. Ga. 2011)("Having failed to seek reconsideration of the Court's Order, ***the Court will not allow Defendants to relitigate this issue through their Motion in Limine.***") (emphasis added); *see also* ***G&K Servs. v. Bill's Super Foods, Inc.,*** 2011 U.S. Dist. LEXIS 60749, at *7 (E.D. Ark. 2011) ("***It is an improper use of an in limine motion to relitigate issues*** already decided by the Court.") (emphasis added); *United States Underwriters Ins. Co. v. Falcon Constr. Corp.,* 2006 U.S. Dist. LEXIS 79329, at *4-7 (S.D.N.Y. Oct. 30, 2006) ("***NYCHA's motion attempts to relitigate an issue already decided by the Court. This is an improper use of an in limine motion.*** If NYCHA wanted to contest the legal conclusions in the Court's May 10, 2006 opinion, it should have filed a timely motion for reconsideration.")  Not only is Defendants' Motion in Limine improper under the case law, but also they underscore that they are using it to bring an

---

Specifically, the Court found that "[e]ven though the last herd retirement occurred in September 2010, Winn Dixie provides evidence that the alleged violations were continuing in nature." (Id. at 10.) Thus, the Court left for trial the question whether there was conduct between September 23, 2011 and September 23, 2015 that would constitute a continuing violation, thereby rendering Winn-Dixie's claim timely."

Def. Mot. at 3 (Doc. 323).

4

untimely motion for reconsideration when they actually request in their Motion *in Limine* that this Court treat it as a motion for reconsideration. Def. Mot. at 8 ("Defendants respectfully request that the Court reconsider its decision"); *id.* ("It remains Defendants' position …").

Moreover, courts have held that a motion *in limine* is a particularly inappropriate vehicle to raise issues about evidence relating to the statute of limitations prior to trial, including the issue of a continuing violation. Thus, in *Univac Dental Company v. Dentsply International, Inc.*, 268 F.R.D. 190, 200-1 (M.D. Pa. 2010), the court denied Dentsply's motion *in limine*, which made identical arguments that Defendants make here. Thus, the court held:

> Having been unsuccessful in its efforts to secure dismissal of this action on statute of limitations grounds, Dentsply now argues, in a summary fashion, that Univac and Lactona should be limited at trial solely to presenting evidence relating to wrongdoing within the limitations period. (Doc. 98.) Thus, ***Dentsply invites the Court to use the statute of limitations as a benchmark for making judgments regarding evidentiary relevance.***
>
> It is recommended that the Court decline this invitation and deny this motion in limine, since Dentsply's motion fundamentally misconstrues the role of the statute of limitations. The statute of limitations is a procedural safeguard which protects parties from the vagaries of endless litigation of past alleged wrongs by requiring plaintiffs to bring their claims in a timely fashion. Thus, at bottom, "[t]he statute of limitations is a defense . . ., not a rule of evidence. Therefore, . . . [it] has no bearing on the admissibility of evidence." *Black Law Enforcement Officers Ass'n v. City of Akron*, 824 F.2d 475, 483 (6th Cir. 1987); *see also Fitzgerald v. Henderson*, 251 F.3d 345, 365 (2d Cir. 2001); *Vereen v. Woodland Hills School District*, 06-CV-462, 2008 WL 794451, *23 (W.D .Pa. March 24, 2008). Indeed, recognizing this fundamental truth, the United States Court of Appeals for the Third Circuit has held that ***where, as here, a party alleges that it has been victimized by a continuing violation which occurs in part outside the statute of limitations, it is an abuse of discretion for the trial judge to strictly limit the proof solely to the period of the statute of limitations and prevent the presentation of evidence relating to events which were part of the continuing violation but occurred outside the statute of limitations period.*** *See, e.g., West v.*

> *Philadelphia Electric Co.*, 45 F.3d 744 (3d Cir. 1995); *Pick-Mt. Laurel Corp. v. NLRB*, 625 F.2d 476 (3d Cir. 1980).
>
> These principles are directly applicable here and are fatal to Dentsply's first motion in limine. While Univac must present evidence of actions by the defendant and harm to the plaintiffs within the limitations period to defeat the statute of limitations bar at trial, its proof cannot be strictly restricted to the limitations period. Instead, ***as part of its proof of what it alleges were continuing violations Univac and Lactona are entitled to present evidence relating to conduct which spans beyond the statute of limitations.***

*Id.* (emphasis added); *see also Marlow LLC v. BellSouth Telecomms., Inc.*, 2013 U.S. Dist. LEXIS 3446 at *9-10 (S.D. Miss. 2013) (accepting the argument that "Marlow also posits that BellSouth's Motion *in Limine* is an inappropriate vehicle for raising a statute of limitations defense.").[4]  Therefore, based on *Dentsply* and the additional authority cited there and here, this Court should reject Defendants' Motion *in Limine* as an improper attempt to preclude evidence relating to the statute of limitations and particularly the continuing violation theory.

Moreover, the key decision relied on by Defendants, *Bray v. Bank of America*,[5] does nothing to change this Court's prior analysis and instead reinforces it.  In *Bray*, the Eleventh Circuit cited approvingly to its seminal decision in *Morton's Market* for the proposition that, in the context of price-fixing, sales of the product at the artificially high price constituted a continuing violation.  Thus, the Court in *Bray* wrote:

---

[4] Still other authority holds that a motion *in limine* is improper if it is, as here, a summary judgment motion in disguise. *See United Realty Advisors, LP v. Verschleiser*, 2019 U.S. Dist. LEXIS 172194, at *3-4 (S.D.N.Y. 2019)("The plaintiffs move in limine to preclude evidence or argument regarding various affirmative offenses, including various statute of limitations defenses, and various defenses such as contributory negligence that the plaintiffs argue apply only to certain claims. The motion *in limine* is plainly improper. . . .  The motion is rather an improper attempt at summary judgment or a motion for judgment on the pleadings that seeks to strike various affirmative defenses or to limit certain defenses to specific claims. Those are not proper purposes of a motion *in limine."*).

[5] 2019 U.S. App. LEXIS 27231 (11th Cir. 2019).

> In the context of an alleged "continuing conspiracy to violate antitrust laws," a new cause of action accrues "after the defendant commits (1) an overt act in furtherance of the antitrust conspiracy or (2) ***an act that by its very nature constitutes a 'continuing antitrust violation.'" Morton's Mkt., Inc. v. Gustafson's Dairy, Inc.,*** 198 F.3d 823, 827-28 (11th Cir. 1999) (citing *Zenith*, 401 U.S. at 338).

2019 U.S. App. LEXIS 27231, *6 (emphasis added). Thus, under that portion of *Morton's Market* cited by the Eleventh Circuit in *Bray*, not only does each herd retirement start the statute of limitations running anew, but also each new injury to Plaintiff from each herd retirement – which has an effect on the All-Milk Price that lasts 3-4 years – starts the statute of limitations running anew. Therefore, contrary to supporting Defendants' motion, *Bray* supports this Court's January 16, 2019 decision.

Moreover, *Bray* is distinguishable on its facts. There, Plaintiff's claims rested primarily on a 2009 Loan Amendment, and the Eleventh Circuit held that a subsequent October 28, 2011 email did not constitute a new overt act because it could not be construed as a new injurious act or an overt act in furtherance of the conspiracy – the email was merely a notification, according to the Eleventh Circuit. *Id.* at *6-7. Thus, the facts in *Bray* are not analogous to and are distinguishable from the facts here.

By contrast, the facts here fit the holding in *Morton's Market*. In that decision, the Eleventh Circuit began its holding by referring to the Supreme Court's holding in *Hanover Shoe*. Thus, the Eleventh Circuit held:

> An act constitutes a "continuing violation," if it injures the plaintiff over a period of time. Even though the illegal act occurs at a specific point in time, ***if it inflicts "continuing and accumulating harm" on a plaintiff, an antitrust violation occurs each time the plaintiff is injured by the act.*** *Hanover Shoe, Inc. v. United Shoe Machinery Corp.,* 392 U.S. 481, 502 n. 15, 88 S. Ct. 2224, 20 L. Ed. 2d 1231 (1968).

7

198 F. 3d at 828 (emphasis added). Thus, the focus is on the continuing and accumulating harm to the plaintiff from the illegal act, not on any new acts that must occur. This does not mean that a new illegal act must be committed in order for a continuing violation to apply; rather, the illegal act must injure the plaintiff anew. Thus, based on the passage above, a "continuing violation" is satisfied when the illegal act "inflicts 'continuing and accumulating harm'" on the Plaintiff and "an antitrust violation occurs each time the plaintiff is *injured* by the act." *Id.* (emphasis added).[6] Thus, given the evidence that this Court has already relied on – that the effect of each herd retirement on prices lasts 3-4 years – each time Plaintiff purchased raw milk, processed milk or products made with raw milk, after each herd retirement, each herd retirement inflicted "continuing and accumulating harm" on Plaintiff, and Plaintiff was injured by each herd retirement (alone and in connection with other herd retirements). Therefore, each herd retirement alone, and accumulated with prior and subsequent herd ones, constituted a continuing violation. *Morton's Market*, 198 F.3d at 828.

For the same reason that a continuing violation can be created when an illegal act creates a continuing and accumulating harm, this Court should reject Defendants' singular and narrow reading of the continuing violation theory, attempting to narrow it to its first

---

[6] The Eleventh Circuit in *Bray* acknowledged this:

> In the context of an alleged "continuing conspiracy to violate antitrust laws," a new cause of action accrues "after the defendant commits (1) an overt act in furtherance of the antitrust conspiracy or (2) an act that by its very nature constitutes a 'continuing antitrust violation.'" *Morton's Mkt., Inc. v. Gustafson's Dairy, Inc.,* 198 F.3d 823, 827-28 (11th Cir. 1999) (citing *Zenith*, 401 U.S. at 338).

2019 U.S. App. LEXIS 27231 at *5. Not only did the Eleventh Circuit acknowledge the second prong of the continuing violation theory, which applies in this case, but also it cited to *Morton's Market*, which cited to *Zenith*, which Defendants' attempt to rely on for their argument. However, since *Morton's Market* cites and discusses *Zenith*, in holding the continuing and accumulating harm, relying on *Hanover Shoe*, any independent reliance by Defendants on *Zenith* is subsumed in the analysis and holding in *Morton's Market*, and should be rejected.

prong, the overt act prong.  Indeed, Defendants' entire motion flows from its erroneous argument that the continuing violation theory is limited to its first prong.  This is simply not true as the Eleventh Circuit held in *Morton's Market* held (using the word "or" between the first prong, overt act, and the second prong, continuing violation), and acknowledged in *Bray*. *See* fn. 2.[7]

Likewise, Defendants' attempt to conflate the continuing and accumulating harm that constitutes a continuing violation for purposes of the statute of limitations with Plaintiff's damages should also be rejected.  Only the Defendants – not this Court nor Plaintiff – seems to be confused about the distinction between the continuing and accumulating harm that constitutes a continuing violation for the purpose of the statute of limitations and Plaintiff's damages.  The Supreme Court in *Hanover Shoe* and the Eleventh Circuit in *Morton's Market* specifically relied on the continuing harm from an illegal act in analyzing the statute of limitations – they did not do so in connection with any analysis of a plaintiff's damages.  Thus, since neither the Supreme Court, the Eleventh Circuit nor this Court conflate the continuing and accumulating harm that satisfies the continuing violation theory for purpose of the statute of limitations with a plaintiff's damages, this Court should reject Defendants' attempt to conflate Plaintiff's damages with the continuing and accumulating harm that constitutes a continuing violation for purposes of the statute of limitations.

---

[7] Defendants try to characterize their own conduct as just about anything except what it actually is – anything except the actual facts of their conduct – agreeing to pay for and implementing 10 herd retirements, each of which Defendants admit has an effect on prices that lasts 3-4 years and each of which accumulates its effect with the effects of the other herd retirements, as this Court has already found.  Thus, this Court should reject Defendants' attempts to pigeon hole their conduct as involving a quota. Def. Mot. at 7 (Doc. 323).

**CONCLUSION**

For the foregoing reasons, Plaintiff requests Defendants' motion *in limine* (Doc. 323) be denied.

Dated: December 2, 2019                                        Respectfully submitted,

*/s/ Jeffrey S. York*
H. Timothy Gillis
Florida Bar No. 133876
Jeffrey S. York
Florida Bar No. 0987069
Shutts & Bowen LLP
1022 Park Street, Suite 308
Jacksonville, FL 32204
Phone: (904) 899-9926
Fax: (904) 899-9965
tgillis@shutts.com
jyork@shutts.com

*/s/ Patrick J. Ahern*
Patrick J. Ahern (admitted Pro Hac Vice)
Theodore Bell (admitted Pro Hac Vice)
Ahern and Associates, P.C.
8 South Michigan Avenue
Suite 3600
Chicago, IL 60603
(312) 404-3760
patrick.ahern@ahernandassociatespc.com
theo.bell@ahernandassociatespc.com

*Attorneys for Plaintiff*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on December 2, 2019, I electronically filed the foregoing with the Clerk of Court pursuant to the Administrative Procedures for Electronic Filing in Civil and Criminal Cases of this Court by using the CM/ECF System, which will send a notice of electronic filing to all counsel of record.

                                                 */s/ Jeffrey S. York*
                                                      Attorney