UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

WINN-DIXIE STORES, INC.,

    Plaintiff,

v.                             Case No. 3:15-cv-1143-J-39JBT

SOUTHEAST MILK, INC., NATIONAL
MILK PRODUCERS FEDERATION,
DAIRY FARMERS OF AMERICA, INC.,
LAND O'LAKES, INC., DAIRYLEA
COOPERATIVE INC., and AGRI-MARK,
INC.,

    Defendants.
_____/

## ORDER

**THIS CAUSE** is before the Court on the following motions and the parties' respective responses in opposition:

    1)    Defendants' Motion in Limine to Exclude from Evidence the Opinions and Work Product of Dr. Scott Brown and Supporting Memorandum of Law (Doc. 321); Plaintiff's Opposition (Doc. 350);

    2)    Defendants' Motion in Limine to Exclude Evidence and Argument that Defendants' Sales Constitute Continuing Violations and Incorporated Memorandum of Law (Doc. 323); Plaintiff's Response in Opposition (Doc. 348);

    3)    Defendants' Omnibus Motion and Supporting Memorandum of Law in Limine to Exclude Certain Evidence (Doc. 324); Plaintiff's Response in Opposition (Doc. 349);

    4)    Plaintiff's Motions in Limine Nos. 1–8 and Incorporated Supporting Memorandum of Law (Doc. 327); Defendants' Response in Opposition (Doc. 339);

    5)    Plaintiff's Motion in Limine #9 to Preclude References to the Herd Retirement Program as "Voluntary" (Doc. 328); Defendants' Response in Opposition (Doc. 340);

  6) Plaintiff's Motion in Limine #10 to Preclude any Reference to the Failure of any Federal or State Antitrust Agency to Initiate an Enforcement Action (Doc. 329); Defendants' Response in Opposition (Doc. 347);

  7) Plaintiff's Motion in Limine #11 to Preclude Defendants from Introducing Evidence at Trial Relating to or Referencing Statements (Past and Present) of Congressmen and U.S.D.A. Officials (Doc. 330); Defendants' Response in Opposition (Doc. 341);

  8) Plaintiff's Motion in Limine #12 to Preclude Defendants from Introducing Evidence or Arguments at Trial Relating to or Referencing Plaintiffs' Lack of Standing (Doc. 331); Defendants' Response in Opposition (Doc. 342);

  9) Plaintiff's Motion in Limine #14 to Preclude Defendants from Referencing (1) the Capper-Volstead or Cooperative Marketing Acts, or (2) a "Good Faith" Belief that their Actions are Immune from Liability (Doc. 332); Defendants' Response in Opposition (Doc. 344);

  10) Plaintiff's Motion in Limine #15 to Preclude Defendants from Introducing Evidence at Trial Relating to or Referencing Statements (Past and Present) from Farmers and About Farmer Profitability (Doc. 333); Defendants' Response in Opposition (Doc. 345);

  11) Plaintiff's Motion in Limine #16 to Preclude Defendants from Presenting Evidence Concerning Purported Good Intentions or "Reasons," "Procompetitive" Benefits and Ineffectiveness of the Herd Retirement Program (Doc. 334); Defendants' Response in Opposition (Doc. 344);

  12) Plaintiff's Motion in Limine #13 to Allow into Evidence the Prior Deposition Testimony and Documents of Dr. Scott Brown (Doc. 335); Defendants' Response in Opposition (Doc. 343);

  13) Plaintiff's Motion in Limine to Admit Co-Conspirator Statements Under Federal Rule of Evidence 801(d)(2)(E) (Doc. 336); Defendants' Response in Opposition (Doc. 346).

"We use the term [in limine] in a broad sense to refer to any motion, whether made before or during trial, to exclude anticipated prejudicial evidence before the evidence is actually offered." Luce v. United States, 469 U.S. 38, 40 n.2 (1984). Motions in limine should be limited to specific pieces of evidence and not serve as reinforcement regarding

the various rules governing trial, or (re)-addressing substantive motions such as motions for summary judgment. See Royal Indem. Co. v. Liberty Mut. Fire Ins. Co., No. 07-80172-CIV-COOKE, 2008 WL 2323900, at *1 (S.D. Fla. June 5, 2008); see also Stewart v. Hooters of Am., Inc., No. 8:04-CV-40-T-17-MAP, 2007 WL 1752873, at *1 (M.D. Fla. June 18, 2007) ("Motions In Limine are disfavored; admissibility questions should be ruled upon as they arise at trial. Accordingly, if evidence is not clearly inadmissible, evidentiary rulings must be deferred until trial to allow questions of foundation, relevancy, and prejudice to be resolved in context.") (internal citations and emphasis omitted); Royal Marco Point 1 Condo. Ass'n v. QBE Ins. Corp., No. 2:07-CV-16-FTM-99SPC, 2011 WL 470561, at *2 (M.D. Fla. Feb. 2, 2011) ("The court excludes evidence on a Motion In Limine only if the evidence is clearly inadmissible for any purpose."). In light of the preliminary or preemptive nature of motions in limine, "any party may seek reconsideration at trial in light of the evidence actually presented and shall make contemporaneous objections when evidence is elicited." Miller ex rel. Miller v. Ford Motor Co., No. 2:01CV545FTM-29DNF, 2004 WL 4054843, at *1 (M.D. Fla. July 22, 2004). With these standards in mind, and after having the benefit of argument from counsel at the December 18, 2019 Final Pretrial Conference, it is hereby

**ORDERED:**

1) Defendants' Motion in Limine to Exclude from Evidence the Opinions and Work Product of Dr. Scott Brown and Supporting Memorandum of Law (Doc. 321; S. Doc. 381) and Plaintiff's Motion in Limine #13 to Allow into Evidence the Prior Deposition Testimony and Documents of Dr. Scott Brown (Doc. 335) are **GRANTED in part** and **DENIED in part** as follows:

a. Plaintiff's Motion (Doc. 335) is **GRANTED** to the extent that Plaintiff may rely on Dr. Brown's findings. See (Doc. 357);[1] see also Fed. R. Evid. 801(d)(2)(B)("A statement that meets the following conditions is not hearsay . . . [t]he statement is offered against an opposing party and . . . is one the party manifested that it adopted or believed to be true . . . ."). However, if Plaintiff relies on Dr. Brown's findings, Plaintiff must omit all references to Dr. Brown's findings as to dollar amounts, i.e., $9.5 billion. See Fed. R. Evid. 403 ("The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence."). In this instance, the Court finds that the probative value of any reference to Dr. Brown's dollar amounts, specifically the $9.5 billion, is substantially outweighed by unfair prejudice to Defendants, confusing the issues, and misleading the jury.

b. Plaintiff's Motion (Doc. 335) is **DENIED** as to Dr. Brown's prior deposition testimony. Plaintiff is precluded from entering Dr. Brown's prior deposition testimony taken in the Edwards et al. v. National Milk Producers Federation et al., Case No. 4:11-cv-04766-JSW, (N.D. Cal.). The Court previously found that the Edwards case and other related cases did not toll the Statute of Limitations, with a limited exception

---

[1] Dr. Brown's findings are located throughout the record in various documents. See (Doc. 357).

provided therein, because "[t]he instant case differs in parties, evidence, memories, and witnesses . . . ." See (Doc. 234 at 17–22 (specifically considering the Edwards case)).[2]

    c. Defendants' Motion (Doc. 321; S. Doc. 381) is **GRANTED** to the extent that Plaintiff is precluded from referencing Dr. Brown's findings as to dollar amounts and relying on prior deposition testimony taken in the Edwards case.

    d. Defendants' Motion (Doc. 321; S. Doc. 381) is otherwise **DENIED**.

2) Defendants' Motion in Limine to Exclude Evidence and Argument that Defendants' Sales Constitute Continuing Violations and Incorporated Memorandum of Law (Doc. 323) is **DENIED**. See (Doc. 234 at 10 (finding that there are genuine issues of material fact as to whether the alleged violations were continuing in nature)).

3) Defendants' Omnibus Motion and Supporting Memorandum of Law in Limine to Exclude Certain Evidence (Doc. 324) is **GRANTED in part** and **DENIED in part** as follows:

    a. Evidence relating to damages for cheese and butter purchases is **DENIED**. The Court previously excluded opinions from Dr. Connor

---

[2] During the Final Pretrial Conference and in Plaintiff's Memorandum Regarding Certain Issued to be Addressed at the Final Pretrial Conference (Doc. 375), Plaintiff argued that the Court should permit Plaintiff to rely on and use against Defendants the depositions of John Wilson, Thomas Wegner, Jerome Kozak, Richard Stammer, Edward Gallagher, and Michael Lichte, which were taken in the Edwards case. See (Doc. 375 at 1–6). Aside from permissible uses for impeachment purposes under the applicable rules, the Court precludes Plaintiff from using the referenced depositions from the Edwards case. See Fed. R. Civ. P. 32; see also (Doc. 234 at 17–22 (specifically considering the Edwards case)). Notably, Defendants represented during the Final Pretrial Conference that Defendants intend to present John Wilson, Thomas Wegner, and Richard Stammer as live witnesses during the trial. In turn, Plaintiff will have the opportunity during trial to cross-examine those witnesses.

relating to Plaintiff's purchases of cheese and butter before September 23, 2011. (Doc. 320 at 6, 11). The Court finds no support at this stage to summarily exclude evidence relating to damages for cheese and butter purchases.

b. Evidence that uses misleading and prejudicial terminology relating to dairy farm practices or the operation of the Herd Retirement Program is **GRANTED** to the extent that Plaintiff is precluded from referring to "bred heifers" by using any of the following terminology: the slaughter of "unborn baby cows" or "fetuses." Plaintiff is also precluded from referencing a heifer "not being able to have her calf." Defendants' Motion (Doc. 324) as to misleading and prejudicial terminology is otherwise **DENIED**.

c. Evidence on topics for which Plaintiff's designated representative under Federal Rule of Civil Procedure 30(b)(6), Mr. Graham Leary, had no knowledge is **GRANTED**. However, Defendants request that the Court preclude Plaintiff "from offering testimony, from any witness, related to its purchases of milk or dairy products from Defendants" is not only overly broad, but evidence related to Plaintiff's purchases of milk or dairy products from Defendants goes straight to the heart of the issues in this case. The Court will not preclude Plaintiff from offering testimony from Mr. Leary related to Plaintiff's purchases of milk or dairy products from Defendants for which Mr. Leary has knowledge. See Fed. R. Civ. Pro. 30(b)(6) ("The persons designated must testify about information known

or reasonably available to the organization."). Mr. Leary is precluded from testifying about matters for which he has no knowledge. See Fed. R. Evid. 602 ("A witness may testify to a matter only if evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter."); see also Deck v. PetSmart, Inc., No. 3:16-CV-1517-J-39MCR, 2018 WL 7349248, at *2 (M.D. Fla. July 20, 2018) (Davis, J.) ("'Non-expert (or lay) witnesses may only testify to opinions or inferences which are (a) rationally based on the perception of the witness, and (b) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue, and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702.'") (quoting United States v. Henderson, 409 F.3d 1293, 1300 (11th Cir. 2005)). Defendants shall have an opportunity during trial within the bounds of the rules to cross-examine Mr. Leary.

d. Evidence and argument relating to the size or financial condition of Defendants and the compensation of their employees or consultants is **DENIED** without prejudice to being re-addressed at trial, based upon specific objections to specific testimony and evidence. See Fed. R. Evid. 401, 402, 403. The Court does not anticipate admitting such evidence but to the extent that the evidence becomes relevant, the Court will rule on the admissibility during trial.

e. Evidence that uses misleading and prejudicial language suggesting that the HRP was intended to harm small dairy farmers is **GRANTED** in light

of Plaintiff's representation that it does not intend to introduce such evidence. See (Doc. 349 at 17).

    f. Argument that farmers were required to stay out of dairy farming for one year as a condition of participating in the HRP is **DENIED**. The evidence supports that Defendants' documents referenced "ceas[ing] dairy production for one year." See (Doc. 363-8 at 2); see also (Doc. 363-7 at 66:8–12; Thomas Wegner testified that in "fairness that if you receive the benefit, that you need to be out for at least 12 months before you can come back in.").

    g. Argument that farmers were required to retire their "entire herd" as a condition of participating in the HRP is **DENIED**. The evidence supports that Defendants' documents referenced "entire dairy herd." See (Doc. 363-9 at 2; "This Bid constitutes an offer by Producer to sell Producer's entire dairy herd, including all milking cows and dry cows . . . ."); see also (Docs. 363-12–18 (2007–10 bid forms referencing "entire dairy herd."). To help avoid juror confusion, when referencing "entire herd," Plaintiff shall make it clear to the jury that "entire herd" refers to "entire **dairy** herd."

4)   Plaintiff's Motions in Limine Nos. 1–8 and Incorporated Supporting Memorandum of Law (Doc. 327) is **GRANTED in part** and **DENIED in part** as follows:

    a. Evidence regarding "Offset of Overcharges" is **GRANTED** to the extent that Defendants are precluded from offering evidence that Plaintiff was not injured as a result of pass-through of any overcharges. See (Doc.

339 at 3, n.1 (Defendants represent that they have no intention of arguing that Plaintiff "was not injured as a result of a 'pass-through' of any alleged overcharges."). The remainder of Plaintiff's Motion (Doc. 327) relating to the offset of overcharges, specifically Plaintiff's profitability, financial results, and financial condition, is **TAKEN UNDER ADVISEMENT** to be determined during trial when the Court can better assess Plaintiff's request in context.

b. Evidence of the impact of an adverse judgment is **TAKEN UNDER ADVISEMENT** to be determined during trial when the Court can better assess Plaintiff's request in context. See (Doc. 339 at 5 (Defendants represent that they "do not intend to introduce or present evidence or argument that Defendants or their farmer members could not afford an adverse damages award.") Defendants request that the Court take the Motion under advisement and rule on it only if Defendants determine that their defense of this case requires presentation or introduction of such material for purposes of the following issues: 1) "the purpose and effect of the Capper-Volstead Act;" 2) "the fact that dairy farmers are the owners of Defendants;" 3) "the fact that dairy farmers fund the Cooperatives Working Together Program through assessments paid on each hundredweight of milk;" or 4) "the circumstances in the dairy industry during the time period of the Herd Retirement Program and the reasons for implementing the Program." The Court does not intend on admitting into evidence the impact of an adverse judgment but in an

abundance of caution, the Court takes Plaintiff's request under advisement.

c. Evidence of "good" corporate conduct is **DENIED**. Defendants represent that they do not intend to offer evidence concerning philanthropic work and charitable donations unrelated to the HRP. The Court expects Defendants to adhere to such representations during trial. Additionally, the Court finds that Plaintiff's Motion (Doc. 327) is overly broad as it relates to general "good" corporate conduct.

d. Evidence of limited involvement in the alleged conspiracy is **DENIED**. Defendants' involvement in the alleged conspiracy is relevant to the remaining issues. See Fed. R. Evid. 401, 403; see also (Doc. 234 at 7–12 (discussing that genuine issues of material fact exist as to whether Defendants effectively withdrew from the alleged conspiracy)).

e. The presentation of depositions proposed by Plaintiff is **GRANTED**.

f. Evidence of lawyer-driven action is **GRANTED**. The parties, witnesses, and experts are precluded from arguing, referencing, or introducing evidence related to this case being driven by lawyers. The Court finds that the probative value of admitting that this case was driven by Plaintiff's counsel is substantially outweighed by unfair prejudice to Plaintiff, confusing the issues, and misleading the jury. See Fed. R. Evid. 403.

g. The presentation of documents without sponsoring witnesses is **DENIED**. Plaintiff requests that the Court make decisions about

        unidentified documents in a vacuum, and without knowing whether circumstances will arise at trial requiring the requested decision to be made.

      h. Live testimony from Defendants' witnesses not made available for live testimony in Plaintiff's case-in-chief is **GRANTED**, provided Plaintiff has exhausted all means available to secure the witnesses' live testimony and has made a request prior to the commencement of jury selection for Defendants to produce the witness for Plaintiff's case-in-chief.

5) Plaintiff's Motion in Limine #9 to Preclude References to the Herd Retirement Program as "Voluntary" (Doc. 328) is **DENIED**. At trial, Plaintiff may rebut Defendants' contentions that the HRP was voluntary as Plaintiff has continued to do throughout this case.

6) Plaintiff's Motion in Limine #10 to Preclude any Reference to the Failure of any Federal or State Antitrust Agency to Initiate an Enforcement Action (Doc. 329) is **GRANTED**. Defendants are precluded from introducing evidence that any federal or state antirust agency failed to initiate an enforcement action. See Fed. R. Evid. 401, 403; see also U.S. ex rel. Atkins v. McInteer, 470 F.3d 1350, 1360 n.17 (11th Cir. 2006) ("In any given case, the government may have a host of reasons for not pursuing a claim.").

7) Plaintiff's Motion in Limine #11 to Preclude Defendants from Introducing Evidence at Trial Relating to or Referencing Statements (Past and Present) of Congressmen and U.S.D.A. Officials (Doc. 330) is **DENIED** without prejudice to being re-addressed at trial, based upon specific objections to specific testimony and evidence. See

Fed. R. Evid. 401, 402, 403. To the extent that the evidence does not constitute hearsay, the Court anticipates that the evidence will be relevant to the remaining issues.

8) Plaintiff's Motion in Limine #12 to Preclude Defendants from Introducing Evidence or Arguments at Trial Relating to or Referencing Plaintiffs' Lack of Standing (Doc. 331) is **GRANTED**. See Fed. R. Evid. 401; see also (Doc. 257 at 12 (granting in part and denying in part Defendants' Renewed Motion on Standing (Doc. 242)).

9) Plaintiff's Motion in Limine #14 to Preclude Defendants from Referencing (1) the Capper-Volstead or Cooperative Marketing Acts, or (2) a "Good Faith" Belief that their Actions are Immune from Liability (Doc. 332) and Plaintiff's Motion in Limine #16 to Preclude Defendants from Presenting Evidence Concerning Purported Good Intentions or "Reasons," "Procompetitive" Benefits and Ineffectiveness of the Herd Retirement Program (Doc. 334) are **DENIED**. Whether Defendants are entitled to immunity remains an issue in this case. See (Doc. 354 at 15–17; Doc. 385). At this stage, the Court finds no basis for a blanket exclusion of evidence relating to immunity and Defendants' position that the HRP was not anticompetitive but that it was reasonably believed to promote enterprise, productivity, and other procompetitive ends.

10) Plaintiff's Motion in Limine #15 to Preclude Defendants from Introducing Evidence at Trial Relating to or Referencing Statements (Past and Present) from Farmers and About Farmer Profitability (Doc. 333) is **DENIED**. Farmer testimony is relevant to whether the HRP was an unreasonable agreement to restrain supply and what impact, if any, it had on milk production. See Fed. R. Evid. 401, 403. Defendants are cautioned that to the extent that the farmers' testimony contains hearsay statements that do not fall into an exception, the Court will exclude such testimony at trial.

11) Plaintiff's Motion in Limine to Admit Co-Conspirator Statements Under Federal Rule of Evidence 801(d)(2)(E) (Doc. 336) is **DENIED** without prejudice to being re-addressed at trial, based upon specific objections to specific testimony and evidence. See Fed. R. Evid. 401, 402, 403. Attached to Plaintiff's Motion (Doc. 336) are Exhibits 1–77, 79–125, and 127–58 (Doc. 361), and Exhibits 78 and 126 (S. Doc. 367). Plaintiff seeks admission of these documents under Fed. R. Evid. 801(d)(2)(E), which authorizes the admission of statements made by a co-conspirator of the party against whom the statements are offered. Whether Defendants engaged in a conspiracy remains at issue to be determined at trial. Thus, the Court will not summarily admit these documents at this stage. See e.g., United States v. Van Hemelryck, 945 F.2d 1493, 1498 (11th Cir. 1991) (To determine admissibility of co-conspirator statements, "the court may consider both the coconspirator's hearsay statement and independent outside evidence . . . [h]owever, this determination need not be made prior to trial.").

12) At trial, the Court does not intend to exclude the following witnesses for Defendants: John Peachey, Dale Eade, Dennis Johnson, and Jimmy Stewart. However, prior to trial commencing on January 6, 2020, at 9:00 a.m., Defendants shall make the four witnesses available for deposition at a time and location convenient to Plaintiff. The witnesses may be made available by video or other technology approved by Plaintiff. To the extent that Plaintiff decides to depose any of the four witnesses, Defendants shall pay the costs associated with Plaintiff taking the depositions of the witness(es), excluding attorneys' fees at this time.

13) Based on argument from Plaintiff's and Defendants' counsel during the Final Pretrial Conference, Defendants' <u>Ore</u> <u>Tenus</u> Motion to Dismiss (Doc. 386) is **DENIED**.

**DONE** and **ORDERED** in Jacksonville, Florida this 23rd day of December, 2019.

_____
BRIAN J. DAVIS
United States District Judge

5
Copies furnished to:

Counsel of Record